**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

**GEE & JENSEN ENGINEERS, ARCHITECTS AND PLANNERS,**

**Plaintiff,**

**vs.**

**UNITED STATES OF AMERICA, DEPARTMENT OF THE NAVY,**

**Defendant.**

Case Number: 1:05-cv-00457-LJB

**PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

The Plaintiff, Gee & Jenson Engineers, Architects and Planners (hereinafter "Gee & Jenson") hereby moves for summary judgment on the Government's claim for breach of contract relating to Gee & Jenson's design of the NISE East Building located in Charleston, South Carolina. This motion is made pursuant to Rule 56 of the Rules of the United States Court of Federal Claims (RCFC) and is supported by this memorandum and the documents contained herein.

**STATEMENT OF THE ISSUES**

1. Did Gee & Jenson breach the contract by failing to design metal flashing under the precast sill for the windows?

2. Did the Government incur any damages as a result of the alleged breach of contract?

**STATEMENT OF THE CASE**

This case involves the design of the NISE East Building located in Charleston, South Carolina. In July 1993, the Government entered into an indefinite delivery requirements contract, No. N62467-93-D-0911 (hereinafter "the Contract") for design and engineering services with Gee & Jenson. The Contract provided for the design services for different buildings for the Government under separate delivery numbers. Delivery No. 00001 was issued for the design of the NISE East

Building. The Contract and Delivery No. 00001 required Gee & Jenson to provide design and engineering services in accordance with the Standard Building Code (1991 Edition).

The NISE East Building is a two-story masonry and brick veneer building with a window wall extending essentially all the way around the building on each floor. The windows sit on a precast concrete sill. A picture of one side of the building is attached as Exhibit 1. Exhibit 2 is a picture looking down the window wall on the first floor showing the windows sitting on the precast concrete sill.

The contract for construction of the building was awarded to Pizzagalli Construction Company (hereinafter "Pizzagalli"). Construction of the building was completed in 1997.

After the building was completed and accepted by the Government, in 1998 the Government began to have problems with water infiltration into the building. The Government hired Riesberg Architects, LLC to perform a forensic study to determine the cause of the water infiltration. After performing a study, Riesberg issued a report in November of 1998 listing what it considered to be both construction and design defects that it contended could have resulted in the water infiltration.

The Government advised both Pizzagalli and Gee & Jenson of the alleged problems in early-1999. Thereafter, Pizzagalli performed repairs to the building as a result of the alleged construction defects. Significantly, those repairs resulted in no further water infiltration problems intothe building.

Despite the fact that there were no further water infiltration problems after Pizzagalli corrected the construction defects, the Government continued to insist that Gee & Jenson's design was defective. The Government awarded Riesberg Lunn, LLC (the successor to Riesberg Architects, LLC) a contract to design a repair for the alleged design errors.

At this point, the sole remaining issue is the design of the connection between the horizontal precast sills upon which the windows sit. The original design required installation of a caulking joint between the sills; however, it did not require metal flashing underneath the sills at all places.

(Exhibit 3). The repair design by Riesberg required the installation of essentially two caulking joints between the sills as opposed to one caulking joint between the sills, and again did not require installation of metal flashing underneath the sills. (Exhibit 4). In March of 2004, the Government awarded a contract to HITT Contracting Company to implement the design by Riesberg Lunn, LLC.

The Government issued a final decision on April 7, 2004 finding that Gee & Jenson was liable for the repair cost resulting from the alleged design error. This case followed.

## ARGUMENT

Gee & Jenson is entitled to summary judgment because (1) the design it prepared for the NISE East Building complied with the contract requirements, and (2) the Government has not incurred any damages as a result of any alleged breach.

This case involves a claim by the Government for which it bears the burden of proof. The Government must prove that (1) Gee & Jenson breached the design contract, and (2) the Government incurred damages as a result of the breach.

Summary judgment is appropriate where there are no genuine disputes as to any material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986); *Mingus Constructors, Inc. v. United States*, 812 F.2d 1387 (Fed. Cir. 1987). It is "a salutary method of disposition designed to secure the just, speedy and inexpensive determination of every action." *Sweats Fashions, Inc. v. Pannill Knitting Co., Inc.*, 833 F.2d 1560, 1562 (Fed. Cir. 1987) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)). As the United States Court of Appeals for the Federal Circuit emphasized in *Sweats Fashions*, "the burden is <u>not</u> on the movant to <u>produce evidence</u> showing the absence of a genuine issue of material fact." 833 F.2d at 1563 (emphasis in original). "Rather, the burden on the moving party may be discharged by "showing" - - that is, pointing out to the [Court of Federal Claims] - - that <u>there is an absence of evidence to support the non-moving party's case</u>." *Id*. (emphasis in original) (quoting *Celotex Corp. v. Catrett*, 477 U.S. at 325).

