FOR THE UNITED STATES COURT OF FEDERAL CLAIMS

DEPOSITION OF VIRGIL SVENDSEN

GEE & JENSEN ENGINEERS,
ARCHITECTS AND PLANNERS,

COPY

Plaintiff,

vs.

CASE NO. 1:05-cv-00457-LIB

UNITED STATES OF AMERICA,
DEPARMENT OF THE NAVY,

Defendant.

---

DEPONENT: VIRGIL SVENDSEN

DATE: APRIL 3, 2007

TIME: 1:00 P.M.

LOCATION: NAVFAC, SOUTHERN DIVISION
2155 EAGLE DRIVE
NORTH CHARLESTON, SOUTH CAROLINA

REPORTED BY: DENISE MCCAULEY, RPR, IA-CSR, GA-CCR
CLARK & ASSOCIATES
P.O. Box 73129
North Charleston, South Carolina 29422
(843)762-6294

EXHIBIT
8

VIRGIL SVENDSEN,

having been duly sworn, was examined and testified as follows:

EXAMINATION

BY MR. SCOTT, at 1:02 p.m.:

Q. Mr. Svendsen, my name is Bill Scott, and I represent Gee & Jensen in a complaint that they have filed against the government relating to, I think, the design of the N.I.S.E. East Building. Is that what it's referred to?
A. Right. That's correct.
Q. Since that's an acronym for the court reporter, can you tell us how that is?
A. You can say N.I.S.E. East.
Q. N.I.S.E. East?
A. Yeah. And everybody understands what that is.
Q. Have you ever been deposed before?
A. One time.
Q. It was some time ago, I understand?
A. Some time ago.
Q. Let me tell you how this is going to work.
A. Okay.
Q. I'm going to ask you questions. You've been designated as a 30(b)(6) deponent, which means you're

going to answer questions or you're supposed to be able to answer questions relating to certain areas of questions that I can ask. And just answer the question as best you can. If you have a question or you don't understand -- if you have a concern about the way the question is worded or you don't understand it or something, please let me know so that we know that the answer you give is to the question that I ask. Is that agreeable?

A. That's agreeable.

Q. Also since everything we're taking -- I mean, we're saying is being taken down by the court reporter here, please wait until I finish my question before you answer and I will try to do the same. At times it's difficult. We get into a conversational mode, but to help the court reporter get down a clear record, let's try to wait until one finishes before the other begins. Is that agreeable?

A. I understand. That's agreeable.

Q. Also if you have any questions during this deposition, please direct those to me. Your attorney may object to some questions. She may. I don't know. That's just something she can do, and then she may say, "Answer the question," but if she directs you not to answer the question, please do not answer the question.

A. Okay.
Q. And with that, can you state your full name for the record?
A. Virgil G. Svendsen.
Q. And I assume you used to work for the government?
A. Yes.
Q. When did you work for the government, and what was your position?
A. I worked here at Southern Division from 1993 to 2003.
Q. And what was your position during that time or positions?
A. I came and started as a project manager, in which position I was in from '93 to sometime in two -- or '95. And then I came to the Cost Engineering Division, where I was the A/E liability specialist/forensic engineering IDR manager and value engineer.
Q. Okay. And that was from what time until?
A. That was from '95 to 2003.
Q. Okay. Do you have an engineering background?
A. Yes. I'm a licensed engineer in the state of South Carolina since 1976. I got a bachelor's degree in civil engineering from Clemson in '69.

right.

Q. And then there's other flashing that, assuming water does get in, it's intended to get the water out?

A. Yes.

Q. Okay. Water shouldn't go through a window?

A. Through the glass? No, it shouldn't.

Q. It shouldn't go through the window period into the building?

A. It shouldn't.

Q. Do you know what self-flashing is?

A. Self?

Q. Yes.

A. No.

Q. Have you ever gone back through the actual contract documents between the government and Gee & Jensen and all the references and looked at those in comparison with the design to determine if there is any particular area where you could say this is the requirement and this is what they didn't do?

A. No.

Q. Can you tell me why the government then contends that Gee & Jensen breached the contract?

A. Because his design allows water that is trapped in the cavity wall to get into the building.

Q. And if it wasn't, that would have been a design defect, I mean, a construction defect?

A. If it wasn't installed properly, it would have been a construction defect.

Q. Didn't Mr. Riesberg note that there were caulking issues pretty much throughout this building? Is that your recollection?

A. I recollect that he said there were some issues. I don't recollect that his words were throughout.

Q. Okay. And I don't want to put words --

A. Oh, yeah.

Q. I mean, when I said throughout, I didn't mean everywhere. Can you tell me what you understand flashing to be?

A. Through-wall flashing is a barrier and an outlet for water that gets trapped in a cavity wall to get out, to prevent water from getting into the building where it can affect the structure, whether it be metal or wood or interior furnishings, wallpaper, wall finish, paint, carpet.

Q. Okay. Flashing, as I understand it, has really two purposes. One, to prevent water from ever getting in?

A. Right. Uh-huh. Some flashing does do that,

Q. But would it be fair to say that you can't say what water, if any, got in there as a result of these alleged design defects versus construction defects?

A. No. But the potential is always there.

Q. Are you aware of any standards of care imposed by the contract that say you have to meet a certain level or standard of care?

A. You mean the A/E contract or construction?

Q. The A/E contract.

A. The A/E contract. You know, I don't have the contract in front of me, so I couldn't quote it, but I know there are words to the effect that using good engineering practice and design standards and words of that nature, but I could not quote it.

Q. You said you left in 2003?

A. Yes. June of 2003.

Q. So you were not involved with writing the contract and the office's final decision in this case?

A. I don't believe so.

Q. It was done in April of 2004, so --

A. No. No.

Q. Have you seen the expert report prepared by Mr. Riesberg in this matter?

A. Yes.