**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| **GEE & JENSON ENGINEERS, ARCHITECTS AND PLANNERS,** | ) | |
| **Plaintiff,** | ) | Case Number: 1:05-cv-00457-LJB |
| **vs.** | ) | |
| **UNITED STATES OF AMERICA, DEPARTMENT OF THE NAVY,** | ) | |
| **Defendant.** | ) | |

**PLAINTIFF'S PROPOSED**
**FINDINGS OF UNCONTROVERTED FACTS**

1. The Plaintiff, Gee & Jenson Engineers, Architects and Planners (hereinafter "Gee & Jenson"), and the Defendant, United States of America, Department of the Navy (hereinafter "Government"), entered into an indefinite delivery requirements contract, No. N62467-93-D-0911 (hereinafter "the Contract") for architect-engineering services. (Answer and Counterclaim, Counterclaim, par. 2)

2. On or around September 28, 1993, the Government awarded Delivery Order No. 00001 to the Contract for the design of the NISE East Building in Charleston, SC. (Answer and Counterclaim, Counterclaim, par. 3).

3. The Contract for the NISE East Building under Delivery Order No. 00001 required Gee & Jenson to provide a design that complied with the Standard Building Code (1991 Edition). (Exhibit 5, Deposition of the Government's Expert, William F. Riesberg, p. 24, ln. 16-18 (hereinafter "Riesberg depo")).

4. With regard to flashing and veneer walls, the Standard Building Code provides:

> Flashing shall be provided as necessary to prevent the entrance of water at openings in or projections through veneered walls. Flashing shall be provided at intersections of veneered walls of different materials unless such materials provide a self flashing joint and at other points subject to the entrance of water. Caulking shall be provided where such flashing is determined by the Building Official to be impractical. (1991 Standard Building Code, Section 811.1.4).

5. The NISE East Building is a two story building with a "window wall" around both floors. The windows sit on a precast sill. (Exhibits 1 and 2, Pictures of NISE East Building).

6. The design provided by Gee & Jenson required a caulking joint between the precast sills, but did not provide for a metal flashing underneath the precast concrete sill at all places. (Exhibit 3, Original Design detail R97; Riesberg depo, p. 27, ln. 18-20).

7. Metal flashing underneath the sills would have been impractical because of all the holes drilled in the metal flashing for the bolts to hold the concrete sill down. Because holes were required in the metal flashing to allow for the bolts for the sill, that flashing would have been impractical to keep water out of the building. (Exhibit 9, Deposition of Timothy F. Hullihan, p. 69, ln. 8- p. 72 ln 7).

8. The Government was the approving authority and approved the design submitted by Gee & Jenson for the installation of the precast sill without metal flashing. (Exhibit 5, Riesberg depo. p.49, ln. 5-7).

9. The Government awarded the contract for construction of the building to Pizzagalli Construction Company (hereinafter "Pizzagalli").(Exhibit 7, Government Letter to Pizzagalli dated Nov. 3, 1999).

10. In 1998 the Government began to have problems with water infiltration into the building. (Answer and Counterclaim, Counterclaim, par. 6).

11. In 1999, the Government advised both Pizzagalli and Gee & Jenson of alleged design and construction defects and problems with water intrusion. (Exhibit 7, Government Letter to Pizzagalli dated Nov. 3, 1999; Answer and Counterclaim, Counterclaim, par. 10).

12. The caulking joints installed by Pizzagalli between the precast sills were defective. (Exhibit 5, Riesberg depo. p. 27, ln. 18-p. 28, ln. 3; p. 43, ln. 1-18).

13. If Pizzagalli installed the caulking joints between the precast sills properly, the joints would not have allowed water to get through. (Exhibit 5, Riesberg depo. p. 28, ln. 17- 24, p. 33, ln. 14-17).

14. A good sealant properly installed would last a minimum of 10 years, and can last up to 20 years. (Exhibit 5, Riesberg depo, p. 45, ln. 24 - p. 46, ln. 6; p. 75, ln. 23 - p. 76, ln. 20).

15. The Government did not have a maintenance plan for checking and replacing the caulking on the building. (Exhibit 6, Deposition of James Herrington, p. 25, ln. 3-7 (hereinafter "Herrington depo")).

16. All of the alleged leaks at issue with the precast sill occurred within ten years and a maintenance plan would have included replacing or repairing the caulking joints within a ten year period. (Exhibit 5, Riesberg depo, p. 76 ln. 8-23)

17. Pizzagalli performed repairs to the building as a result of the alleged construction defect. (Exhibit 5, Riesberg depo, p. 42, ln. 5-20).

18. After the repairs were completed by Pizzagalli, no further damage was observed in the building from water infiltration. (Exhibit 5, Riesberg depo. p. 43, ln. 19 - p. 45, ln. 21;

Exhibit 6, Herrington depo. p. 54, ln. 17 - p. 56, ln. 3).

19. There was never any evidence of water infiltration into the first floor. (Exhibit 5, Riesberg depo. p. 20, ln. 8-10; p. 62, ln. 10-25; p. 90, ln. 21-24).

20. The only reason any of the caulking joints between the precast sills on the second floor over the two wings had to be repaired was because Pizzagalli failed to install an upstand as required by the design. (Exhibit 5, Riesberg depo. p. 51, ln. 22 - p. 52 ln. 7).

21. All of the alleged leaks through the caulking joint in the precast sill resulted from poor workmanship in the caulking. (Exhibit 5, Reisberg depo, p. 76, ln. 21- p. 77, ln. 4).

22. The Government cannot say what water got into the building as the result of alleged design defects versus construction defects. (Exhibit 8, Deposition of Virgil Svendsen, p. 55, ln. 1-5; Exhibit 6, Herrington depo, p. 25, ln. 9-20).

23. On or around Spetmber 25, 2002, the Government awarded Riesberg a contract to redesign the joint between the precast sills. (Answer and Counterclaim, Counterclaim, par. 12; Exhibit 5, Riesberg depo, p. 46, ln. 10 - p. 47, ln. 24).

24. The design by Riesberg was a two-stage sealant joint that provides a secondary barrier to water intrusion. (Exhibit 5, Reisberg depo, p. 46, ln. 10 - p. 48, ln. 12).

25. The design by Riesberg did not include installation of metal flashing underneath the sills. (Exhibit 4, Revised Drawing Detail AR97; Exhibit 5, Riesberg depo, p. 90, ln. 16-20).

26. There is no requirement in the Contract or building code that requires a secondary barrier system. (Exhibit 5, Riesberg depo, p. 77, ln. 16-19).

27. The design by Reisberg met the building code requirements. (Exhibit 5, Riesberg depo, p. 25, ln. 21-23).

28. On or around March 14, 2005, the Government awarded a contract to Hitt Contracting to implement the design by Riesberg. (Answer and Counterclaim, Counterclaim, par. 13).

29. The Government has demanded that Gee & Jenson reimburse it for the costs of the work performed by Hitt plus the cost of the investigation and design by Riesberg. (Answer and Counterclaim, Counterclaim par. 15-16).

Respectfully submitted,

**PEDERSEN & SCOTT, P.C.**

S/William A. Scott

William A. Scott
775 St. Andrews Blvd.
Charleston, SC 29412
(843) 556-5656
ATTORNEY FOR PLAINTIFF

Dated this 31st day of October, 2007.