1IN THE UNITED STATES COURT OF FEDERAL CLAIMS

GEE & JENSON ENGINEERS, ARCHITECTS, AND PLANNERS,
Plaintiff,

v.

THE UNITED STATES,

Defendant.

No. 05-457C
(Judge Bush)

DEFENDANT'S RESPONSE TO PLAINTIFF'S
PROPOSED FINDINGS OF UNCONTROVERTED FACT

Pursuant to Rule 56(h)(2) of the Rules of the United States Court of Federal Claims, the defendant, the United States, respectfully submits its responses to plaintiff's proposed findings of uncontroverted fact, dated October 31, 2007, as follows:

1. The Plaintiff, Gee & Jenson Engineers, Architects and Planners (hereinafter "Gee & Jenson"), and the Defendant, United States of America, Department of the Navy (hereinafter "Government"), entered into an indefinite delivery requirements contract, No. N62467-93-D-0911 (hereinafter "the Contract") for architect-engineering services. (Answer and Counterclaim, Counterclaim, par. 2)

**RESPONSE**: Agree.

2. On or around September 28, 1993, the Government awarded Delivery Order No. 00001 to the Contract for the design of the NISE East Building in Charleston, SC. (Answer and Counterclaim, Counterclaim, par. 3).

**<u>RESPONSE</u>:** Agree. The Government notes, however, that Delivery Order 0001 under contract N62467-93-D-0911 was executed on 3 September 1993. DA35.[1]

3. The Contract for the NISE East Building under Delivery Order No. 00001 required Gee & Jenson to provide a design that complied with the Standard Building Code (1991 Edition). (Exhibit 5, Deposition of the Government's Expert, William F. Riesberg, p. 24, ln. 16-18, (hereinafter "Riesberg depo")).

**<u>RESPONSE</u>**: Disagree. The contract required Gee & Jenson to provide a design that complied with the NAVFAC Guide Specifications, Design Manuals, Military Handbooks and other types of criteria listed in Section 3.1 of the Statement of Work. DPFUF ¶ 8; DA53.

4. With regard to flashing and veneer walls, the Standard Building Code provides:

> Flashing shall be provided as necessary to prevent the entrance of water at openings in or projections through veneered walls. Flashing shall be provided at intersections of veneered walls of different materials unless such materials provide a self flashing joint and at other points subject to the entrance of water. Caulking shall be provided where such flashing is determined by the Building Official to be impractical.

(1991 Standard Building Code, Section 811.1.4).

**<u>RESPONSE</u>**: Agree that that Proposed Finding of Fact ¶ 4 accurately quotes Standard Building Code (1991) § 811.1.4. DA505.

5. The NISE East Building is a two story building with a "window wall" around both floors. The windows sit on a precast sill. (Exhibits 1 and 2, Pictures of NISE East Building).

**<u>RESPONSE</u>:** Agree. DPFUF ¶ 22.

6. The design provided by Gee & Jenson required a caulking joint between the precast

---

[1] "DA__" refers to pages of the defendant's appendix.

sills, but did not provide for a metal flashing underneath the precast concrete sill at all places. (Exhibit 3, Original Design detail R97; Riesberg depo, p. 27, ln. 18-20).

**RESPONSE:** Agree.[2] However, the original design detail is located on drawing A97, not R97. R97 is the detail of the remedial design by William Riesberg. Gee & Jenson's detail is found on drawing A97. See DA265.

7. Metal flashing underneath the sills would have been impractical because of all the holes drilled in the metal flashing for the bolts to hold the concrete sill down. Because holes were

required in the metal flashing to allow for the bolts for the sill, that flashing would have been impractical to keep water out of the building. (Exhibit 9, Deposition of Timothy F. Hullihan, p. 69, ln. 8- p. 72 ln 7).

**RESPONSE:** Disagree. Installation of metal flashing under the precast sills was not impractical. Through-wall flashing is a common and fundamental component of masonry wall systems. The Sheet Metal and Air Conditioning Contractor's National Association Architectural Sheet Metal Manual (SMACNA), Chapter 4, Through Wall Flashing-Installation-At Coping, illustrates an industry standard of how to protect penetrations of through wall flashing. DA503.

