IN THE UNITED STATES COURT OF FEDERAL CLAIMS

GEE & JENSON ENGINEERS, ARCHITECTS, AND PLANNERS,
Plaintiff,

v.

THE UNITED STATES,

Defendant.

No. 05-457C
(Judge Bush)

DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT
AND RESPONSE TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

JEFFREY S. BUCHOLTZ
Acting Assistant Attorney General

JEANNE E. DAVIDSON
Director

DONALD E. KINNER
Assistant Director

OF COUNSEL:

PAMELA J. NESTELL
Trial Attorney
Department of the Navy
720 Kennon St. SE
Washington Navy Yard, DC 20374

TARA K. HOGAN
Trial Attorney
Commercial Litigation Branch
Civil Division
U.S. Department of Justice
Washington, D.C. 20530
Tele: (202) 616-2228
Fax: (202) 305-7643

January 18, 2008

Attorneys for Defendant

**TABLE OF CONTENTS**

**PAGE(S)**

DEFENDANT'S BRIEF ... 1

STATEMENT OF THE ISSUES ... 1

STATEMENT OF THE CASE ... 2

STATEMENT OF FACTS ... 2

SUMMARY OF THE ARGUMENT ... 2

ARGUMENT ... 4

I. Legal Standard ... 4

II. Gee & Jenson Breached The Terms Of The Design Contract ... 5

A. The Contract Provisions Outline Gee & Jenson's Specific Duties, Including The Requirement Of Flashing ... 6

B. Gee & Jenson Is Not Entitled To Judgment In Its Favor Based Upon The Navy's Acceptance Of The Design ... 9

III. Gee & Jenson Is Liable For Damages, Including CDA Interest, Incurred By The Navy As A Result Of Its Deficient Design ... 10

A. The Government's Claimed Damages Were Reasonably Foreseeable ... 11

B. The Breach Was A Substantial Factor In The Government's Damages ... 11

C. The Government Has Shown Damages To A Reasonable Certainty ... 14

D. The Government Reasonably Mitigated Its Damages ... 15

IV. Gee & Jenson Failed To Demonstrate That It Is Entitled To Summary Judgment On The Issue Of Liability Based Upon Its Standard Of Care Argument ... 17

A. Expert Testimony On The Issue Of Standard Of Care ... 18

B. Gee & Jenson Contends That It Met The Standard Of Care By Following The Regional Building Code ... 19

V. Gee & Jenson's Remaining Arguments Do Not Demonstrate It Is Entitled To Summary Judgment ........ 22

CONCLUSION ........ 24

## TABLE OF AUTHORITIES

**CASES** **PAGE(S)**

Anderson v. Liberty Lobby, Inc.,
477 U.S. 242 (1986) .......... 4, 5

Bluebonnet Sav. Bank, FSB v. United States,
266 F.3d 1348 (Fed. Cir. 2001) .......... 11, 12

Brunson Associates, Inc., ASBCA No. 41201,
94-2 B.C.A. (CCH) 26, 1994 WL 226528 (May 18, 1994) .......... 10, 17

Cadre Corporation, ASBCA No. 33800,
89-1 B.C.A. (CCH) 21, 1988 WL 147371 (Dec. 28, 1988) .......... 10, 18

Celotex Corp. v. Catrett,
477 U.S. 317 (1986) .......... 4

Conner Brothers Const. Co., Inc. v. United States,
65 Fed. Cl. 657 (2005) .......... 4

Energy Capital Corp. v. United States,
302 F.3d 1314 (Fed. Cir. 2002) .......... 10

Erickson Air Crane Co. v. United States,
731 F.2d 810 (Fed.Cir.1984) .......... 10

First Heights Bank, FSB v. United States,
422 F.3d 1311 (Fed. Cir. 2005) .......... 15

Foster Constr. C.A. & William Bros. Co. v. United States,
435 F.2d 873 (Cl. Ct. 1970) .......... 5

Franklin Federal Savings Bank v. U.S.,
55 Fed.Cl. 108 (2003) .......... 18

Home Sav. of Am., FSB v. United States,
399 F.3d 1341 (Fed. Cir. 2005) .......... 15

Indiana Michigan Co. v. United States,
422 F.3d 1369 (Fed. Cir. 2005) .......... 10

Logicvision, Inc. v. United States,
54 Fed. Cl. 549 (2002) .......... 10

M.A. Mortensen Co. v. Brownlee,
363 F.3d 1203 (Fed. Cir. 2004) .......... 5, 10

Marathon Oil Co. v. United States,
16 Cl. Ct. 332, 336-37 (1989) .......... 14

Matsushita Elec. Indus. v. Zenith Radio Corp.,
475 U.S. 574 (1986) .......... 5

Neal & Co. v. United States,
945 F.2d 385 (Fed.Cir.1991) .......... 5

P.J. Maffei Bldg. Wrecking v. United States,
732 F.2d 913 (Fed. Cir. 1984) .......... 5

Ralph Larsen & Son, Inc. v. United States,
17 Cl.Ct. 39, 46 (1989) .......... 9

R.G. Wood & Associates, Ltd., PSBCA Nos. 1059, 85-1 B.C.A. (CCH) 17, 1985 WL 16387
(Feb. 14, 1985) .......... 18

Robinson v. United States,
305 F.3d 1330 (Fed. Cir. 2002) .......... 17

S.S. Silberblatt, Inc. v. United States,
193 Ct. Cl. 269, 288 (1970) .......... 9

Supermax, Inc. v United States,
35 Fed. Cl. 29 (1996) .......... 5

T.C. Bateson Contr. Co. v. United States,
162 Ct.Cl. 145, 188 (1963) .......... 16

