| | | |
|---|---|---|
| GEE & JENSON ENGINEERS, ARCHITECTS AND PLANNERS,<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES,<br><br>Defendant, | ) | No. 05-457C<br>(Judge Bush) |

**DECLARATION**

William Riesberg, pursuant to 28 U.S.C. Section 1746, hereby declares under penalty of perjury as follows:

1. I am an architect registered (or licensed) in Tennessee, South Carolina, North Carolina, Virginia, Georgia, Alabama, Florida, and Kansas. I have been hired by the United States to provide an expert opinion in this case. My curriculum vitae is attached to this declaration.

2. I am the author of two forensic reports on the condition of the NISE East Building, dated July 7, 1998 and November 11, 1998, which are attached to this declaration as Exhibits 11 and 13 of the defendant's appendix. If called to testify in this case, I would testify as to the contents of these reports.

3. As part of my expert services in this litigation, I prepared an expert report, dated February 26, 2007, which is attached to this declaration as Exhibit 41 of the defendant's appendix. If called to testify in this case, I would testify as to of the contents of this report.

4. In order to prepare the two forensic reports, I conducted a field investigation of the building. Our investigation team spent approximately 100 hours in the field in 1998.

5. Based upon my field observations, in 1998, most of the sealant joints in the NISE East Building were in good working order. In 2004, I performed a survey of the sealant joints which observed 241 out of 327 (or 74 percent) of the sealant joints had failed in adhesion, cohesion, or both.

6. It is my opinion that leaks through the joints between adjacent precast sills identified in 1998 resulted from various conditions, including failed joints, absence of flashing at the precast sills and absence of an upstand on flashing installed at walls adjacent to roofs.

7. It is my opinion that the reason that any water which did penetrate the building face could not be redirected was due to the absence of flashing to redirect the water to the exterior and failure to install an upstand on through wall that was installed.

8. In December 1998, my firm created a cost estimate of the cost of making various repairs as a result of the design and construction deficiencies identified in the November 11, 1998 Forensic Report. At that time, the cost to install new flashing throughout the building, excluding most of the cost of removal of the windows, was estimated to be over $455,000.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on January 17, 2008.

William Riesberg