# Exhibit 14

11000
93-C-1096
CODE 077(VGS)
18 FEB 99

REGISTERED MAIL – RETURN RECEIPT REQUESTED

Angelo Pizzagalli
President
Pizzagalli Construction Company
P.O. Box 2009
South Burlington, Vermont 05407

Subject: CONSTRUCTION CONTRACT N62467-93-C-1096, N.I.S.E. EAST BUILDING, WEAPONS STATION, CHARLESTON, SC

Dear Mr. Pizzagalli

Confirming my telephone communication of, 16 February 1999 with you, please be advised that an issue involving potential Contractor responsibility for construction problems associated with water infiltration on the subject project has been encountered. The deficiencies found are a result of a forensic study prepared by Riesberg Architects, LLC. A copy of the report is enclosed for your use in responding to this letter. The purpose of the investigation was to gather additional data for developing professional opinions regarding life and fire safety and water infiltration issues raised by an earlier forensic consultation. A cost estimate was developed as a part of the study. The issues that we have deemed construction problems are as follows:

Improper Insulation

Improper Firesafing

Failure to Patch Fireproofing

Improper Through –Wall Flashing Joints

Poor Flashing Workmanship

Inadequate Drip in Precast Concrete Sill

Edge Separation of Laminated Glass

Inadequate Structural Glazing

Inadequate Operable Window Installation

Improper Grading

Failure to Properly Weatherseal Glass Joints

11000
93-C-1096
CODE 077(VGS)
18 FEB 99

Improper Grading

Failure to Properly Weatherseal Glass Joints

Failure to Patch Gypsum Sheathing Penetration

Improper Thermal Value – (w/Improper insulation)

Improperly Installed Head Sealant Joint

Poor Brick Workmanship

Please read the enclosed report. In two weeks we will contact you and offer you the opportunity to meet with us here at SOUTHDIV. At this meeting you may offer any mitigating circumstances that you feel may decrease your liability. We will then contact you in another two weeks to advise you of our final position.

Timely correction of these deficiencies is imperative in order to minimize the deterioration caused by the water infiltration.

Please be advised that this is not the Contracting Officer's final decision in this matter.

Sincerely,

M.F. CAMPBELL
Head, Construction & Field Operations Department
By direction

Copy to:
Construction Contract N62467-93-C-1096

A/E Contract N62467-93-D-0911
02
0212
0213
05
05A
052
0523
07
07A
44FA
0731
077(VGS), 09Cmwj

05
05A
052
0523
07 EHS 2/19
~~07A~~
~~077~~ EHS 2/19
~~0731~~
02
0213
09C
09Cmwj
44FA

# Exhibit 15

DEPARTMENT OF THE NAVY
SOUTHERN DIVISION
NAVAL FACILITIES ENGINEERING COMMAND
P.O. BOX 190010
2155 EAGLE DRIVE
NORTH CHARLESTON, S.C. 29419-9010

REC. GEE & JENSON, WPB
FEB 25 1999

11000
93-D-0911 JOB #
CODE 077(VGS)
19 FEB 99

REGISTERED MAIL – RETURN RECEIPT REQUESTED

Mr. Donald Goddeau, P.E.
Executive Vice President
Gee & Jenson Engineers-Architects-Planners, Inc.
One Harvard Circle
West Palm Beach, FL 33409

Dear Mr. Goddeau:

SUBJECT: A-E CONTRACT N62467-93-D-0911, N.I.S.E. EAST BUILDING, WEAPONS STATION, CHARLESTON, SC

Confirming my telephone communication of 17 February 1999 with you, please be advised that an issue involving potential Architect-Engineer responsibility for design problems associated with water infiltration problems on the subject project has been encountered. The deficiencies found are a result of a forensic study prepared by Riesberg Architects, LLC. A copy of the report is enclosed for your use in responding to this letter. The purpose of the investigation was to gather additional data for developing professional opinions regarding life and fire safety and water infiltration issues raised by an earlier forensic consultation. The issues that we have deemed design problems are as follows:

Failure to Flash Under Precast Sill

Failure to Provide Upstand on Through – Wall Flashing

Attachment of Through - Wall Flashing to Precast Panels

Sealant Installed on Top of Through -Wall Flashing

Failure to Design Proper Stucco Termination

Improper Drainage Design

Please read the enclosed report and in two weeks we would like to offer you the opportunity to meet with us here at SOUTHDIV. At this meeting you may offer any mitigating circumstances that you feel may decrease your liability. We will then contact you in another two weeks to advise you of our final position.

11000
93-D-0911
CODE 077(VGS)
19 FEB 99

Timely correction of these deficiencies is imperative in order to minimize the deterioration caused by the water infiltration. We are concurrently discussing the other aspects of the forensic study with Pizzagalli Construction Company and realize that the most efficient repair of many of these deficiencies will require cooperation between your firm, Pizzagalli and the U.S. Navy.

Please be advised that this is not the Contracting Officer's final decision in this matter.

Sincerely,

M. F. Shreve

M. F. SHREVE
Head, Contract Department
Contracting Officer

# Exhibit 16

14 Apr 99

MEMORANDUM

From: John Goethe
To: Mike Campbell
Robbie Wiksell
Charlie Johnson
Fred Varn
Bob McKay
Jim Daniel
Jim Caulder
Jim Black
Don Goddeau (by email)
Tim Hullihan (by email)
Jimmy Elmore (by email)
Wayne Pannullo
James Herrington
Virgil Svendsen
Marilyn Johnson

Subj: NISE East Engineering Center Water Infiltration Problems

Encl: Minutes of 16 Mar 99 Meeting

1. The enclosed minutes are provided for your use and information.

2. If you have questions or comments, please contact me by email or at (843) 820-5978.

Respectfully,

John Goethe

**Meeting Minutes**
**Potential A/E Responsibility for SPAWARS Water Infiltration Problems**
**16 March 1999**

Virgil Svendsen opened the meeting by asking the A/E to respond to our 19 Feb 99 letter that indicates potential A/E responsibility for SPAWARS water infiltration problems. Everyone introduced themselves and Don Goddeau asked to make some opening remarks before going into detailed responses.

Don made the following points:

- Although the design of this facility is sufficient, not all aspects are the most desirable due to economic factors.
- Various design solutions exist for most situations; many are the result of differing designer preferences or opinions.
- If the building had been constructed properly, this meeting would probably not be necessary.
- Deletions made on the job site without A/E concurrence could have contributed to the problems.
- There was a lack of communication between the contractor and A/E.
- Delayed change orders occurred, possibly due to paperwork or system burdens.
- For the first six to eight weeks of the contract, the Title II was instructed to stay in his trailer. He was instructed to not talk directly to the contractor but to communicate through the ROICC.
- There were numerous customer requested changes.
- Construction quality suffered due to the fast-paced schedule combined with numerous change orders.
- There appears to have been a lot of "non-spec" work done to save time which was not concurred upon by the A/E.
- He indicated the standards being used to judge the design today were not in effect at the time the design was being developed.
- The design was accomplished extremely quickly, in four to five months.
- He requested consideration for his cooperation throughout design and construction.

Jim Caulder followed by acknowledging we had advertised 100% plans and specifications. He indicated that there was a good deal of generic space design in the early stages of construction and the details were incorporated as user functions were defined. Jim went on to say that he agreed with everything Don Goddeau said. Mike Campbell asked for clarification that Jim's agreement pertained to design issues only. Jim agreed. Mike noted that he did not agree with all of Don's statements related to construction and that he would like to make comments later in the meeting.