Once the moving party meets its burden, the non-movant "must proffer countering evidence sufficient to create a genuine factual dispute." *Sweats Fashions*, 833 F.2d at 1562. The non-movant must, therefore, present sufficient evidence as to the existence of a dispute as to a material fact such that the trier of fact could reasonably find in favor of the non-movant. *See*, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 249-50. The Federal Circuit has delineated the non-moving party's burden as follows:

> The non-movant may not rest on its conclusory pleadings, but under Rule 56, must set out, usually in an affidavit by one with knowledge of specific facts, what specific evidence could be offered at trial. *Barmag Barmer Maschinenfabrik AG v. Murata Machinery, Ltd.*, 731 F.2d 831, 836 (Fed. Cir. 1984).

*Sweats Fashions*, 833 F.2d at 1562-63. The non-movant's burden to set forth the specific facts that generate the issue for trial, therefore, "is not met by reliance on its pleadings alone, or by conclusory allegations and generalities." *Bromley Contracting Co. v. United States*, 15 Cl. Ct. 100, 105 (1988); *see, Campbell v. United States*, 2 Cl. Ct. 247, 249 (1983). The non-movant's response "must set forth facts [showing] that there is a genuine issue for trial." *Carrier Corp. v. United States*, 6 Cl. Ct. 169, 175 (1984); *see, D&S Universal Mining v. United States*, 4 Cl. Ct. 94, 96 (1984). As demonstrated below, there are no genuine issues of material fact in dispute and plaintiff is entitled to judgment as a matter of law.

**1. Gee & Jenson Did Not Breach the Contract**.

All of the parties agree that Gee & Jenson was required to design the building in accordance with the applicable building code in effect at the time, the 1991 Standard Building Code. With regard to flashing and veneer walls, the Code provides:

> Flashing shall be provided **as necessary** to prevent the entrance of water at openings in or projections through veneered walls. Flashing shall be provided at intersections of veneered walls of different materials unless such materials provide a self flashing joint and at other points subject to the entrance of water. Caulking shall be provided where such flashing is determined by the Building Official to be impractical. (Emphasis added). (1991 Standard Building Code, Section 811.1.4).

Gee & Jenson designed a caulking joint between the horizontal precast sills under the windows, but did not include a metal flashing underneath the sills. Gee & Jenson's chief architect on the project, Tim Hullihan, testified that metal flashing underneath the sills would not have been practical because of all the holes drilled in the metal flashing for the bolts to hold the concrete sill down. Basically, the metal flashing would be full of holes so that water could run into the building. The caulking prevented the entrance of the water between the joints so that it could never get into the wall. Because holes were required in the metal flashing to allow for the bolts for the sill, that flashing would have been impractical to keep water out of the building.[1]

With regard to approval by the building official, the Government's expert, Riesberg, admitted that the Government approved the design. Mr. Riesberg was asked:

"And, in fact, the government gave A/E approval of its design, isn't that true?"

Mr. Riesberg answered, "In effect, yes." (Exhibit 5, Riesberg depo, p.49, ln. 5-7).

Significantly, the repair design by Riesberg did nothing more than include a second caulking joint between the precast sills. According to Riesberg, his design provided an extra layer of protection but it was not flashing. (Exhibit 5, Riesberg depo., p. 48, ln. 10-17). (Generally see Exhibit 5, Riesberg depo, pp. 46-51).

Since the Code provided the architect with discretion to determine when flashing is "necessary," and since the flashing would have been impractical because of the holes in the flashing, and since the Government approved the drawings submitted by Gee & Jenson, there is no breach of the contract. Accordingly, Gee & Jenson is entitled to summary judgment as a matter of law.

---

[1]Tim Hullihan was deposed on September 27, 2007, but the transcript has not been received. This motion will be supported with the relevant portions of the transcript.