The Government notes that Gee & Jenson used metal flashing at some locations. Specifically, Drawings A62, A63, A64, and A65, all indicate flashing beneath precast coping at the roof. DA261-64. This coping is similar to the precast sills beneath the window walls as both have joints between adjacent units. DA481. Also, Drawing 5/A97 indicated flashing at a precast

[2] Plaintiff uses the term "caulking" joint when referring to the joint between adjacent precast sills. The Government notes that caulking is a material used in interior joints. Sealant is the product used for exterior joints. The Government uses the term "sealant" throughout its response where Plaintiff used the word "caulking."

sill under a window adjacent to the roof. DA481. These areas of the building would also have had holes drilled through the metal flashing.

This fact is not material because, as explained in our motion, the contract unequivocally requiref flashing and Gee & Jenson failed to inquire with the Navy prior to deviating from that requirement in its design.

8. The Government was the approving authority and approved the design submitted by Gee & Jenson for the installation of the precast sill without metal flashing. (Exhibit 5, Riesberg depo. p.49, ln. 5-7).

**RESPONSE:** Agree in part. The contract required Gee & Jenson to conform to the requirements of SOUTHNAVFACENGCOM P-141, Guide for Architect-Engineer Firms Performing Services for the Southern Division, Naval Facilities Engineering Command. DPFUF ¶ 6. Section 5 of the A/E Guide provides that "the work of the A/E will be reviewed by SOUTHNAVFACENGCOM to the extent necessary to establish conformance with the authorized scope and applicable Navy design criteria . . . " DPFUF ¶ 6; DA82.

Disagree with the inference that the Government approved a deviation from the requirements in the guide specifications to provide flashing in exterior masonry walls at all obstructions such as sills. DPFUF ¶ 13; Haynes Decl. ¶¶ 5-6.

9. The Government awarded the contract for construction of the building to Pizzagalli Construction Company (hereinafter "Pizzagalli"). (Exhibit 7, Government Letter to Pizzagalli dated Nov. 3, 1999).

**RESPONSE:** Agree. DPFUF ¶ 15; DA228.

10. In 1998, the Government began to have problems with water infiltration into the building. (Answer and Counterclaim, Counterclaim, par. 6).

**RESPONSE:** Agree. DPFUF ¶ 19; Pannullo Decl. ¶ 5.

11. In 1999, the Government advised both Pizzagalli and Gee & Jenson of alleged design and construction defects and problems with water intrusion. (Exhibit 7, Government Letter to Pizzagalli dated Nov. 3, 1999; Answer and Counterclaim, Counterclaim, par. 10).

**RESPONSE:** Agree. DPFUF ¶¶ 20, 28, 29.

12. The caulking joints installed by Pizzagalli between the precast sills were defective. (Exhibit 5, Riesberg depo. p. 27, ln. 18-p. 28, ln. 3; p. 43, ln. 1-18).

**RESPONSE:** Defendant is unclear to which time period Gee & Jenson is referring. Agree that in 1998, most of the sealant joints were in good working order. However, a survey was performed by Mr. Riesberg in 2004 during which it was observed that 241 of 327 (74%) of the sealant joints had failed in adhesion, cohesion, or both.[3] Riesberg Decl. ¶ 5.

13. If Pizzagalli installed the caulking joints between the precast sills properly, the joints would not have allowed water to get through. (Exhibit 5, Riesberg depo. p. 28, ln. 17- 24, p. 33, ln. 14-17).

**RESPONSE:** Disagree because the proposed fact is not supported by the cited evidence. The deposition testimony of Mr. Riesberg is misstated. Mr. Riesberg testified that if joints were "perfect," water would not have gotten through. Moreover, the testimony on page 33 relating to Mr. Scott's question "if the caulking had performed as it was intended, water would not have gotten through," was related to places adjacent to the roof where there was flashing. Finally, even if initial water infiltration was due to sealant joint failure, the reason that water could not be redirected to the outside of the building face was the lack of flashing. Riesberg Decl. ¶ 7.