Thomas v. Christ Hosp. & Med. Ctr.,
328 F.3d 890 (7th Cir.2003) .......... 18

Tri-Cor, Inc. v. United States,
198 Ct. C 458 F.2d 112 (1972) .......... 13

Varilease Tech. Group, Inc. v. United States,
289 F.3d 795 (Fed. Cir. 2002) .......... 4

Wang Labs., Inc. v. Mitsubishi Elecs. Am., Inc.,
103 F.3d 1571 (Fed. Cir. 1997) .......... 4

**STATUTES**

41 U.S.C. § 605 .......................................................................................................... 15

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| GEE & JENSON ENGINEERS, ARCHITECTS, AND PLANNERS, Plaintiff, | ) | |
| v. | ) | No. 05-457C (Judge Bush) |
| THE UNITED STATES, Defendant. | ) | |

DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT
AND RESPONSE TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Pursuant to Rules 1 and 56 of the Rules of the United States Court of Federal Claims ("RCFC"), the United States respectfully submits its motion for summary judgment and response in opposition to the motion for summary judgement filed by Gee & Jenson Engineers, Architects and Planners ("Gee & Jenson") on October 31, 2007. In support of our opposition and cross-motion, we rely upon our proposed findings of uncontroverted facts, the following brief, and our appendix filed concurrently with this motion. In summary, the United States is entitled to judgment in its favor because Gee & Jenson breached its contract, resulting in damages to the Government. In the alternative, Gee & Jenson's motion should be denied because genuine issues of material fact exist as to whether Gee & Jenson provided negligent professional architect services and the extent to which Gee & Jenson's breach resulted in damages to the Government.

DEFENDANT'S BRIEF

STATEMENT OF THE ISSUES

(1) Whether the Government is entitled to summary judgment because Gee & Jenson breached its contract by failing to detail flashing under the precast sills on the windowwalls.

(2) Whether, assuming this Court denies the Government's motion for summary judgment,

Gee & Jenson's motion should be denied because disputed issues of material fact exist as to whether Gee & Jenson demonstrated that it met the architect's professional standard of care.

STATEMENT OF THE CASE

Gee & Jenson provided architect-engineering ("A-E") services to the Navy for the design of a new two story building in Charleston, S.C. (the "NISE East" building). Shortly after the new building was occupied, the Navy identified several design deficiencies. Pursuant to the Navy's guidelines, the Naval Facilities Engineering Command, Southern Division ("SOUTHDIV") convened an A-E Liability Review Board which found Gee & Jenson liable for two design deficiencies, one of which was the failure to indicate flashing under the precast sills of the window wall system on both floors. The parties were unable to resolve the issue through mediation and the contracting officer issued a final decision on April 7, 2004, holding Gee & Jenson liable for $138,083, exclusive of interest.

STATEMENT OF FACTS

Pursuant to Rule 56(h)(1), our proposed findings of uncontroverted facts ("DPFUF") and our responses to the plaintiff's proposed findings of uncontroverted fact ("PPFUF") are concurrently filed under separate cover.

SUMMARY OF THE ARGUMENT

Gee & Jenson breached the contract by failing to follow a specific mandate contained in the guide specifications incorporated into the contract: the requirement for flashing at obstructions in exterior walls, such as precast sills, in all buildings constructed for SOUTHDIV. The failure to meet this requirement was a breach of the contract, which resulted in monetary damages claimed by the Government. Gee & Jenson does not dispute that the flashing at issue

was not included in its design, but argues that it was not required by the contract.

Flashing provides the traditional means of intercepting and diverting moisture to the exterior of a building. Through-wall flashing, the type at issue here, goes through the components of an exterior wall assembly to redirect water to the building's exterior. Without flashing, there is no way for any water penetrating the building face to escape. Gee & Jenson's failure to provide for flashing in its design meant that the Navy was left without adequate water intrusion protection for the building's fifty-year life cycle.

As a result of Gee & Jenson's failure to provide flashing, the Navy incurred reasonable and foreseeable monetary damages associated with correcting the effects of the defective design in the NISE East building. The Government was required to hire a forensic engineer to determine the cause of the water infiltration, an architect to design a corrective method for water to escape the building, and a contractor to perform the work. Thus, the Government is entitled to summary judgment as a matter of law.

Alternatively, the Court should deny Gee & Jenson's motion for summary judgment because Gee & Jenson has not shown it is entitled to summary judgment. Gee & Jenson's motion is premised upon its assertion that the regional building code applicable at the time, Standard Building Code (1991 edition), permitted it to rely upon caulking rather than flashing because flashing would have been impractical. However, Gee & Jenson misreads the building code upon which it relies. That code requires the determination of whether flashing would have been impractical to be made by the Building Official, a representative of the Navy. No such determination was made.

Finally, Gee & Jenson seeks to escape liability because it contends that the physical

water damage to the building was caused by the faulty workmanship of the construction contractor, Pizzagalli Construction Company ("Pizzagalli"), in installing the sealant joints designed by Gee & Jenson. The Navy's claim for damages has never been for the costs of repairing the physical water damage which resulted when water entered the building. Rather, the Navy's claim is comprised of the costs associated with the design and implementation of an architectural solution to address the lack of flashing for the remaining life of the building. These costs are attributable to Gee & Jenson alone.