The agenda then shifted to specific items in the 19 Feb letter and the forensic report.

**Meeting Minutes**
**Potential A/E Responsibility for SPAWARS Water Infiltration Problems**
**16 March 1999**

WP-1.1 Failure to Flash Under Precast Sill

The A/E referred to the report which stated that the architect indicated only a 1/8" slope on top of the precast sill and with such a slight slope, water cannot rapidly drain off. He disagreed, indicating that the actual fall at the edge of the sill is more than 1/8" due to the width of the sill.

The A/E acknowledged that the detail does not show flashing, but pointed out that the sealant application is critical to water proofing. He said development of sealant technology has reduced use of flashing and that they had used the same detail on other applications with success.

The A/E recommendation is to rework the sealant as necessary to achieve a quality application, then investigate again to see if leaks persist. He also recommended a periodic sealant maintenance program.

When asked, the A/E agreed flashing would have been an extra water barrier.

The A/E produced a detail from Architectural Graphics Standards (enclosure 1) which shows a detail of sill installation without flashing under the sill.

WP-1.2 Failure to Provide Upstand on Through-Wall Flashing

The A/E expressed confusion over the alleged design problem on this issue since the detail shows an upstand and the specifications require an upstand not less than 1/4". The Government noted that normally we would expect to see a 1-1/2" to 2" upstand on the flashing rather than the 1/4" shown on the A/E's detail.

Everyone acknowledged that the report states that the contractor did not turn up the flashing at all.

The drip on the bottom of the sill was discussed but no design problems were alleged.

The group recommendation is to have the A/E and Government research any flashing upstand height requirement (guide specifications, industry standards, etc).

WP-1.3 Attachment to Through-Wall Flashing to Precast Wall Panels

One statement in the report is "The architect failed to consider differential movement at the through-wall flashing under precast wall panels". The A/E did not disagree with this but questioned the damage to the Government.

The forensic report also states that a trim piece below the through-wall flashing at the precast wall panel to stucco intersection was not installed although it was shown in the

detail. The A/E remembered the contractor saying at a meeting the detail was impossible to construct, therefore leading him to believe that the trim piece may have been deleted by the Government. He specifically remembered the subject of the trim piece coming up at an 18 Apr 97 meeting. The purpose of this piece is to seal the top of the stucco and provide a floating support for the flashing. The A/E referred the group to specification section 09200, paragraph 3.2.1.5.

The A/E's closing comment on this subject was that the trim piece should have been installed per the detail.

WP-2.2 Sealant Installed on Top of Through-Wall Flashing

The primary statement in the forensic report is that the joint above through-wall flashing should never be sealed as detailed on the drawings.

The A/E noted that the report doesn't say the reported deficiency contributes to water infiltration. He produced a detail from the Architectural Graphic Standards (enclosure 2) showing sealant above through-wall flashing. He summarized by disagreeing that this is a bad detail and made no recommendation for further action since weep holes are detailed and should provide an escape for any trapped water.

WP-8 Failure to Design Proper Stucco Termination

The forensic report indicates that no flashing or drip screed exist where the vertical and horizontal stucco meet, the absence of flashing providing no means for water to exit the stucco cladding and the lack of a drip screed providing no break for water surface tension, allowing it to flow toward the window.

Gee & Jenson believes the forensic A/E thought this was cavity wall construction when in fact it is not. He asked if we could again approach the forensic A/E with this clarification to see if he would then consider it more of a construction deficiency. The stucco was designed with elastomeric coating, so if water is getting in the wall system, problems other than design are evident. He went on to say if the contractor had constructed the seal properly (see WP-12 Improperly Installed Head Sealant Joint), no water infiltration problems would have occurred. Another reference to specification section 09200 paragraph 3.2.1.5 was made.

In summary, the A/E disagrees that the detail in the drawings is flawed. He produced a similar detail used on the Public Works Facility (enclosure 3) at CNSY which he said was given to him by Southern Division to use as a guide.

**Meeting Minutes**
**Potential A/E Responsibility for SPAWARS Water Infiltration Problems**
**16 March 1999**

WP-11 Improper Drainage

The report and user state that water is building up in the cavity wall system adjacent to the areas with computer flooring where the structural slab is below grade.

The A/E disagrees that the drawing detail is inadequate. Discussions of the design detail were held. The A/E provided an Architectural Graphics Standard detail (enclosure 4) to support his case.

In summary, the A/E stated that the site should be graded as shown on the design documents to alleviate the problem.

Concluding Comments

In reference to WP-1.1, Marilyn Johnson asked the A/E if there are any public documents or references to the diminished use of flashing and increased use of sealant to prevent water infiltration. The A/E again referred to the Architectural Graphics Standard detail (enclosure 1).

Virgil Svendsen asked the A/E for confirmation that a written response would be provided within two weeks. The A/E concurred.

Robbie Wiksell asked the A/E if he had any details about the deletion of casing, trim pieces, etc. during construction. The A/E said he had no knowledge of these deletions. He did say the Title II inspector pointed out deficiencies during construction but feels his recommendations for corrective action were not considered by the Government.

Wayne Pannullo recommended review of weekly meeting minutes and daily reports to find out more about construction activity details with respect to potential design/construction deficiencies. The Government agreed to review the files.

Mike Campbell expressed his concerns over Don Goddeau's opening remarks about the Government's construction management, particularly the statement made about the alleged Government interference of the Title II inspector's duties. Mike also indicated the other derogatory statements made about Government management of the project were inappropriate.

Don Goddeau apologized for any remarks taken with offense; Mike said no apologies were necessary.

Virgil asked for any comments. There were none. He closed the meeting by thanking everyone and saying we would reconvene appropriately after the meeting with the contractor on 19 Mar.

**Meeting Minutes**
**Potential A/E Responsibility for SPAWARS Water Infiltration Problems**
**16 March 1999**

ATTENDEES - 3/16/99 MEETING AT SOUTHDIV
CONCERNING NISE EAST DEFICIENCIES

| NAME | ORGANIZATION | PHONE |
|---|---|---|
| M.E. Campbell | Code 05/Construction Dept | (843) 820-5950 |
| Robbie Wiksell | Code 07A/Planning & Design | (843) 820-7302 |
| Charlie Johnson | Code 0711/Architecture | (843) 820-7328 |
| Fred Varn | Code 073/Planning & Design | (843) 820-7432 |
| Bob McKay | Code 073/Planning & Design | (843) 820-7342 |
| J.D. Daniel | Code 0213/Contracts Dept. | (843) 820-5748 |
| Jim Caulder | Code 0754/Structural Design | (843) 820-7351 |
| Jim Black | Code 052/Construction Dept. | (843) 820-5960 |
| Don Goddeau | Gee & Jenson | (561) 683-3301 |
| Tim Hullihan | Gee & Jenson | (561) 683-3301 |
| Jimmy Elmore | SDFOCA, Resident Engineer | (843) 764-4112 x3006 |
| John Goethe | Code 0523/Construction Dept. | (843) 820-5978 |
| Wayne Pannullo | SPAWAR representative | (843) 914-4010 |
| James E. Herrington | Code 0731/Planning & Design | (843) 820-7347 |
| Virgil G. Svendsen | Code 077/A/E Liability Specialist | (843) 820-5688 |
| Marilyn Johnson | Code 09C/Southdiv Counsel | (843) 820-5707 |

# Exhibit 17

GEE & JENSON
Engineers • Architects • Planners, Inc.
SINCE 1951
One Harvard Circle
West Palm Beach, FL 33409
Telephone (561) 515-6500
Executive Fax (561) 515-6503
Fax (561) 515-6502

April 9, 1999

Mr. M.F. Shreve
Head, Contract Department
Contracting Officer
Southern Division Naval Facilities Engineering Command
P.O. Box 190010
North Charleston, SC 29419-9010

Re: A/E Contract N62467-93-D-0911, NISE East Building, Weapons Station, Charleston, SC

Dear Mr. Shreve:

This letter is in response to your 19 February 99 letter and further to our 16 March 99 meeting in Charleston concerning the NISE East Building water infiltration problems. Primarily, it is a formalization of the verbal presentation made by Tim Hullihan, AIA and myself at that meeting.