**2. There Are No Damages as a Result of the Alleged Design Defect.**

The Government admits that once Pizzagalli corrected the construction defects, which included correcting the sealant joints between the precast sills, it did not have any further damages from water filtration.

To prevail, the Government must demonstrate that the alleged design defect resulted in damages. When claimed damages are allegedly the result of breaches by two or more parties, the Government must provide evidence to support a reasonably accurate determination of the amount of damages resulting from each party's breach. For example, in a case involving damages from latent and patent defects along with "faulty" specifications, the government's obligation, "is to delineate damages resulting from the latent defects as distinguished from the costs incurred due to patent defects and defective specifications. *Roberts v. United States,* 174 Ct.Cl. at 957, 357 F.2d at 948-49. Failure to satisfy this burden renders the government without entitlement to recover on a latent defect counterclaim." *M.A. Mortenson Co. v. U.S.*, 40 Fed. Cl. 389 (1998). See also, *Appeal of Bromley Contracting Co., Inc*, 81-2 BCA P 15191, DOTCAB No. 78-1 (1981)(Where deficiencies are due to both patent and latent defects as well as to factors for which appellant is not responsible, and where respondent has not submitted specific proof of the portion of the costs attributable to latent defects, recovery for the repair of latent defects is not sustained).

In this case, the Government's expert, Riesberg, admitted that the sealant joints installed between the sills by Pizzagalli were defective. Riesberg admitted that if the caulking had been installed as intended, water would not have gotten through the joint. (Exhibit 5, Riesberg depo., p. 33, ln. 14-17). Riesberg also admitted that most of the sealant joints had failed and the contractor was responsible for the failure because the contractor failed to properly prepare the sealant and failed to install it properly. (Exhibit 5, Riesberg depo., p. 43, ln. 1-18).

More importantly, Riesberg admitted that he did not have any evidence that any additional water damage occurred after Pizzagalli completed repairs of the construction defects. (Exhibit 5, Riesberg depo., p. 44, ln. 23 - p. 45, ln. 21). Likewise, James Herrington, the facilities manager for the building, admitted that after Pizzagalli finished repairs of the construction defects there was no additional testing and he was not aware of any water damage since those repairs other than a relatively new problem that "only seems to show up when the sun and the moon are in their right phases." (Exhibit 6, Herrington depo., p. 54, ln. 17 - p. 56, ln. 3).

Significantly, while the Government hired HITT to make repairs on both the first and the second floor of the NISE East Building as a result of the alleged design defects, there was absolutely no evidence that any damage ever occurred on the first floor. The Government's expert admitted there was never any evidence of damage on the first floor and no investigation on the first floor.

> Q. Were there any areas that you found damage on the first floor?
> A. No leaks were reported on the first floor
> (Exhibit 5, Riesberg depo., p. 20, ln. 8-10)
>
> Q. And, Mr. Riesberg, I'm going to show you a drawing that you just pulled out of your notebook, and can you tell me what this is?
> (communication between court reporter and Mr. Scott omitted)
> A. Locations of destructive openings for my forensic destructive investigation.
> Q. And can you tell here whether they're on the first floor or second floor?
> A. Second floor.
> Q. These are all on the second floor? Were there any openings on the first floor?
> A. No.
> Q. Do you have any evidence of damage on the first floor?
> A. No.
> (Exhibit 5, Riesberg depo., p. 62, ln. 10-25)
>
> Q. And you would admit that on the first floor there is no damage, evidence of damage, from water infiltration?
> A. I agree.
> (Exhibit 5, Riesberg depo., p. 90, ln. 21-24)

One has to question why the government performed work on the first floor when there was never any evidence of damage.

Since the water infiltration problems stopped once the construction defects were completed, and there is no evidence of any damage directly attributable to the actual design of the joint between the sills, Gee & Jenson is entitled to summary judgment.

## CONCLUSION

Since the design contract did not specifically require flashing under the sill, and since the code allowed for the design provided by Gee & Jenson, there is no breach of the contract. Further, there are no damages as a result of the design. As soon as the construction defects were corrected, the water infiltration ceased. Therefore, Gee & Jenson is entitled to summary judgment.

Respectfully submitted,

**PEDERSEN & SCOTT, P.C.**

S/William A. Scott
William A. Scott
775 St. Andrews Blvd.
Charleston, SC 29412
(843) 556-5656
ATTORNEY FOR PLAINTIFF

Dated this 18th day of October, 2007.