[3] Failure in adhesion is failure to adhere to the adjacent material. Failure in cohesion is failure within the sealant joint material.

14. A good sealant properly installed would last a minimum of 10 years, and can last up to 20 years. (Exhibit 5, Riesberg depo, p. 45, ln. 24 - p. 46, ln. 6; p. 75, ln. 23 - p. 76, ln. 20).

**RESPONSE:** Agree.

15. The Government did not have a maintenance plan for checking and replacing the caulking on the building. (Exhibit 6, Deposition of James Herrington, p. 25, ln. 3-7 (hereinafter "Herrington depo")).

**RESPONSE:** Agree that the Navy did not have a written maintenance plan to inspect every inch of sealant joints around the building within the first year of the building's life.

16. All of the alleged leaks at issue with the precast sill occurred within ten years and a maintenance plan would have included replacing or repairing the caulking joints within a ten year period. (Exhibit 5, Riesberg depo, p. 76 ln. 8-23)

**RESPONSE:** Agree in part. The Government agrees that some leaks were discovered within a year of the Navy taking beneficial occupancy of the building. DPFUF ¶¶ 18; 19.

Disagree with the second clause of Proposed Finding of Fact ¶ 16 as it incorrectly quotes Mr. Riesberg's testimony. In response to a question that "A normal maintenance plan . . . [which] would include replacing or repairing any caulking joints would be done basically on something ten years or slightly less," Mr. Riesberg responded "yes."

17. Pizzagalli performed repairs to the building as a result of the alleged construction defect. (Exhibit 5, Riesberg depo, p. 42, ln. 5-20).

**RESPONSE:** Agree that Pizzagalli performed repairs to the building to address various construction deficiencies identified in the Navy's 3 November 1999 letter. DA425.

18. After the repairs were completed by Pizzagalli, no further damage was observed in the building from water infiltration. (Exhibit 5, Riesberg depo. p. 43, ln. 19 - p. 45, ln. 21;

Exhibit 6, Herrington depo. p. 54, ln. 17 - p. 56, ln. 3).

**RESPONSE:** Disagree. In 1998, Mr. Riesberg reported that most of the sealant joints were in good working order. After conducting a survey of the sealant joints in 2004, Mr. Riesberg reported that 74% of the sealant joints had failed. Riesberg Decl. ¶ 5.

19. There was never any evidence of water infiltration into the first floor. (Exhibit 5, Riesberg depo. p. 20, ln. 8-10; p. 62, ln. 10-25; p. 90, ln. 21-24).

**RESPONSE:** Agree only that no forensic or destructive tests were performed on the first floor to determine whether there was any water damage in those areas.

20. The only reason any of the caulking joints between the precast sills on the second floor over the two wings had to be repaired was because Pizzagalli failed to install an upstand as required by the design. (Exhibit 5, Riesberg depo. p. 51, ln. 22 - p. 52 ln. 7).

**RESPONSE:** Disagree. The same fix that was implemented to account for the lack of through-wall flashing under the precast sills on the first and second floors was installed at the coping adjacent to roofs where the through-wall flashing was installed but lacked an upstand. The Government further notes that Gee & Jenson had a duty under the Title II inspection and surveillance provisions of their contract to alert the Government to construction defects, and this construction deficiency, as well as the others discovered during the forensic engineering study, should have been brought to the Government's attention during construction. DPFUF ¶ 16. Moreover, this proposed finding of fact contradicts the plaintiff's proposed finding of fact number 13 which alleges that the cause of water infiltration was faulty sealant joints, not lack of an upstand.

21. All of the alleged leaks through the caulking joint in the precast sill resulted from poor workmanship in the caulking. (Exhibit 5, R[ie]sberg depo, p. 76, ln. 21- p. 77, ln. 4).

**RESPONSE:** Disagree. Leaks through the sealant joints resulted from various conditions, including failed joints, lack of flashing at the precast sills and no upstand on flashing installed at the roof. Riesberg Decl. ¶ 6.

22. The Government cannot say what water got into the building as the result of alleged design defects versus construction defects. (Exhibit 8, Deposition of Virgil Svendsen, p. 55, ln. 1-5; Exhibit 6, Herrington depo, p. 25, ln. 9-20).