## ARGUMENT

### I. Legal Standard

The Government's cross-motion presents a clear issue of contract interpretation: whether Gee & Jenson breached the contract by failing to include the required flashing in its design. Issues of contract interpretation present questions of law that are uniquely appropriate for summary judgment. Varilease Tech. Group, Inc. v. United States, 289 F.3d 795, 798 (Fed. Cir. 2002) ("Issues of contract interpretation . . . raise questions of law that are uniquely appropriate for summary judgment")); Conner Brothers Const. Co., Inc. v. United States, 65 Fed. Cl. 657, 667 (2005).

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." RCFC 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); see also Wang Labs., Inc. v. Mitsubishi Elecs. Am., Inc., 103 F.3d 1571 (Fed. Cir. 1997).

This Court may grant summary disposition where there is no genuine dispute over a material fact. Anderson, 477 U.S. at 248. A material fact is one that might affect the outcome of the suit under the governing substantive law. Id. Any doubt as to factual issues must be resolved in favor of the party opposing summary judgment to whom the benefit of all presumptions and inferences run. Matsushita Elec. Indus. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

If the non-moving party produces sufficient evidence to raise a question as to the outcome of the case, the motion for summary judgment should be denied. Supermax, Inc. v United States, 35 Fed. Cl. 29, 37 (1996). However, extraneous facts, many of which are disputed, and unsupported arguments, such as those presented by the plaintiff here, will not defeat a motion for summary judgment. Anderson, 477 U.S. at 247-48.

## II. Gee & Jenson Breached The Terms Of The Design Contract

The issue of Gee & Jenson's contractual obligations is a matter of law to be determined by this Court. M.A. Mortensen Co. v. Brownlee, 363 F.3d 1203, 1206 (Fed. Cir. 2004); Neal & Co. v. United States, 945 F.2d 385, 390 (Fed.Cir.1991); P.J. Maffei Bldg. Wrecking v. United States, 732 F.2d 913, 916-17 (Fed. Cir. 1984); accord Foster Constr. C.A. & William Bros. Co. v. United States, 435 F.2d 873, 880 (Cl. Ct. 1970) ("The issue of the indications in the contract is one of law for decision by the tribunal, not an issue of fact to be proven by a preponderance of expert testimony[.]"). Therefore, this Court must begin with the contract's plain language in order to determine Gee & Jenson's contractual duties specifically required Gee & Jenson to design flashing under the precast window sills. From a review of the contract provisions, design criteria, guide specifications, and military handbooks incorporated by reference into the contract,

that question must be answered in the affirmative.

Gee & Jenson contends that the contract limited its professional obligations to compliance with the regional building code. PPFUF ¶ 3; Plaintiff's Motion for Summary Judgment ("Pl. Mot.") at 5.[1] Gee & Jenson, however, does not direct the Court's attention to any contract provision supporting that assertion.

A. The Contract Provisions Outline Gee & Jenson's Specific Duties, Including The Requirement Of Flashing

The design contract contained a number of provisions addressing Gee & Jenson's responsibility as the A-E. Incorporated into the contract was FAR 52.236-23 RESPONSIBILITY OF THE ARCHITECT-ENGINEER CONTRACTOR (APR 1984), which outlines the general responsibility of the architect-engineer contractor in A-E contracts. This standard provision (the "A-E liability clause") specifies, in part:

> (a) the Contractor shall be responsible for the professional quality, technical accuracy, and the coordination of all designs, drawings, specifications, and other services furnished by the Contractor under this contract. The Contractor shall, without additional compensation, correct or revise any errors or deficiencies in its design, drawings, specifications, and other services.
>
> (b) Neither the Government's review, approval or acceptance of, nor payment for, the services required under this contract shall be construed to operate as a waiver of any rights under this contract or of any cause of action arising out of the performance of this contract, and the Contractor shall be and remain liable to the Government in accordance with applicable law for all damages to the Government caused by Contractor's negligent performance of any of the services furnished under this contract.

[1] Whether Gee & Jenson met the provisions of the regional building code is discussed in Section IV of this brief.

DPFUF ¶ 2; DA21.[2]

Section 2 of the contract's Statement of Work, entitled "Scope of Services," confirms that the A-E was contractually obligated to follow the requirements of the Navy's A-E Guide:

> Phase III of A/E services includes development of a complete design for the Project including preparation of drawings, specifications, design calculations, and detailed estimates of construction cost. The A/E shall conform to the requirements of SOUTHNAVFACENGCOM P-141 (A-E Guide) except as modified herein.

DPFUF ¶ 4; DA40.

Section 3.1 of the Statement of Work reiterates that Gee & Jenson should "design the project and prepare the project specifications in accordance with criteria and guide specifications listed in the current SOUTHNAVFACENGCOM Index of Criteria and with other criteria as may be provided by the [Engineer in Charge.]" DPFUF ¶ 8; DA53.

Section 5 of the A-E Guide, entitled "Responsibilities of the A-E," provides:

> THE A/E ASSUMES FULL RESPONSIBILITY FOR THE TECHNICAL ACCURACY AND PROFESSIONAL ADEQUACY of all work which he presents over his signature. THE A/E SHALL . . . ASSURE ALL ELEMENTS ARE DESIGNED CORRECTLY AND IN ACCORDANCE WITH THE BEST ARCHITECTURAL AND ENGINEERING PRACTICES. ERRORS AND/OR DEFICIENCIES IN THE A/E'S PERFORMANCE SHALL BE CORRECTED OR REVISED BY THE A/E AT NO ADDITIONAL FEE.

DPFUF ¶ 6; DA82(emphasis in original).

Section 2, paragraph 2 of the A-E Guide, entitled "Implementation," provides:

> Before beginning the design, the A/E should review current criteria, instructions and guide specifications provided by

---

[2] "DA__" refers to pages of the defendant's appendix.