We have reviewed the issues that you deemed design problems as they were presented in the forensic study report prepared by Riesberg Architects, LLC dated November 11, 1998. We have also performed a preliminary review of our records concerning the design and construction of the project as they may pertain to those issues.

Our comments concerning the issues noted as potential design problems (WP-1.1, WP-1.2, WP-1.3, WP-2.2, WP-8, and WP-11), which we presented at our meeting, are included as Attachment 1. We understand the position in which Southern Division finds itself as the result of the water intrusion at the building. It is our opinion, however, that the design furnished by Gee & Jenson was performed with the reasonable care, skill and competence normally exercised by other members of the profession under similar circumstances. We believe that our comments and attachments thereto demonstrate that industry standards and levels of care were met throughout our design.

As we discussed at the meeting, the details utilized were those which, in the opinion of the designer, met the requirements of the particular situation in which they were utilized and were also cost effective. The designer believed that, if the details were constructed as presented and if the building received normal and reasonable levels of maintenance, they would provide protection from moisture intrusion. As you know, technology is advancing in the application and performance of sealants. Industrywide, standards for moisture protection and waterproofing are progressing to a level of increased dependency upon sealants which are proving to be very cost effective.

\\ORL\BATT\GODDEAU\LETTERS\Shreve040999.doc

It is our opinion, based on the information furnished in the Riesberg report and upon our knowledge of the construction of the facility, that where water intrusion is a problem, it is due primarily to the construction not being in compliance with the project plans and specifications as prepared.

We regret that this situation exists at what is generally considered to be a beautiful building (potentially award winning) and one that is both functional and serviceable.

Sincerely,

Donald L. Goddeau, P.E.
Executive Vice President

DLG:tvb
93:282

encs.



One Harvard Circle • West Palm Beach, FL 33409 • Telephone (561) 515-6500 • Fax (561) 515-6502
Engineering • EB 0002934 • Architecture • AA C000656 • Landscape Architecture • LC C000050 • Land Surveying • LB 0002934 • Interior Design • IB 0001330

## WP-1.1 Failure to Flash Under Precast Sill

### OBSERVATIONS:

1. Slope of sill = 3/16" to ¼" per foot.
2. Sealant failure or voids is source of leaks
3. Thickness of sill eliminates moisture intrusion
4. Flashing serves no purpose with proper sealant
5. Sealant technology makes flashing less important industry-wide

### RECOMMENDATIONS:

1. Sealant repair
2. Sealant maintenance
3. Examine window sills

### ATTACHMENTS:

1. Standard detail showing no flashing under sill


pennyh@riesbergarchitects.com




COPING, FASCIA, AND HEAD




SILL DETAIL

*Arch. Graphics Standards*
*- notice no flashing under concrete sill*







STONE VEN

COPING

STONE VEN
AND LINER

METAL STF

SOFFIT



SUPPORT

STRUTS

SHEAR W

STRUTS

RETENT
ANGLES

## WP-1.2 Failure to Provide Upstand on Through-Wall Flashing

### OBSERVATIONS:

1. Leakage, if any, due to no upstand; detail calls for upstand
2. Paragraph 3.1.10 of Section 7600 is verbatim from Guide Spec

### RECOMMENDATIONS:

1. As per Riesberg Report

## WP-1.3 Attachment of Through-Wall Flashing to Precast Wall Panels

### OBSERVATIONS:

1. Removed trim piece is problem. Without it, floating connection is not possible
2. Provisions for flexible joints in specifications
3. No leaks reported in this condition (only a visual problem?)
4. Cavity and stucco substrate have damp-proofing
5. Specifications require casing bead along top of stucco (9200 – 3.2.15)
   - No trim, no bead = construction defect
6. Gypsum sheathing attachment is flexible

### RECOMMENDATIONS:

Replace closure strip (if visually objectionable)

### ATTACHMENT:

Note from April 18, 1997 meeting at which trim was discussed and ultimately removed.

## WP-2.2 Installed on Top of Through-Wall Flashing

### OBSERVATIONS:

1. Disagree this is even a problem
2. Report does not say if leaks are occurring here
3. Standard flashing/weep hole relationship is designed
4. Sealant between brick and flashing is correct

### RECOMMENDATIONS:

Recommend leaving it alone

### ATTACHMENTS:

Standard details showing same design







VERTICAL EXPANSION JOINTS




GROUTED MULTIPLE WYTHE MASONRY

WP 2-2




HORIZONTAL EXPANSION JOINT

**WP-8 Failure to Design Proper Stucco Termination**

**OBSERVATIONS:**

1. Stucco/Sealant/window relationship not per contract (fillet)
2. Stucco should have a 20 mil elastomeric coating
3. Stucco substrate has damp-proofing
4. WP-12 describes actual problem (construction)
5. Casing bead specified for stucco termination at window
   - Any moisture could weep there
   - Excellent sealant condition is made awkward without it
6. Overall wall section shows stucco portion of wall is not a "cavity system"
7. Mildew is a maintenance problem
8. Report does not identify cause of leaks (if any)

**RECOMMENDATIONS:**

1. Determine cause
2. Repair construction efforts

**ATTACHMENTS:**

Similar detail from public works building (provided to us as a "go-by")


HOLLOW MTL. FRAME. GROUT FILLED
5 3/4"
GALV. JAMB ANCHOR
CAULK (TYPICAL BOTH SIDES)
2"
J-4
5/8" CEMENT PLASTER ON MTL. LATH ON 1/2" CEMENT BD. ON 3 5/8" MTL. STUDS
CORNER BEAD
SEALANT
P.T. WOOD SHIM
5"X1 3/4" EXTRUDED ANOD. ALUM. TUBE (COLOR TO MATCH WINDOWS)
ALUM. DOOR
5"
H-6
H-8 A141 A142
3" A.S. 2" 2"
2" 3'-0" 3'-0" 2" 2"
J-14 A141 A142
J-13 A141 A142
J-8 A141 A142
S-2 A141 A142
3'-0" 2"
3'-10" 2"
1/4" WIRE GLASS (RUN VERT./HORZ.) @ RM. 244 ONLY
REV. DESCRIPTION
SOUTHERN DIVISION
CHARLESTON NAVAL SHIPYARD
CHARLESTON, SOUTH CAROLINA
PUBLIC WORKS FACILITY
BUILDING 400 - DOOR DETAILS
SEAL AREA

## WP-11 Improper Drainage

### OBSERVATIONS:

1. Common "basement" condition
2. Foundation "waterproofing" & cavity "damp-proofing" were designed to lap
3. Membrane waterproofing should not stop below finish grade. If it does, it's a construction defect