**RESPONSE:** Agree. The Government cannot say whether the water initially penetrated the building face as a result of failed joints, lack of flashing, no upstand, or a combination of any of these three. Riesberg Decl. ¶ 6. However, once the water entered the building, it was unable to exit the building due to the lack of flashing. Riesberg Decl. ¶ 7.

23. On or around S[ep]tember 25, 2002, the Government awarded Riesberg a contract to redesign the joint between the precast sills. (Answer and Counterclaim, Counterclaim, par. 12; Exhibit 5, Riesberg depo, p. 46, ln. 10 - p. 47, ln. 24).

**RESPONSE:** Agree. DPFUF ¶ 50.

24. The design by Riesberg was a two-stage sealant joint that provides a secondary barrier to water intrusion. (Exhibit 5, R[ie]sberg depo, p. 46, ln. 10 - p. 48, ln. 12).

**RESPONSE:** Disagree that the two-stage joint was a "sealant" joint or that it was a "secondary" barrier. Mr. Riesberg designed a two-stage joint between the precast sills that did not rely solely on sealant to prevent water intrusion. The outer joint is a deterrent seal and the inner seal is a fail-safe joint to preclude water infiltration when the outer joint fails. The inner seal in this design is a neoprene compression seal adhered to the precast sills. The neoprene compression seal is not exposed to the elements. DPFUF ¶ 56; DA487.

25. The design by Riesberg did not include installation of metal flashing underneath the

sills. (Exhibit 4, Revised Drawing Detail AR97; Exhibit 5, Riesberg depo, p. 90, ln. 16-20).

**RESPONSE:** Agree.[4]

26. There is no requirement in the Contract or building code that requires a secondary barrier system. (Exhibit 5, Riesberg depo, p. 77, ln. 16-19).

**RESPONSE:** Contract and statutory interpretation are a matter of law and this proposed finding of fact is therefore inappropriate. However, to the extent the Court finds that this is an issue of fact, disagree because the contract required Gee & Jenson to include through-wall flashing in exterior masonry walls at all obstructions. DPFUF ¶ 12; DA224.

27. The design by Riesberg met the building code requirements. (Exhibit 5, Riesberg depo, p. 25, ln. 21-23).

**RESPONSE:** Agree. The code allowed the building official to determine and approve to what extent repairs to the building needed to meet technical codes.

28. On or around March 14, 2005, the Government awarded a contract to Hitt Contracting to implement the design by Riesberg. (Answer & Counterclaim, Counterclaim, par. 13).

**RESPONSE:** Agreed.

29. The Government has demanded that Gee & Jenson reimburse it for the costs of the work performed by Hitt plus the cost of the investigation and design by Riesberg. (Answer and Counterclaim, Counterclaim par. 15-16).

**RESPONSE:** Agree. DPFUF ¶51.

---

[4] The Government notes that Plaintiff's Exhibit 4 contains a drawing and annotations by an unknown party or parties.

Respectfully Submitted,

JEFFREY S. BUCHHOLTZ
Acting Assistant Attorney General

JEANNE E. DAVIDSON
Director

S/Donald E. Kinner
DONALD E. KINNER
Assistant Director

S/Tara K. Hogan
TARA K. HOGAN
Trial Attorney
Commercial Litigation Branch
Civil Division
U.S. Department of Justice
1100 L Street, N.W.
Attn: Classification Unit, 8th fl.
Washington, D.C. 20530
Tele: (202) 616-2228
Fax: (202) 305-7643

Attorneys for Defendant

OF COUNSEL:
PAMELA J. NESTELL
Trial Attorney
Department of the Navy
720 Kennon St, SE
Washington Navy Yard, DC 20374

January 18, 2008

CERTIFICATE OF ELECTRONIC FILING

I hereby certify that on January 18, 2008, a copy of the foregoing "DEFENDANT'S RESPONSES TO PLAINTIFF'S PROPOSED FINDINGS OF UNCONTROVERTED FACT" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/ Tara K. Hogan