> SOUTHNAVFACENGCOM, and make a thorough study of conditions at the site and requirements of the project. If, after an analytical review, the A/E is of the opinion that a deviation from instructions, Navy criteria or building codes would be of benefit to the Government, the A/E shall bring the matter to the attention of the EIC for a decision. Government construction is also required to conform to the nationally recognized building codes, which predominate in the local area. SOUTHNAVFACENGCOM encourages the A/E to use his ingenuity, talent and professional expertise to develop the best possible design for all elements of the project within the constraints imposesd. However, the use of untried concepts and materials for which no "track record" exists, is discouraged and will be rejected. . . .

DPFUF ¶ 5; DA76 (emphasis added). Thus, if Gee & Jenson believed a deviation from the guide specifications was warranted, it was required to seek prior permission from NAVFAC to do so.

The NAVFAC guide specifications ("NFGS") includes section 04200 UNIT MASONRY. DPFUF ¶ 12; DA199-225. This specification was required to be incorporated into the project's design. Importantly, that section contains the following note for the section 2.3.5, entitled "Through-Wall Flashing:

> Note D: Require flashing in exterior masonry walls, including single-wythe construction, at all obstructions such as bond beams, sills, lintels, and concrete tie beams. The wall design and detailing must conform to National Concrete Masonry Association (NCMA) publications: TEK 13A, "Details for Building Dry Concrete Masonry Walls"; TEK 53, "Design of Concrete Masonry for Crack Control"; and TEK 126, "Flashing Concrete Masonry." Show locations and details on project drawings. This is a regional requirement which shall be used, when applicable, for SOUTHNAVFACENGCOM projects; when appropriate, the requirements may be used for projects in other areas.

DPFUF ¶ 12; DA224 (emphasis added.)

The guide specifications, incorporated by reference into the contract, required Gee & Jenson to design flashing at all obstructions in the exterior walls, including the precast sills at

issue here. However, the drawings Gee & Jensen prepared for the construction contract did not indicate flashing underneath the precast sills. PPFUF ¶ 6. Rather than following the contract or the guide specifications, Gee & Jenson's design relied upon a sealant joint to prevent water infiltration. Pl. Mot. at 3; 5. Notably, Gee & Jenson's design provided no means for intercepting and diverting water to the building's exterior. Regardless of whether the regional building code may have provided the architect discretion in the use of flashing, as Gee & Jenson alleges, Gee & Jenson was plainly required to design the flashing. See Ralph Larsen & Son, Inc. v. United States, 17 Cl.Ct. 39, 46 (1989) (noting that the Government may require material specifications more or less stringent than the standards normally accepted in a trade or industry at the time); S.S. Silberblatt, Inc. v. United States, 193 Ct. Cl. 269, 288 (1970) (noting that trade practices in the building industry cannot override an unambiguous contract provision). There is no dispute that Gee & Jenson did not design flashing underneath the precast sills. PPFUF ¶ 6. Therefore, because the flashing was a clear contract requirement, the Government has demonstrated that Gee & Jenson breached the contract.

B. Gee & Jenson Is Not Entitled To Judgment In Its Favor Based Upon The Navy's Acceptance Of The Design

Gee & Jenson appears to allege that because the Government accepted its design, it is excused from any liability with respect to the design of the building. Pl. Mot. at 6. Gee & Jenson is plainly incorrect. As noted above, the A-E liability clause incorporated into both the original contract and Delivery Order No. 1, expressly provides that the Government's approval or acceptance of the design cannot be construed as a waiver of the Government's right to pursue damages caused by Gee & Jenson's negligent performance. DPFUF ¶ 2. Thus, under the explicit terms of the contract, the Navy's acceptance and approval of Gee & Jenson's design

does not relieve Gee & Jenson of liability for damages caused by architect negligence. See Brunson Associates, Inc., ASBCA No. 41201, 94-2 B.C.A. (CCH) ¶ 26,936 at 134,153, 1994 WL 226528 (May 18, 1994) (rejecting identical argument that Government's review and approval of architect's design relieved architect of liability for professional negligence); Cadre Corporation, ASBCA No. 33800, 89-1 B.C.A. (CCH) ¶ 21,517 at 108,383, 1988 WL 147371 (Dec. 28, 1988) (same).[3] It is of no consequence whether the Navy approved or reviewed Gee & Jenson's design because Gee & Jenson alone was responsible for rendering its professional services consistent with contract requirements and best practices, as a matter of law.

## III. Gee & Jenson Is Liable For Damages, Including CDA Interest, Incurred By The Navy As A Result Of Its Deficient Design

Because Gee & Jenson breached the contract by failing to provide a design that included through-wall flashing underneath the precast sills, it is responsible for damages that were proximately caused by its breach. Damages for a breach of contract are recoverable where: (1) the damages are reasonably foreseeable by the breaching party at the time of contracting; (2) the breach is a substantial causal factor in the damages; and (3) the damages are shown with reasonable certainty. Indiana Michigan Co. v. United States, 422 F.3d 1369, 1373 (Fed. Cir. 2005) (citing Energy Capital Corp. v. United States, 302 F.3d 1314, 1320 (Fed. Cir. 2002)). Because the Government's damages were reasonably foreseeable and proximately caused by Gee & Jenson's breach, the Government is entitled to judgment.

---

[3] While this Court is not bound by the Boards of Contract Appeals' decisions, it has recognized the boards' expertise in cases involving Government contracts. M.A. Mortenson Co. v. Brownlee, 363 F.3d at 1205; Logicvision, Inc. v. United States, 54 Fed. Cl. 549, 553 (2002) (citing Erickson Air Crane Co. v. United States, 731 F.2d 810, 814 (Fed.Cir.1984)).