### RECOMMENDATION:

1. Repair of construction defects
2. Regrading, etc.

### ATTACHMENTS:

1. Typical basement detail
2. Details from project clearly showing "WP" and "DP" extent and lapping


AIR SPACE
CONT. DAMPPROOFING
BRICK VENEER W/ ALTERNATING 5/8" OFFSET
THRU WALL FLASHING WEEP @ 24"O.C.
EXT. GRADE
1 1/2"
FLOOR FIN.
PREM
CONC. BLOCK
CONC
BRICK TIE (TYP)
VAPC
MEM.
8" C GROU
6" C GROU
CON SEE
DETAIL
2
A39 A165 A40
1 1/2" = 1'-0"
3 1/2"
1'-6"
5/8"
2"
7 5/8"
5/8"
1 1/2"
2" DEBRIS FREE AIR SPACE
CONT. DAMPPROOFING
BRICK VENEER W/ ALTERNATING 5/8" OFFSET
THRU WALL FLASHING W/ WEEPS @ 24"O.C.
EXT. GRADE
6" CONC. BLOCK
CONC. BLOCK
BRICK TIE (TYP)
G.W.B. ON MTL. FU OVER RIGID INSUL. SEE FIN. SCHED.
FLOOR BASE- SEE FINISH SCHED.
FIRST FLOOR 100'-0" REF.
RAISED ACC COMPUTER & SUPPORT (WHERE AP
8" CONC. E
FIRST FL 100'-0"
18"
CONC. SLAB
VAPOR BARRI
PREMOLDED FILLER
8" CONC. BL

**Waterproofing:** the prevention of the flow of free water and moisture, usually under hydrostatic pressure, into a building by sealing off those parts which come into direct contact with the earth (exterior or foundation walls below grade, basement slabs, ground slabs at grade).

methods:
- membrane - layers of asphalt or tar bitumens alternating with plies of bituminous saturated felt or woven cotton and glass fabric
- hydrolithic - coatings of asphaltic bitumens and plastics
- admixtures - liquid, paste, or powder admixtures to concrete to render it impermeable

**Dampproofing:** the means of stopping dampness (from the earth or from surface water caused by rain) from penetrating a building.

methods:
- below grade
  - 2 coats asphalt base coating or paint
  - dense cement plaster
  - silicones and plastics
- above grade concrete block walls
  - paint; stucco; or portland cement and sand grout
- above grade concrete walls
  - properly constructed and caulked joints;
  - where required, a surface coat of grout or mortar
- above grade brick walls
  - wetting of brick to reduce the rate of moisture absorption (as required)
  - tooled joints




• SEALANT

• ORIG DETAILS

• ADDITIONAL AIGS DETAIL

# Exhibit 18

pizzagalli construction company
50 Joy Drive, P. O. Box 2009
South Burlington, Vermont 05407-2009
Telephone (802) 658-4100
FAX (802) 651-1269

April 16, 1999

Mr. M.F. Shreve
Head, Contracting Dept.
Department of the Navy
Southern Division
Naval Facilities Engineering Command
2155 Eagle Drive, P.O. Box 190010
North Charleston, SC 29419-9010

Dear Mr. Shreve:

The following is our response to the items discussed at our March 19 meeting:

- Improper Insulation: Pizzagalli Construction Company and our subcontractor, Wolfe, Inc. will inspect the walls to verify the insulation meets or exceeds the approved submittals and the requirements of the contract documents. Should the insulation be different from what was submitted and approved, a procedure to correct or replace the insulation will be discussed with you. Our inspection will be the morning of April 23, 1999.

- Improper Firesafing: We do not know if the firesafing material is improper or not but it will be inspected during our investigation of the insulation. Keep in mind, we do not have a specification to compare the material in place to the material desired. The Department of the Navy or the A&E need to provide us this information. Specification section (07270) which is referenced in the forensic study is for firestopping material only, not firesafing material, (see Attachment No. 1). Firestopping material was submitted and approved, (see Attachment No. 2).

- Failure to Patch Fireproofing: All fireproofing was inspected by the Department of the Navy at least twice prior to the installation of the acoustical ceilings. Any deficiencies that we found were immediately corrected and reinspected. The inspectors were John Frederick, Fletcher Ballzigler and George Cummings. Also, there were numerous "other" contractors working above the finished ceiling after the fireproofing was inspected and accepted. We consider this a non-issue for Pizzagalli Construction Company.

- Improper Through-wall Flashing Joints: We believe the through-wall flashing complies with the project specification and industry standards. The joints were lapped approximately four inches and sealed where necessary to ensure a watertight joint. We consider this a non-issue for Pizzagalli Construction Company.

- Poor Flashing Workmanship: Pizzagalli Construction Company will inspect all through-wall flashing at all corners and caulk any open void found to ensure a watertight condition. This remedial work will be scheduled with the other repairs.

- Inadequate Drip in Precast Concrete Sill: We have contacted the precast manufacturer (Universal Concrete, formerly Cut Art Stone & Precast Co., Inc.) to respond to the apparent inadequate size of drip in the precast stone. His response addressing size and tolerances acceptable to the Precast/Prestressed Concrete Institute (PCI) is due the week of April 19, 1999.

- Edge Separation of Laminated Glass: This will be addressed by Laminated Glass Products, the manufacturer, within the next week or so.

- Inadequate Structural Glazing: This will be addressed by Laminated Glass Products and Carolina Glass Contractors, Inc., the installer, within the next week or so.

- Inadequate Operable Window Installation: It appears that all operable windows were not installed as recommended by the manufacturer and approved submittal data. These windows will be removed and reinstalled in accordance with the approved submittal.

- Improper Grading: We have enclosed a copy of our grading subcontractors memo dated March 18, 1999 (see Attachment No. 3) for your review and comments. Pizzagalli Construction Company will verify ground elevations when we schedule the other remedial work. If the grades are correct, we will consider this a non-issue. If they are incorrect, we will work with you to effect a solution.

- Failure to Properly Weatherseal Joints: All joints were inspected after installation and again during final inspections over two years ago. If there is an area that was missed, we will certainly caulk that joint without question; however, caulking is an item that deteriorates with time and requires maintenance periodically. Pizzagalli Construction Company considers this a maintenance item and a non-issue.

- Failure to Patch Gypsum Sheating Penetrations: Many of the precast clip angles that penetrate the gypsum sheating are not accessible for viewing from the interior building side, thus, the clip angle would have to be sealed by feel, a hit and miss operation at best. A field demonstration was held to demonstrate this condition and was witnessed by both the Department of the Navy and the A&E. It was agreed by all parties that a watertight seal was impossible to obtain unless a change was made. The A&E provided us a sketch to use in lieu of what was indicated on the contract drawings. We installed several box-outs utilizing this new design to ensure its workability and, as expected, it worked. We continued to box-out and submitted a proposal reflecting the cost estimate for the entire building. The proposal was rejected because of the cost and we were told to proceed with the original design and do the best we could. This was a potential

problem that Pizzagalli Construction Company tried to eliminate over two years ago; unfortunately, someone made the command decision to take the risk and not spend the money. The cost for the fix that was started and then abandoned was paid for by change order P00098 (see Attachment No. 4). We consider this a non-issue for Pizzagalli Construction Company.

- Improper Thermal Valve: The contract requires R-11 and R-19 blanket insulation in various locations in the building and to the best of our knowledge, the insulation was installed as indicated on the contract drawings. Again, these walls went through numerous inspections by the Navy and the A&E before we were allowed to install the sheet rock. Unless evidence is found that non-conforming R-valve insulation was used, Pizzagalli Construction Company considers this a non-issue.