A. <u>The Government's Claimed Damages Were Reasonably Foreseeable</u>

First, the Government's claimed damages were foreseeable to the architect at the time the contract was executed. The A-E Responsibility Clause plainly provides that "the Contractor shall be and remain liable to the Government in accordance with applicable law for all damages to the Government caused by the Contractor's negligent performance of any of the services performed under this contract." DPFUF ¶ 2. The A-E Guide also provides that the architect would be responsible for correcting errors or deficiencies at no additional cost to the Government. DPFUF ¶ 6. Therefore, Gee & Jenson was on notice at the time it entered the contract that it could be held liable for damages caused by its failure to provide professional architectural services. The cost of identifying a design defect and remedying that defect, including redesign efforts and actual construction costs are the type of reasonably foreseeable damages associated with deficient architectural services.

B. <u>The Breach Was A Substantial Factor In The Government's Damages</u>

Where a contract provision has been breached, the non-breaching party need only show that the breach was a substantial factor in the damages. <u>Bluebonnet Sav. Bank, FSB v. United States</u>, 266 F.3d 1348, 1355 (Fed. Cir. 2001). As a direct result of Gee & Jenson's failure to design flashing under the precast sills, Pizzagalli did not install any through-wall flashing under the precast sills of the window walls on the first and second floors. Gee & Jenson compounded its omission of flashing in the design by failing to identify the lack of flashing during construction, during which it had a contractual obligation to provide Title II inspection services on behalf of the Government. DPFUF ¶ 16.

Within one year of occupying the NISE East building, tenants noticed water stains and

damage in several areas on the second floor of the building. DPFUF ¶ 19. The Navy hired a forensic architect to determine the cause of the water infiltration. DPFUF ¶ 21. Through forensic testing, the Navy determined that water was entering the building at joints between the precast sills and that, due to the lack of flashing, the water was unable to exit the building. DPFUF ¶ 25.

In the July 1998 initial forensic consultation, the Navy's forensic expert, Mr. Riesberg, opined: "the manifestation of leaks are few and the resulting damage, to date, appears to be light to moderate. However, if the leaks are left unattended, substantial damage will result." DA289. In the November 1998 forensic study report, Mr. Riesberg confirmed that "[d]amage is predicted to continue. If deficiencies are not corrected, they will result in severe damage over time. Corrective measures are recommended to provide long-term solutions." DA301. Mr. Riesberg stated that "had the walls not been repaired, damage would have occurred throughout the life of the walls, which would have been substantially diminished by the presence of these deficiencies." DA489. The costs associated with remedying a design flaw which rendered the building vulnerable to severe water damage are costs which flowed "inevitably and naturally" from the Gee & Jenson's conduct. Bluebonnet, 266 F.3d at 1356.

Gee & Jenson attacks the Government's claim for damages, contending that it cannot be determined that the lack of flashing caused the water damage. Pl. Mot. at 7-8. Had Pizzagalli installed perfect sealant joints, Gee & Jenson contends, no leaks would have occurred within the first ten years of the building's life. Gee & Jenson also argues that "[because] the water infiltration problems stopped once the construction defects were completed, and there is no evidence of any damage attributable to the actual design of the joint between the sills," Gee &

Jenson is entitled to judgment. Pl. Mot at 10. Gee & Jenson's flawed arguments relating to causation do not demonstrate that it is entitled to summary judgment.

Simply put, the Government's claim for contract damages is not based upon the actual physical water damage to the building.[4] Regardless of how the water entered the building, Pizzagalli's workmanship had nothing to do with the design's lack of flashing or its impact upon the life and maintainability of the building. The Government seeks damages it incurred as a result of identifying and addressing the lack of flashing, including designing and implementing an architectural solution to provide adequate long term water intrusion protection. Those damages are solely attributable to Gee & Jenson's actions. See Tri-Cor, Inc. v. United States, 198 Ct. Cl. 187, 458 F.2d 112, 127 (1972) (holding contractor liable for cost of additional work attributable to its negligence).

Gee & Jenson's citations to cases apportioning damages are inapt. Pl. Mot. at 7. Indeed, the Navy has already apportioned damages, charging Gee & Jenson with the costs of identifying and addressing the lack of flashing and ensuring that the building would meet its fifty year life cycle, as contemplated in the contract. Moreover, even assuming that the Court concludes that it must consider Pizzagalli's workmanship, Gee & Jenson's argument merely raises a disputed issue of fact. This is because, unlike the cases cited in plaintiff's motion, Gee & Jenson, as the Title II inspector, was the entity responsible for inspecting Pizzagalli's work and advising the Government of any defects in the contractor's work. DPFUF ¶ 16.

Gee & Jenson's arguments regarding Pizzagalli's workmanship also rest upon its

---

[4] The Navy has never sought to recoup the cost of repairing the walls following destructive testing, replacing wet and moldy carpet, repainting, etc., all of which was borne by the Navy.

assumption that flashing was not required by the contract and that caulking was an acceptable substitute. Before reaching this issue, this Court must first determine whether Gee & Jenson's design was consistent with contract requirements and the applicable standard of care. Based upon the contract requirements and applicable standards, reliance on sealant as the only means to address moisture migration fell below the standard of care and was contrary to the terms of the contract. Gee & Jenson has presented argument, but no evidence, to the contrary.

Finally, to the extent that this Court considers it to be material, there is a disputed issue of fact as to whether water infiltration problems continued after Pizzagalli completed its repairs in 2000. Gee & Jenson contends that there were no water infiltration problems observed following Pizzagalli's repairs. Pl. Mot. at 8. The Government has presented evidence to the contrary that damage was still being noted in 2004.