- Improperly Installed Head Sealant Joint: The stucco return trim and caulking over the window system was changed from that indicated on the contract drawings by change order. There were at least two on-site meetings with the Navy and the A&E to discuss what was desired so we could provide a cost proposal. The proposal was submitted and approved, (see Attachment No. 5) change order P00179. Pizzagalli Construction Company considers this a non-issue.

- Poor Brick Workmanship: The brickwork on this project was inspected numerous times by numerous inspectors and found to be acceptable by all, in fact, the A&E said it was above average. That being said, we will once again correct any deficiency found during our inspection of the brick and mortar joints. Repairs will be scheduled to coincide with the rest of the remedial work.

To summarize, the items that we believe are Pizzagalli Construction Company's responsibility will be scheduled for repair following site investigation of April 23, 1999 and hopefully our meeting with the window system manufacturer (YKK) and glass manufacturer (Laminated Glass Products) will happen the same day. We will make ourselves available to discuss any item that you feel needs additional clarification.

Very truly yours,

Angelo Pizzagalli

AP/ljm

Attachments

cc: Mr. Michael Flood
Mr. Chuck Kozel

# Exhibit 19

DEPARTMENT OF THE NAVY
SOUTHERN DIVISION
NAVAL FACILITIES ENGINEERING COMMAND
P.O. BOX 190010
2155 EAGLE DRIVE
NORTH CHARLESTON, S.C. 29419-9010

SOUTHNAVFACENGCOMINST 4335.2C
Code 077

25 JUL 1996

SOUTHNAVFACENGCOM INSTRUCTION 4335.2C

Subj: ARCHITECT-ENGINEER (A-E) LIABILITY

Ref: (a) NAVFAC P-68, Appendix C
(b) FAR Clause 52.236-23 (A
(c) FAR Clause 52.232-17

Encl: (1) Sample Notice of Potential A-E Liability (A
(2) Sample ROICC memorandum for direct settlement
(3) Sample SF 30 - No cost settlement
(4) Sample SF 30 - Joint A-E and Government Liability
(5) Sample Code 05 initial report
(6) Sample Designated Technical Advisor's Report and Contracting Officer Determination
(7) Sample Code 07 report of investigation
(8) Sample A-E Responsibility Board Report and Contracting Officer Determination
(9) Sample Determination Letter to A-E

1. Purpose. To define policy, general procedures and responsibilities for determining and pursuing Architect-Engineer (A-E) liability for design deficiencies.

2. Cancellation. SOUTHNAVFACENGCOMINST 4335.2B (R

3. Scope. This instruction requires evaluation of construction contract modifications caused by A-E design deficiencies. It also requires evaluation of A-E design deficiencies identified after the completion of construction.

4. Applicability. This instruction applies to all A-E contracts awarded and administered under SOUTHNAVFACENGCOM contracting authority. Field Contracting Offices shall implement local procedures consistent with this instruction.

5. Background

a. The Federal Acquisition Regulation (FAR) requires the Contracting Officer (with the advice of technical personnel and legal counsel) to enforce cases of A-E liability and to collect amounts due unless the Contracting Officer finds valid reasons not to do so. This requirement applies to all actions where recoverable costs will exceed administrative costs. It also applies to actions where the best interests of the government will be served by pursuing A-E liability regardless of the costs

(3) Delay damages. Examples: A contractor must stop work on a critical path element of a project until a design error is corrected. Damages would include extended overhead and impact costs paid to the contractor because of the error. Another example would be delays associated with untimely review of submittals or shop drawings. (A

(4) Costs associated with implementing a more expensive solution than would have been necessary had the original design been correct. Example: A structural problem is discovered after the steel is in place. The problem is corrected by the installation of additional structural members. The cost of adding the members exceeds the increase in the bid price that would have resulted had the original design included properly sized members. Damages would include the difference between the cost of the additional members and the increase in the bid price that would have resulted if the original design had been correct.

(5) Increased Government administrative costs. Normally, these costs will be recovered by adding a surcharge of 6% to all other damages. However, in cases where administrative costs are significant and accurately quantified, recovery of actual government administrative costs may be justifiable. (R

d. The A-E error or omission must be the result of negligent performance on the part of the A-E. The mere fact that an A-E made an error does not by itself justify pursuit of liability. The A-E's performance must be negligent in order for the government to recover damages. The standard of care applied to professionals who sell their services for compensation requires the A-E to exercise the reasonable care, skill, and competence normally exercised by other members of the profession under similar circumstances. Failure to exercise normal skill and competence normally constitutes negligence. A finding of negligence may also be in order if the A-E failed to exercise the special skills and abilities that served as the basis for the A-E being selected for the project.

7. Action. Procedures for processing potential A-E liability actions follow:

a. Resident Officer in Charge of Construction (ROICC) and Contracting Officer. Upon discovery of an apparent design deficiency that might increase the construction contract price, the ROICC shall immediately telephone the Construction Area Manager in Code 05 and inform him/her of the details of the problem.

(1) If the ROICC and Code 05 agree that there is no A-E liability, no further action is required by the ROICC except to include a paragraph addressing A-E liability in the ROICC letter that recommends a construction contract modification. This paragraph shall state that the A-E is not considered to be liable and shall give the reason or reasons for this conclusion.

(2) If the ROICC and Code 05 agree that there may be A-E liability, the ROICC shall contact the A-E by telephone. The A-E shall be advised of the design deficiency and requested to provide a technical solution and a cost estimate.

The Contracting Officer will normally direct a full investigation resulting in a Responsibility Board Meeting. However, depending upon the nature of the case, the Contracting Officer may act upon the verbal advice of the A-E Liability Specialist and Counsel documenting the decision in the format of Enclosure (6).

(2) When the Contracting Officer determines that a full investigation is necessary, the A-E Liability Specialist shall conduct an in-depth investigation of the facts surrounding the issue. During the investigation, the Liability Specialist shall consult with the Code 07 Project Manager (PM) and with representatives of Codes 02, 05, Planning Design Manager, COTR, the ROICC and the A-E as necessary to develop a position on liability. The results of the investigation shall be presented in the format shown in enclosure (7) and shall be submitted to Code 07 within 45 days of the date of the Code 05 initial report. The A/E Liability Specialist shall then present the results of the investigation to the A-E Responsibility Board at its next regularly scheduled meeting. A log of all ongoing A-E liability actions shall be maintained by the Liability Specialist. This log shall be in format required by reference (a) and a copy shall be submitted to COMNAVFACENGCOM each quarter. Code 07AS shall also maintain a file on each liability action investigated by Code 07. (R
These files will include all correspondence, board reports, and other documentation associated with the liabilities. Appropriate documentation shall also be placed in the design and construction contract files.

d. <u>Contract Department (Code 02).</u> Contract personnel shall inform other codes on contractual matters throughout the liability process. A Warranted Contracting Officer from Code 02 shall approve all A-E Responsibility Board reports and shall sign all official demand letters to A-Es. In cases where an acceptable settlement with the A-E cannot be reached, Code 02 will take action leading to a final decision of the Contracting Officer under the Disputes Clause of the contract.

e. <u>Support A-E/Construction Contracts Branch (Code 0213)</u>. This branch shall inform slate and selection board members of A-E firms that have potential liability actions pending.

f. <u>Counsel (Code 09C)</u>. Counsel shall provide legal services as required including provision of legal advice as to whether a case of design negligence can be sustained.

g. <u>A-E Responsibility Board</u>. The Responsibility Board shall have the following membership. At least one member of the Board shall be a registered engineer or architect. (R

| | |
|---|---|
| Senior Member | Code 07 or Code 07A |
| Member | Code 02 representative |
| Member | Code 05 representative |
| Member/Counsel | Code 09C representative |
| Recorder (non-voting) | Code 07 A-E Liability Specialist |



369

h. Field Contracting Offices shall implement local procedures consistent with this instruction for A-E contracts under their cognizance. Copies of all correspondence, board reports, and other documentation associated with field A-E liability actions shall be provided to SOUTHNAVFACENGCOM Code 07 for information.