C. The Government Has Shown Damages To A Reasonable Certainty

As our evidence demonstrates, it was entirely reasonable for the Government to make "realistic and economical" repairs, rather than waiting for further physical damage, so that the suitability of the building could be sustained over its intended life span. The cost of investigating the design defects in the building, the cost of designing an architectural solution to address the lack of flashing, and the construction of that new architectural solution are all "natural and probable consequences" of Gee & Jenson's breach. Marathon Oil Co. v. United States, 16 Cl. Ct. 332, 336-37 (1989). Moreover, the Navy significantly mitigated its damages by implementing a lower cost fix with a price tag of $99,400 rather than installing entirely new flashing. Recovery is appropriate.

Gee & Jenson cannot seriously dispute that the Government's damages are real and

demonstrable. The Navy incurred $4,613 for the initial forensic consultation, $41,413 for the comprehensive forensic study, and $17,014 for the contract to design a mitigative fix. DPFUF ¶¶ 21; 50; DA285; 461. After Gee & Jenson declined numerous opportunities to construct the fix itself, the Government ultimately was required to pay $99,400 to hire Hitt Contracting, Inc. to install the two-stage joint. DPFUF ¶ 55; DA470. In addition, pursuant to SOUTHDIV Inst. 4335.2C, the Navy charged Gee & Jenson with $12,999.20 of administrative costs associated with administering these contracts. DPFUF ¶ 51; DA447.

Finally, the Government is entitled to interest pursuant to the Contracts Disputes Act, 41 U.S.C. § 605. The A-E Contract incorporated FAR 52.232-17, Interest (JAN 1991), which provides for "simple interest from . . . the date of the first written demand for payment." In accordance with FAR 52.232-17(b)(2), such interest becames due at "the date of the first written demand for payment consistent with this contract." Here, the contracting officer issued multiple demand letters for reimbursement of the cost of remediating the design defect, the first on November 24, 1999. DPFUF ¶ 37; DA398. Thus, the Government is entitled to simple interest at the rate established by the Secretary of the Treasury.

D. <u>The Government Reasonably Mitigated Its Damages</u>

In mitigating damages, the law requires only that the non-breaching party make "those efforts that are fair and reasonable under the circumstances." <u>First Heights Bank, FSB v. United States</u>, 422 F.3d 1311, 1316 (Fed. Cir. 2005) (quoting <u>Home Sav. of Am., FSB v. United States</u>, 399 F.3d 1341, 1353 (Fed. Cir. 2005)). The Navy is entitled to the full cost of its claimed damages because it reasonably mitigated its damages.

Given the expert opinion that severe damage to the building would result if the Navy

took no action to address the lack of flashing, it would have been inappropriate for the Navy to do nothing once aware of the missing flashing. The ultimate design repair was a reasonable and economical way to address the architectural deficiencies to ensure that the building lasted through its fifty year life cycle.

The Navy initially intended to remove all the windows and precast sills in the building and install flashing, a solution which would have been extremely disruptive to the building's tenants. The cost of this remedy was estimated to be approximately $455,000, an amount that did not include the cost of removing of the windows. DPFUF ¶ 27. In fact, Gee & Jenson, through counsel, complained that this initial proposed method was not realistic or economical. DA420-21. Gee & Jenson was offered numerous opportunities to design and construct a solution at their own cost but declined to do so. DPFUF ¶ 43; DA468. As a result, the Navy was required to invest in the design of a solution for adequate long term water intrusion protection, which included hiring an architect to design a solution and a construction contractor to install the fix. The remedial design eventually installed consisted of a two-stage joint, in which the outer joint is a deterrent seal and the inner seal is a neoprene compressional seal adhered to the precast sill. DPFUF ¶ 56.

It is the breaching party's burden to prove that the actions taken in mitigation were not reasonable. See T.C. Bateson Contr. Co. v. United States, 162 Ct.Cl. 145, 188 (1963). Having declined the opportunity to remediate the design defect, Gee & Jenson cannot now be heard to complain of the actual, final cost of remediation, which proved to be eminently reasonable given that the design defect affected the integrity of the structure.

Gee & Jenson also criticizes the Navy for performing repairs on the first floor, claiming

that there was no evidence of damage in that location. Pl. Mot. at 9. The Navy was not required to wait until actual physical damage occurred to remedy the design defect, and Gee & Jenson points to no authority requiring it to do so. Indeed, had the Government waited until significant physical damage occurred, Gee & Jenson would have undoubtedly claimed that the Navy failed to mitigate its costs. See Robinson v. United States, 305 F.3d 1330, 1333 (Fed. Cir. 2002) (holding that "a party cannot recover damages for loss that he could have avoided by reasonable efforts.") Because the Government's claimed damages are foreseeable, reasonable, and result from Gee & Jenson's breach, the Government is entitled to judgment in its favor.

## IV. Gee & Jenson Failed To Demonstrate That It Is Entitled To Summary Judgment On The Issue Of Liability Based Upon Its Standard Of Care Argument

Based on the above argument, the Government is entitled to summary judgment based upon the clear contract language and our demonstration that Gee & Jenson's breach caused the Government's damages. However, if this Court were to find that the A-E Guide and the NAVFAC guide specifications, incorporated into the contract, did not mandate that Gee & Jenson design flashing under the precast sills, the central issue in this case becomes whether Gee & Jenson failed to meet the architect's professional standard of care in its design of the NISE East building. Brunson Associates, Inc., ASBCA No. 41201, 94-2 B.C.A. (CCH) ¶ 26,936 at 134,153, 1994 WL 226528 (May 18, 1994) .