J. H. AUGUSTIN
Executive Officer

Distribution:
SOUTHNAVFACENGCOM Lists
3 (ROICCs)
4 (Field Contracting Offices)
SOUTHNAVFACENGCOM Codes:
07 (180 copies), 02 (5 copies), 05 (20 copies), 09C (4 copies)

370

SOUTHNAVFACENGCOMINST 4335.2C
25 JUL 1996

SAMPLE NOTICE OF POTENTIAL A-E LIABILITY PROBLEMS

REGISTERED MAIL - RETURN RECEIPT REQUESTED

Good & Baad Design Group
1313 Main Street
Littleberg, TX

Subj: A-E CONTRACT N62467-85-C-9500, APPLIED INSTRUCTION BUILDING, NAVAL AIR STATION, OBSCUREVILLE, TEXAS

Gentlemen:

Confirming the telephone communication of (date) between your Mr. Area and our Lt. Fairburn, this is to advise you that we have encountered a problem involving potential Architect-Engineer financial responsibility for design problems associated with conflicts between dimensions designed for structural framing and exterior skin of the subject contract. Your structural drawings show dimensions to the center of steel columns and beams, but these dimensions do not appear to have been coordinated with the dimensions for the outside building finish shown on your architectural drawings. The "Responsibility of the Architect-Engineer Contractor" clause (FAR 52.236-23 APR 1984) of your contract describes in part your contractual responsibilities regarding design defects.

This confirms our agreement to hold a meeting at the work site with representatives from your company and our Project Manager, Lt. Fairburn, at 0900 2 September 1991 to discuss technical solutions and cost estimates regarding corrective action.

We would like to maintain the spirit of cooperation that has existed between our offices and resolve this problem in a timely manner and at minimum cost to all concerned. If you agree that your firm is responsible for the alleged design deficiency, we prefer to resolve the issue of compensation to the construction contractor by having your firm and the construction contractor negotiate directly. Upon reaching agreement, your firm and the construction contractor would release the Government from financial or other responsibility for cost arising out of the alleged design deficiency. If a direct settlement is not possible, this office will take whatever action is necessary to correct the alleged design deficiency and forward the case to SOUTHNAVFACENGCOM in Charleston, SC for investigation of your liability. If a direct settlement is negotiated which results in no cost to the Government, the Contracting Officer responsible for the administration of the construction contract must approve the settlement. Otherwise, the disposition of this matter must be approved by the Contracting Officer having authority to decide contract disputes.

Sincerely,

A. J. Smith
OIC

Copy to:
SOUTHNAVFACENGCOM Code 05 (Area Manager)
SOUTHNAVFACENGCOM Code 077(VGS)
SOUTHNAVFACENGCOM Code 077(VGS)
SOUTHNAVFACENGCOM Code 021



Enclosure (1)

SOUTHNAVFACENGCOMINST 4335.2C

25 JUL 1996

SAMPLE ROICC MEMORANDUM FOR DIRECT SETTLEMENTS

From: ROICC________________________________
To: SOUTHNAVFACENGCOM Code 05

Subj: A-E LIABILITY RESOLVED AT FIELD LEVEL

1. Construction Contract N62467-___-C-_________.
Title and Location: ________________________________

2. A-E Contract N62467-___-C-_________.
Title and Location: ________________________________

3. Brief description of problem: ________________________________

4. Estimated cost of correction: ________________________________

5. Date problem corrected: ________________________________

________________________________
(Signature and date)

Copy to:
SOUTHNAVFACENGCOM Code 02
SOUTHNAVFACENGCOM Code 07
Construction Contract File N62467-___-C-_________
A-E Contract File N62467-___-C-_________
SOUTHNAVFACENGCOM Code 077

SOUTHNAVFACENGCOMINST 4335.2C

25 JUL 1996

AMENDMENT OF SOLICITATION/MODIFICATION OF CONTRACT | 1. CONTRACT ID CODE | PAGE 1 OF 2 PAGES

| 2. AMENDMENT/MODIFICATION NO. | 3. EFFECTIVE DATE | 4. REQUISITION/PURCHASE REQ. NO. | 5. PROJECT NO. *(if applicable)* |
|---|---|---|---|
| P00018 | | | |

6. ISSUED BY CODE

7. ADMINISTERED BY *(if other than item 6)* CODE EROM

8. NAME AND ADDRESS OF CONTRACTOR *(No., street, county, State and ZIP Code)*
XYZ CONSTRUCTION CO. INC...
25 MAIN STREET
OBSCUREVILLE, TEXAS

CODE FACILITY CODE

9A. AMENDMENT OF SOLICITATION NO.

9B. DATED *(SEE ITEM 11)*

10A. MODIFICATION OF CONTRACT/ORDER NO.
N62467-85-C-9501

10B. DATED *(SEE ITEM 13)*
9 September 1991

11. THIS ITEM ONLY APPLIES TO AMENDMENTS OF SOLICITATIONS

☐ The above numbered solicitation is amended as set forth in Item 14. The hour and date specified for receipt of Offers ☐ is extended, ☐ is not extended.
Offers must acknowledge receipt of this amendment prior to the hour and date specified in the solicitation or as amended, by one of the following methods:
(a) By completing Items 8 and 15, and returning ________ copies of the amendment; (b) By acknowledging receipt of this amendment on each copy of the offer submitted; or (c) By separate letter or telegram which includes a reference to the solicitation and amendment numbers. FAILURE OF YOUR ACKNOWLEDGMENT TO BE RECEIVED AT THE PLACE DESIGNATED FOR THE RECEIPT OF OFFERS PRIOR TO THE HOUR AND DATE SPECIFIED MAY RESULT IN REJECTION OF YOUR OFFER. If by virtue of this amendment you desire to change an offer already submitted, such change may be made by telegram or letter, provided each telegram or letter, provided each telegram or letter makes reference to the solicitation and this amendment, and is received prior to the opening hour and date specified.

12. ACCOUNTING AND APPROPRIATION DATA *(if required)* Net Increase $ -0-

13. THIS ITEM APPLIES ONLY TO MODIFICATIONS OF CONTRACTS/ORDERS,
IT MODIFIES THE CONTRACT/ORDER NO. AS DESCRIBED IN ITEM 14.

| | |
|---|---|
| X | A. THIS CHANGE ORDER IS ISSUED PURSUANT TO: *(Specify authority)* THE CHANGES SET FORTH IN ITEM 14 ARE MADE IN THE CONTRACT ORDER NO. IN ITEM 10A.<br>Change Clause |
| | B. THE ABOVE NUMBERED CONTRACT/ORDER IS MODIFIED TO REFLECT THE ADMINISTRATIVE CHANGES *(such as changes in paying office, appropriation data, etc.)* SET FORTH IN ITEM 14, PURSUANT TO THE AUTHORITY OF FAR 43.103(b). |
| | C. THIS SUPPLEMENTAL AGREEMENT IS ENTERED INTO PURSUANT TO AUTHORITY OF: |
| | D. OTHER *(Specify type of modification and authority)* |

E. IMPORTANT: Contractor ___ is not; ____ is required to sign this document and return ____ copies to the issuing office.