In addition to following the provisions cited above, the contract required Gee & Jenson to provide competent professional services in accordance with best architectural and engineering practices. DPFUF ¶¶ 2;6. An architect must exercise the degree of competence ordinarily exercised by reputable members of the profession. R.G. Wood & Associates, Ltd., PSBCA Nos. 1059, 1229, 85-1 B.C.A. (CCH) ¶ 17,898 at 89,632, 1985 WL 16387 (Feb. 14, 1985); Cadre

Corporation, ASBCA No. 33,800, 89-1 B.C.A. (CCH) ¶ 21,517 at 108, 382-83, 1988 WL 147371 (Dec. 28, 1988). Because Gee & Jenson has provided no expert testimony as to the proper standard of care, this Court should not enter summary judgment in its favor.

A. Expert Testimony On The Issue Of Standard Of Care

Gee & Jenson puts forth no expert testimony to support its contention that it met the standard of care. By contrast, the Government's expert witness, William Riesberg, emphatically concluded that "the architect breached the standard of care by failing to design through-wall flashing except where they are adjacent to a roof. This opinion is based on a review of the applicable code, the project drawings, the project specifications, relevant industry standards and my experience as an architect." DA480. Mr. Riesberg's opinion was supported by several industry standards and codes, including: (1) Sheet Metal and Air Conditioning Contractors' National Association's Architectural Sheet Metal Manual, which indicates through-wall flashing under the precast concrete sill, (2) Brick Institute of America publications on flashing, and (3) the American Institute of Architects' Architectural Graphic Standards. DA484-85.

By submitting expert testimony in response to Gee & Jenson's motion, the Government has, at a minimum, demonstrated a disputed issue of material fact precluding summary judgment in Gee & Jenson's favor. Franklin Federal Savings Bank v. U.S., 55 Fed.Cl. 108, 128 (2003) (denying summary judgment motion where experts' financial models were in "fundamental conflict"); Thomas v. Christ Hosp. & Med. Ctr., 328 F.3d 890, 895-96 (7th Cir.2003) (holding that conflicting opinion testimony created a genuine issue of material fact). However, as demonstrated below, Gee & Jenson's motion on this issue must fail because it cannot show that it is entitled to judgment, even based upon its own argument as to the standard of care.

B. Gee & Jenson Contends That It Met The Standard Of Care By Following The Regional Building Code

Gee & Jenson's present argument is that it met the standard of care by complying with the applicable regional building code. Pl. Mot. at 5. As support, Gee & Jenson relies upon deposition testimony of Mr. Riesberg, who was asked "what contract requirement in the A/E contract specifically required flashing to be underneath that sill." His reply was "[w]ell, it starts with the building code." DA512 (Riesberg transcript p. 24 line 15). In fact, Mr. Riesberg testified later that Gee & Jenson would not necessarily meet the standard of care by meeting the building code because "the code is an absolute minimum." DA517 (Riesberg transcript p. 59 line 6-7). As noted above, although the contract required Gee & Jenson to comply with local building codes, the guide specifications incorporated into the contract specifically required through-wall flashing under the sills. DPFUF ¶ 12. If Gee & Jensen wished to deviate from this requirement, it was required to seek permission in writing to do so, which it did not do. DPFUF ¶ 5.

Even assuming that Gee & Jenson were correct that its obligation was limited to compliance with the regional building code, Gee & Jenson cannot demonstrate that is entitled to summary judgment because it cannot show that it complied with the code. Section 811, Veneered Walls, of the Standard Building Code, 1991, provides, in part:

> Flashing shall be provided as necessary to prevent the entrance of water at openings in or projections through veneered walls. Flashing shall be provided at intersections of veneered walls of different materials unless such materials provide a self flashing joint and at other points subject to the entrance of water. Caulking shall be provided where such flashing is determined by the Building Official to be impractical.

Standard Building Code § 811.1.4 (DA507).

Gee & Jenson contends that the first sentence of the provision grants the architect discretion to install flashing. Pl. Mot. at 6. A careful reading of this sentence with those that follow reveals that the words Gee & Jenson relied upon are generic, introductory language only. The second sentence clearly mandates flashing at "intersections of veneered walls of different materials unless such materials provide a self flashing joint." The concrete precast sill is a different material than the brick masonry of the building face and the joints between the adjacent precast sill members are not self-flashing. DPFUF ¶ 14. Therefore, the second sentence of the code unequivocally required Gee & Jenson to provide flashing under the precast sill. Rather than addressing this straightforward requirement, Gee & Jenson skips to the third sentence, contending that it would have been impractical to install flashing underneath the precast sills. Pl. Mot. at 6.

Gee & Jenson's assertion that flashing would have been impractical is based upon the testimony of its primary architect on this project, Timothy Hullihan, who testified that flashing would have been impractical due to the holes drilled to bolt the concrete sill down. PPFUF ¶ 7. In making this argument, Gee & Jenson ignores the critical language in the third sentence: "Caulking shall be provided where such flashing <u>is determined by the Building Official</u> to be impractical." (emphasis added). Gee & Jenson has proffered no evidence accompanying its summary judgment motion demonstrating that the Navy's building official made a determination that flashing would be impractical. Instead, Gee & Jenson contends that, by virtue of the Navy's acceptance of Gee & Jenson's design of the entire building, the Navy made a determination that flashing was impractical. PPFUF ¶ 8; Pl. Mot. at 6. In fact, no Navy official ever made a determination that flashing was impractical, or that Gee & Jenson was permitted to deviate from

the clear requirement of the building code, the contract, and guide specifications for through-wall flashing. DPFUF ¶ 13. No Navy official was given the opportunity to determine the use of flashing because Gee & Jenson never indicated the deviation from the standard when submitting the design.