14. DESCRIPTION OF AMENDMENT/MODIFICATION *(Organized by UCF section headings, including solicitation/contract subject matter where feasible.)*
Contract N62467-85-C-9501, APPLIED INSTRUCTION BUILDING, NAVAL AIR STATION, OBSCUREVILLE, TEXAS

As a change to the subject contract, the contractor is directed to provide all the necessary labors, equipment, and material to accomplish the following:

a.. Replacement of the 6 inch companion flange at the accumulator on the high pressure steam line labeled 6" HS-212 and the tow 4-inch flanges shown in lines 4" HS-212 and 4" HS-213. The replacement flanges are to be Class 1,500 psig ASTM 182-F316.

Reason Code EROM

Except as provided herein, all terms and conditions of the document referenced in item 9A or 10A, as heretofore changed, remains unchanged and in full force and effect.

| 15A. NAME AND TITLE OF SIGNER *(Type or print)* | | 16A. NAME AND TITLE OF CONTRACTING OFFICE *(Type or print)* | |
|---|---|---|---|
| 15B. CONTRACTOR/OFFEROR<br>______________________<br>*(Signature of person authorized to sign)* | 15C. DATE SIGNED | 16B. UNITED STATES OF AMERICA<br>BY______________________<br>*(Signature of Contracting Officer)* | 16C. DATE SIGNED |

NSN 7540-01-152-8070 30-105 STANDARD FORM 30 (REV. 10-83)
PREVIOUS EDITION UNUSABLE PRESCRIBED BY GSA
FAR (48 CFR) 53.243



Enclosure (3)

SOUTHNAVFACENGCOMINST 4335.2C
25 JUL 1996

| AMENDMENT OF SOLICITATION/MODIFICATION OF CONTRACT | | | 1. CONTRACT ID CODE | PAGE 1 OF 2 PAGES |
|---|---|---|---|---|
| 2. AMENDMENT/MODIFICATION NO. P00019 | 3. EFFECTIVE DATE | 4. REQUISITION/PURCHASE REQ. NO. | 5. PROJECT NO. *(if applicable)* | |
| 6. ISSUED BY | CODE | 7. ADMINISTERED BY *(if other than item 6)* CODE EROM | | |
| 8. NAME AND ADDRESS OF CONTRACTOR *(No., street, county, State and ZIP Code)*<br>XYZ CONSTRUCTION CO. INC...<br>25 MAIN STREET<br>OBSCUREVILLE, TEXAS | | 9A. AMENDMENT OF SOLICITATION NO. | | |
| | | 9B. DATED *(SEE ITEM 11)* | | |
| | | 10A. MODIFICATION OF CONTRACT/ORDER NO. N62467-85-C-9501 | | |
| CODE | FACILITY CODE | 10B. DATED *(SEE ITEM 13)* 9 September 1991 | | |

11. THIS ITEM ONLY APPLIES TO AMENDMENTS OF SOLICITATIONS

☐ The above numbered solicitation is amended as set forth in Item 14. The hour and date specified for receipt of Offers ☐ is extended, ☐ is not extended.

Offers must acknowledge receipt of this amendment prior to the hour and date specified in the solicitation or as amended, by one of the following methods:

(a) By completing Items 8 and 15, and returning ________ copies of the amendment; (b) By acknowledging receipt of this amendment on each copy of the offer submitted; or (c) By separate letter or telegram which includes a reference to the solicitation and amendment numbers. FAILURE OF YOUR ACKNOWLEDGMENT TO BE RECEIVED AT THE PLACE DESIGNATED FOR THE RECEIPT OF OFFERS PRIOR TO THE HOUR AND DATE SPECIFIED MAY RESULT IN REJECTION OF YOUR OFFER. If by virtue of this amendment you desire to change an offer already submitted, such change may be made by telegram or letter, provided each telegram or letter, provided each telegram or letter makes reference to the solicitation and this amendment, and is received prior to the opening hour and date specified.

12. ACCOUNTING AND APPROPRIATION DATA *(if required)* Net Increase $ 4929.00

13. THIS ITEM APPLIES ONLY TO MODIFICATIONS OF CONTRACTS/ORDERS,
IT MODIFIES THE CONTRACT/ORDER NO. AS DESCRIBED IN ITEM 14.

| | |
|---|---|
| X | A. THIS CHANGE ORDER IS ISSUED PURSUANT TO: *(Specify authority)* THE CHANGES SET FORTH IN ITEM 14 ARE MADE IN THE CONTRACT ORDER NO. IN ITEM 10A.<br>Change Clause |
| | B. THE ABOVE NUMBERED CONTRACT/ORDER IS MODIFIED TO REFLECT THE ADMINISTRATIVE CHANGES *(such as changes in paying office, appropriation data, etc.)* SET FORTH IN ITEM 14, PURSUANT TO THE AUTHORITY OF FAR 43.103(b). |
| | C. THIS SUPPLEMENTAL AGREEMENT IS ENTERED INTO PURSUANT TO AUTHORITY OF: |
| | D. OTHER *(Specify type of modification and authority)* |

E. IMPORTANT: Contractor ___ is not, ____ is required to sign this document and return ____ copies to the issuing office.

14. DESCRIPTION OF AMENDMENT/MODIFICATION *(Organized by UCF section headings, including solicitation/contract subject matter where feasible.)*

Contract N62467-85-C-9501, APPLIED INSTRUCTION BUILDING, NAVAL AIR STATION, OBSCUREVILLE, TEXAS

As a change to the subject contract, you are directed to provide all necessary labor, materials, equipment, and supervision to:

a. Install smoke detector in return air ductwork at mechanical room.

Reason Code EROM

Except as provided herein, all terms and conditions of the document referenced in item 9A or 10A, as heretofore changed, remains unchanged and in full force and effect.

| 15A. NAME AND TITLE OF SIGNER *(Type or print)* | | 16A. NAME AND TITLE OF CONTRACTING OFFICE *(Type or print)* | |
|---|---|---|---|
| 15B. CONTRACTOR/OFFEROR<br>____________________<br>*(Signature of person authorized to sign)* | 15C. DATE SIGNED | 16B. UNITED STATES OF AMERICA<br>BY____________________<br>*(Signature of Contracting Officer)* | 16C. DATE SIGNED |

NSN 7540-01-152-8070
PREVIOUS EDITION UNUSABLE

30-105

STANDARD FORM 30 (REV. 10-83)
PRESCRIBED BY GSA
FAR (48 CFR) 53.243

SOUTHNAVFACENGCOMINST 4335.2C
25 JUL 1996

SAMPLE CODE 05 INITIAL REPORT

From: Code 05__
To: Code 07
Via: Code 05

Subj: REPORT OF A-E DESIGN DEFICIENCY INVOLVING POTENTIAL A-E LIABILITY

Encl: (1) (Include all copies of correspondence, records of telephone calls, cost estimate, etc. which may have a bearing on the alleged design deficiency)

1. (Construction contract number, title, and location)

2. (Design contract number, title, and location

3. (Description of deficiency)

4. (What brought the deficiency to light?)

5. (When and how was the A-E notified of the deficiency? What was the A-E's response?)