Indeed, if asked, the Navy would not have made the determination that installation of flashing at the precast sill was impractical. First, such a determination would be contrary to the NAVFAC guide specification requiring flashing at all sills. DPFUF ¶ 12. Second, there is no evidence suggesting that flashing would have been impractical. The Government's expert witness testified that "there's nothing impractical about installing [flashing] at this location . . . It's a very common material. It is used in this manner." DA519-520 (Riesberg transcript p.91 line 23-p. 92 line 2). Mr. Riesberg more fully stated: "It is my opinion that it is not impractical to install through-wall flashing. Through-wall flashing is a common and fundamental component of masonry wall systems and it is wise to deploy it." DA481.

Gee & Jenson's own expert witness testified that there was no reason why flashing would be impractical under a precast sill. DA525 (Schneider transcript p.35 lines 7-9). Moreover, Gee & Jenson's argument regarding impracticality makes no sense considering that Gee & Jenson did design flashing at the roof detail. DA261( drawing A62) The Government's expert stated, in reference to the comparable details at the roof, that "these details are relevant because the coping [at the roof] is similar to the [precast] sill as it has joints between the adjacent units like the precast sills." DA481. In other words, the same holes caused by bolting the coping that Mr. Hullihan contends would have made flashing impractical under the precast sills were also present at the roof, where Gee & Jenson utilize flashing.

Because Gee & Jenson has provided no evidentiary support that it met the requirements of the regional building code, including showing that the Navy determined that flashing under the precast sills would be impractical, Gee & Jenson's motion must fail.

V. Gee & Jenson's Remaining Arguments Do Not Demonstrate It Is Entitled To Summary Judgment

None of Gee & Jenson's various other arguments show that the plaintiff is entitled to judgment in its favor. Gee & Jenson contends that because the remedial fix designed and constructed to address the lack of flashing did not itself consist of flashing, and because that design was approved by the Navy, Gee & Jenson's design which omitted flashing must meet the architect's professional standard of care. Pl. Mot. at 6. In addition to being factually incorrect about the nature of the remedial design, Gee & Jenson's argument is irrelevant to the issue at hand, namely, whether Gee & Jenson fulfilled its contractual and professional obligations under the design contract.

The Navy determined that the most conservative fix from an engineering standpoint – removing all the building's windows and precast sills and installing flashing – would not be viable due to the cost and disruption to the tenants. Instead, the Navy sought an alternative solution that would remedy the defect in Gee & Jenson's original design with the least disruption to the building's occupants and provide the most economic benefit. The design created in 2004 and constructed by Hitt Contracting in 2005 was a remedial fix to compensate for the lack of flashing in the already-existing building. What the Navy accepted as a substitute once the building had been constructed cannot be compared with what Gee & Jenson should have designed in the first place. Indeed, the Government's expert witness testified that if he were designing the building in the first place, he would have included flashing in the design. DA520

(Riesberg transcript p. 92 lines 3-6).

Second, as a factual matter, the 2004 fix was not merely a "second caulking joint," as plaintiff contends. Pl. Mot. at 6. Specifically, the fix was:

> a two-stage joint where the outer joint is a deterrent seal and inner deal is a dependable joint to preclude water infiltration when the outer joint fails. The inner deal in this design is a neoprene compression seal adhered to the precast sills. The repair design includes an air space between the inner seal that facilitates water that has entered through the outer seal to drain to the base of the joint where there is a weep. The weep allows the water to drain from the joint to the exterior.

DA487. Thus, the design addressed not only the problem of water entering the building, but a critical defect in the building: a lack of any way for water to be redirect water to the exterior once it penetrated the building face.

Gee & Jenson further casts responsibility on the Government for failing to have a maintenance plan in place to inspect sealant joints for failure. Pl. Mot. at 8. This is a red herring. Mr. Riesberg testified that a good sealant, properly installed, could last up to ten years. PPFUF ¶ 14. From that statement, Gee & Jenson argues that if the Navy had a building maintenance plan that included the inspection of the sealant joints, "the caulking joints between the precast sills would never be a problem." Pl. Mot. at 8. The fact that the Navy did not have a written maintenance plan to inspect every inch of caulking joint around the building within the first year of the building's life–when the water damage was first observed and when Gee & Jenson's design defects were first discovered– has no bearing upon whether Gee & Jenson's design defect necessitated forensic studies and repairs to the NISE East building. Thus, this Court need not address this point.

## CONCLUSION

For these reasons, we respectfully request that this grant the United States' motion for summary judgment and deny the plaintiff's motion for summary judgment.

Respectfully submitted,

JEFFREY S. BUCHOLTZ
Acting Assistant Attorney General

JEANNE E. DAVIDSON
Director

S/Donald E. Kinner
DONALD E. KINNER
Assistant Director

S/Tara K. Hogan
TARA K. HOGAN
Trial Attorney
Commercial Litigation Branch
Civil Division
U.S. Department of Justice
Washington, D.C. 20530
Tele: (202) 616-2228
Fax: (202) 305-7643

Attorneys for Defendant

OF COUNSEL

PAMELA J. NESTELL
Trial Attorney
Department of the Navy
720 Kennon St. SE
Washington Navy Yard, DC 20374

January 18, 2008

CERTIFICATE OF ELECTRONIC FILING

I hereby certify that on this 18th day of January, 2008 a copy of the foregoing "DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. The parties may access this filing through the Court's system.

s/Tara K. Hogan