6. (Status of job and estimated cost impact)

7. (ROICC's recommendation or opinion as to A-E responsibility)

Copy to:
ROICC ______________________________
Construction Contract File N62467-___C-______
A/E Contract File N62467-___C-________
Code 44
Cose 021

SOUTHNAVFACENGCOMINST 4335.2C
25 JUL 1996

SAMPLE FORMAT FOR DESIGNATED A-E RESPONSIBILITY ADVISERS REPORT AND CONTRACTING OFFICER DETERMINATION

From: Designated A-E Responsibility Technical and Legal Advisers
To: Contracting Officer, A-E Contract N62467-___-C-________

Subj: A-E FINANCIAL RESPONSIBILITY, A-E CONTRACT N62467- ___-C- _______, (PROJECT TITLE AND LOCATION)

Ref: (a) SOUTHNAVFACENGCOMINST 4335.2C

Encl: (1) Available Records and Information

1. Pursuant to reference (a), we have reviewed enclosure (1) for possible Architect and Engineer financial responsibility. (We were also briefed by representative(s) ______ regarding possible Architect and Engineer financial responsibility.) Based on this review, we recommend that the Contracting Officer make the following findings:

( ) There is no A-E financial responsibility.

( ) There is no A-E financial responsibility. The Government would have incurred the additional construction cost if included in the initial design and there was no other significant damages to the Government involved.

( ) There is A-E financial responsibility. Even though the design deficiency did not result in construction cost above those which would have been incurred if the initial design had been correct, the Government has incurred significant administrative cost in processing the action. The cost is quantifiable and action to recover should be initiated.

( ) There is A-E financial responsibility, however, the costs are considered non-recoverable.

( ) There is A-E financial responsibility and the costs are considered recoverable. Action to recover should be initiated.

( ) There is A-E financial responsibility and the costs are considered recoverable; however, recovery is not in the best interest of the Government.

SOUTHNAVFACENGCOMINST 4335.2C
2 5 JUL 1986

SAMPLE CODE 07 REPORT OF INVESTIGATION

From: Code 077 A-E Liability Specialist
To: A-E Responsibility Board
Via: Code 07____(PM), 077, COTR

Subj: REPORT OF INVESTIGATION OF POTENTIAL A-E LIABILITY: A-E CONTRACT N62467-85-C-9900, APPLIED INSTRUCTION BUILDING, NAVAL AIR STATION, OBSCUREVILLE, TX

Encl: (1) Code 0515 memo of 8 Jul 86
(2) Goode & Baad Design Group ltr of 30 Jul 86

1. Background. Enclosure (1) recommends pursuit of A-E liability for additional construction costs incurred under Construction Contract N62467-85-C-9901. Enclosure (2) presents the A-E's position on the issues raised by enclosure (1).

2. Factual Issues

a. The contract documents required a depressed floor slab in Room 121 to accommodate a raised floor system. Drawing A-9 required that the floor system be installed 18" above the slab. However, the structural drawings (S-2 and S-6) showed a slab depression of 12". The mechanical drawings also showed an 18" depression and air conditioning ductwork was sized to fit this space. The construction contractor installed the slab in accordance with the structural drawings.

b. The construction contractor discovered the conflict when the mechanical sub-contractor attempted to install the ductwork. At this point in time, the raised floor system components had already been delivered to the site. The contractor notified the ROICC of the problem and the ROICC immediately notified the A-E and requested a solution. The A-E visited the site and shortly thereafter provided sketches for modifications that allowed the already poured slab to be used as installed. These modifications required that some ductwork be refabricated and also required the use of shorter floor pedestals than those already at the job site. Additional conduit and wiring was also required because equipment services could not be installed as originally designed due to the reduced clearances. However, there was no electrical rework required. The contractor did not encounter any delays - none of the work was on the critical path of the project and all trades were able to work in other areas of the building while the problems were being resolved.

c. After negotiation, a construction contract modification was issued for $5,950. The A-E was invited to the negotiations but declined to participate.

The negotiated price included the following major elements:

Ductwork system rework: $3,250

SOUTHNAVFACENGCOMINST 4335.2C
25 JUL 1996

SAMPLE A-E RESPONSIBILITY BOARD REPORT AND CONTRACTING OFFICER DETERMINATION

From: A-E Responsibility Board
To: Contracting Officer, A-E Contract N62467-___-C-_________

Subj: A-E FINANCIAL RESPONSIBILITY, A-E CONTRACT N62467-____-C-______, (PROJECT TITLE AND LOCATION)

Ref: (a) SOUTHNAVFACENGCOMINST 4335.2C
(b) Code 077(VGS) report of investigation memo of ___________________

Encl: (1) Discussion of A-E Responsibility Board recommendations

1. As required by reference (a), the A-E Responsibility Board reviewed reference (b) and other available records regarding potential A-E financial responsibility. The Board also received a briefing from Code 077(VGS) on this issue. Based on this review, the A-E Responsibility Board recommend the following:

( ) There is no A-E financial responsibility.

( ) There is no A-E financial responsibility. The Government would have incurred the additional construction cost if included in the initial design and there was no other significant damages to the Government involved.

( ) There is A-E financial responsibility. Even though the design deficiency did not result in construction cost above those which would have been incurred if the initial design had been correct, the Government has incurred significant administrative cost in processing the action. The cost is quantifiable and action to recover should be initiated.

( ) There is A-E financial responsibility, however, the costs are considered non-recoverable.

( ) There is A-E financial responsibility and the costs are considered recoverable. Action to recover should be initiated.

( ) There is A-E financial responsibility and the costs are considered recoverable; however, recovery is not in the best interest of the Government.

SOUTHNAVFACENGCOMINST 4335.2C

25 JUL 1996

SAMPLE DETERMINATION LETTER

REGISTERED MAIL - RETURN RECEIPT REQUESTED

Goode & Baad Design Group
1313 Main Street
Littleberg, TX 71234

Subj: A-E CONTRACT N62467-85-C-9500, APPLIED INSTRUCTION BUILDING, NAVAL AIR STATION, OBSCUREVILLE, TEXAS

Gentlemen:

Our letter of 9 July 1990 advised you that we were investigating potential architect-engineer financial responsibility for problems associated with the depressed floor slab in Room 121 of the subject facility. As you know, a construction contract modification for $5,950 was required to correct the problems caused by conflicts between the architectural drawings and the structural drawings prepared by your firm.

We have completed our review of this issue and have concluded that your firm's failure to properly coordinate the contract documents constitutes design negligence. The resulting damages to the Government totaled $5,035 ($3,250 for rework, $1,500 for restocking charges and $285 for increased Government administrative expenses). Pursuant to the Responsibility of the Architect-Engineer clause (FAR 52.236-23) of your contract, your firm has been found to be financially liable for damages to the Government in the amount of $5,035.

It is essential that you reply to this correspondence within 30 days, either by forwarding a check for $5,035 payable to the U. S. Treasury or by providing factual information which you believe mitigates the extent of your liability. Failure to reply within this time will be construed to mean that no mitigating information exists. In the absence of payment with 30 days, the Contracting Officer intends, after considering any mitigating information, to make formal demand for payment in a claim against your firm under the Disputes clause (FAR 52.233-1) of your contract.

Sincerely,

Blind copy to:
ROICC Obscureville 0213
Code 07A A-E Liability File 07
Construction Contract File N62467-85-C-9901 07A
A/E Contract File N62467-85-C-9999 COTR 07PM 077
CIRC 077(VGS)
07 05 077(VGS) 07 (PM) 0223 021