# Exhibit 28

LAW OFFICES
WEBB, CARLOCK, COPELAND, SEMLER & STAIR, LLP
A LIMITED LIABILITY PARTNERSHIP INCLUDING PROFESSIONAL CORPORATIONS

KENT T. STAIR
DIRECT DIAL NUMBER
(404) 221-2244

E-MAIL ADDRESS
kts@webbcarlock.com

2600 MARQUIS TWO TOWER
285 PEACHTREE CENTER AVENUE
ATLANTA, GEORGIA 30303-1235
TELEPHONE (404) 522-8220

MAILING ADDRESS
P. O. Box 56887
Atlanta, Georgia
30343-0887

TELECOPIER
(404) 222-9482

February 3, 2000

VIA FACSIMILE (843) 820-7304
AND FEDERAL EXPRESS

Dale C. Johannesmeyer, P.E.
Southern Division Naval Facilities
Engineering Command
2155 Eagle Drive
P.O. Box 190010
North Charleston, SC 29419-9010

Re: A/E Contract N62467-93-D-0999;
NISE East Building, Weapons Station, Charleston, SC

Dear Mr. Johannesmeyer:

I've been retained by CNA Insurance and Gee & Jenson to coordinate the investigation into your allegations concerning negligence of Gee & Jenson in the design of the NISE Engineering Center Building. I've been instructed to use all reasonable efforts to resolve the matter in some appropriate way.

I have reviewed the various materials and we have retained an expert (Mr. Terry Keane, AIA) to review the materials and provide us an opinion concerning the suitability of the design. Materials reviewed included the original plans and specifications, the Riesberg Forensic Study Report dated November 11, 1998, the associated Riesberg Cost Estimate dated December 10, 1998 and notes concerning various meetings and calls between Gee & Jenson and Southern Division personnel.

On Thursday, January 13, 2000 I visited the site together with Mr. Keane, Mr. Phil Cowan of CNA and Mr. Don Goddeau of Gee & Jenson. We did not have the opportunity to perform any invasive or destructive investigation or testing. Gee & Jenson had been informed that this would not be allowed.

To date, based on our limited investigation, we have determined the following:

1. Damages incurred by the Government have been limited to the initial leaks experienced soon after the building was commissioned. Statements made by several building maintenance personnel, who indicated that they would be the "first to know" about such conditions, indicate that there have been virtually no leaks since the original conditions had been repaired over 15 months ago. This fact indicates that the original problems were more related to construction procedures than to negligent design.

2. Riesberg report Item WP-1.1 does not indicate that any leaks were directly attributed to the alleged pre-cast sill detail deficiencies (top slope and lack of flashing). The slope of the top of the sill is approximately ¼" per foot, not a 1/8" slope as stated. The only areas noted as being tested were at the locations where flashing was detailed (See WP-1.2) and these leaks were attributed to a deficiency associated with the fabrication of the flashing (no up stand).

3. When asked to point out the problem areas associated with the leaks originally experienced at the sill, the maintenance personnel jointly identified those areas adjacent to the first floor roof – the only area where flashing was detailed.

4. There were no specific leaks or testing noted associated with the stucco return detail above the windows (WP-8). Our field investigation visually noted no undue mildew in the area. The area shown in the photograph of the Riesberg report (with the photo "enhanced") showed poor stucco termination work at the area leading to the dark shadow noted as mildew. Leaks at this location, if found, were probably associated with the improperly installed head sealant joint (See WP-12).

5. The exterior wall system where stucco is utilized above the windows is waterproofed at the surface of the stucco installation. A 20 mil acrylic coating is applied over the stucco to prevent moisture penetration. The system is designed to prevent moisture from entering or penetrating the stucco. In addition, the detail used at the return was a standard detail in use at the time the design was accomplished.

6. Review of the suggested repairs and associated costs indicate that the most conservative, unrealistic type of repairs are presented (complete

dismantling of the curtain wall system) and inordinately high unit price overhead, and duplicative work elements are utilized in order to arrive at the cost estimates. If there was negligent design, the associated repairs must be realistic. It must be what is required to correct the effects of that design, regardless of the other work associated with the construction defects.

7. As noted by Mr. Keane's report, (attachment 1) the design in both cases conforms to the standard of care that was applicable at the same time and place the original design was accomplished. Similar details from similar installations are available to validate this position.

8. There apparently were other mitigating circumstances involved during the accomplishment of the design. These included a compressed design schedule, limited review and quality control opportunities, and other "hurry up" procedures such as advertising plans and specifications that were not yet finalized. These procedures were all agreed to and in fact dictated by the almost unrealistic schedules involved. They were understood and agreed to by both parties.

9. Acceleration of the construction, especially toward the end of the job with a "get it done at any cost in any manner" attitude led to minimal, if any, construction quality assurance. The early leaks most certainly can be attributed in a large part to this approach to completing the final construction phases.

Based on the above findings, it is our opinion that the design of Gee & Jenson was not negligent: their designs met the applicable standard of care at the time and place the design was accomplished. Significant damages to the government have not been established which would require repairs of the magnitude indicated for the items attributed to Gee & Jenson's design. Costs associated with the repairs are extreme and not realistic.

This being said, we realize that there are two sides and positions in every controversy. We believe that it is important that both of these positions be fully presented and reviewed in a forum with an impartial facilitator endeavoring to have each party understand the strengths and weakness of both sides of the discussion. We therefore recommend that, in the event the Navy is not inclined to accept our position and drop this matter at this time, the Navy and Gee & Jenson enter into an immediate mediation of this

issue in an attempt to settle the differences and prevent the unwarranted expenses associated with any prolonged litigation which benefits neither party.

We would be pleased to respond to any questions or to meet with you or your experts at any time to pursue a resolution of this issue.

Very truly yours,

KENT T. STAIR

KTS/bhc
Enclosure

cc: Don Goddeau
Phil Cowan (AE-178514-P4)

{1390661.1}

# Exhibit 29

DEPARTMENT OF THE NAVY
SOUTHERN DIVISION
NAVAL FACILITIES ENGINEERING COMMAND
P.O. BOX 190010
2155 EAGLE DRIVE
NORTH CHARLESTON, S.C. 29419-9010

29 JUN 2000

CERTIFIED MAIL - RETURN RECEIPT REQUESTED

Gee & Jenson Engineers-Architects-Planners, Inc.
One Harvard Circle
West Palm Beach, FL 33409

Pizzagalli Construction Company
50 Joy Drive
So. Burlington, Vermont 05407

Subj: A-E CONTRACT N62467-93-D-0911, N.I.S.E. EAST BUILDING, WEAPONS STATION, CHARLESTON, SC

Gentlemen:

As you are aware, the Government has been investigating design deficiencies and construction deficiencies that have produced a water intrusion dilemma at the N.I.S.E. EAST Facility.

The Government has corresponded with the A/E and the Construction Contractor in an unsuccessful attempt to resolve the water intrusion problems. The Government met with both of you, the addressees, in order for you to present your perspective on the liability issues. Gee & Jenson did not accept responsibility for any of the water intrusion design deficiencies. Pizzagalli did not accept responsibility for these same water intrusion deficiencies. Gee & Jenson stated that if the details were constructed as designed and the building received normal and reasonable levels of maintenance, there would be protection from moisture intrusion. Pizzagalli stated that these water intrusion deficiencies were design - related.

Correspondence has been received since our meetings, however in the opinion of our A/E Liability Board, no new factual information has been presented.

As per meeting with representatives from our Legal, Contracts, and Planning Departments, we believe that it is imperative that Gee & Jenson and Pizzagalli work together on a water intrusion solution. SOUTHDIV is open to solutions other than those that SOUTHDIV is proposing as long as they are acceptable to our Planning and Design Department and our Construction Department.

We find that Gee & Jenson and Pizzagalli are both jointly and severally liable for the water intrusion problems. If you find that you cannot work together and provide a solution that is acceptable to the Government by 31 July 2000, we will pursue correction of outstanding deficiencies by other means available to the Government and pursue recovery of such costs against you both. We are available to discuss the water intrusion problem and a solution. Please contact Virgil Svendsen, 843-820-5688 if a meeting is desired.

Sincerely,

M F Shreve

M. F. SHREVE
HEAD, CONTRACT DEPARTMENT
CONTRACTING OFFICER

# Exhibit 30

09/18/00 11:58 FAX 001

021
0213

**pizzagalli**
construction company

50 Joy Drive, Post Office Box 2009
So. Burlington, Vermont 05407-2009
T 802·658·4100
F 802·651·1269
www.pizzagalli.com

September 18, 2000
By Fax 843-820-5853 and
By Certified Mail, Return Receipt Requested

A.H. Demos, Contracting Officer and
Director, Facilities Acquisition
U.S. Department of the Navy, Southern Division
Naval Facilities Engineering Command
2155 Eagle Drive, P.O. Box 190010
North Charleston, SC 29419-9010

Re: N.I.S.E. East Engineering Center, Naval Weapons Station, Charleston, SC
Contract N62467-93-C-1096 (PC Project No. 10529)

Dear Mr. Demos:

This responds to your September 7, 2000 letter to Pizzagalli Construction Company ("Pizzagalli") regarding "outstanding deficiencies" at the above-referenced N.I.S.E. East Facility.

Pizzagalli does not believe there are any outstanding deficiencies for which Pizzagalli is responsible. We promptly and professionally corrected all deficiencies when the Navy demonstrated that Pizzagalli had not substantially complied with the contract documents and our contract obligations.

Prior to the Navy's correction of any "deficiencies" for which the Navy would seek recovery from us, we request that Pizzagalli be given (a) written notice of the Navy's allegation of Pizzagalli's responsibility for a specific deficiency and its intent to take specific corrective action, (b) an opportunity to investigate the condition, and, if we agree with the Navy's allegation, (c) the opportunity for us to perform the corrective work.

If the Navy has evidence of obligations that Pizzagalli has not substantially complied with (by specific reference to contract documents) that resulted in damage to the government (by specific reference to building area, room, etc., together with costs and other details), then that evidence should immediately be presented to Pizzagalli in writing. We will then respond promptly setting forth our position.

I want to make very clear that Pizzagalli will not allow the Navy to try to have Pizzagalli become responsible for correction of deficiencies or associated costs that are the responsibility of the Navy and/or Gee & Jenson. Pizzagalli will not take responsibility for design errors or omissions or for any failures or omissions by Gee & Jenson to comply with its obligations under Gee & Jenson's contract with the Navy. On water intrusion, my July 11, 2000 letter to the Navy (copy enclosed) responded to the Navy's June 29, 2000 letter (your September 7 letter referred to the Navy's "June 21 correspondence," but I do not have any June 21 letter) that specifically referenced water intrusion problems. On firesafing, the Navy has agreed there was no specification requiring Pizzagalli to provide firesafing; we stand by ready to perform if and when the Navy provides direction and a change order to Pizzagalli to perform firesafing work. We call your attention to our general position set forth in our July 11, 2000 letter to the Navy.

A.H. Demos
U.S. Department of the Navy, Southern Division
September 18, 2000
Page 2

Please contact me at 919-661-9488 (fax: 919-661-4516) if you have any questions. Thank you.

Very truly yours,

Francis R. Bedell
Senior Vice President

Enclosure

cc: Esther Brown
J.D. Hedges
Angelo Pizzagalli
M.F. Shreve
Richard Cellon

I:\10520\Demos.ltr

# Exhibit 31

**GEE & JENSON**
Engineers • Architects • Planners, Inc.
SINCE 1951
One Harvard Circle
West Palm Beach, FL 33409
Telephone (561) 515-6500
Executive Fax (561) 515-6503
Fax (561) 515-6502

October 4, 2000

Via Facsimile & First Class Mail, Certified Return Receipt

Mr. A. H. Demos
Director Facilities Acquisition, Contracting Officer
Naval Facilities Engineering Command
Southern Division
P.O. Box 190010
N. Charleston, SC 29419-9010

Re: A-E Contract N62467-93-D-0911, N.I.S.E. East Building, Naval Weapons Station, Charleston, SC

Dear Mr. Demos:

As we have previously discussed, Gee & Jenson has no record nor do we have any recollection of receiving M. F. Shreve's letter dated 29 June 2000 concerning the N.I.S.E. East Building. It is our understanding that SOUTHDIV does not have any verification of it being sent either. Since we have now received a copy of that letter and have been informed of the SOUTHDIV position, we would like to do what we can to bring closure to this issue.

As we have stated in previous correspondence, we do not agree with SOUTHDIV's findings concerning A-E liability. This is due primarily to our expert's opinion, similar details being used in other facilities, and based on the information we received in January of this year concerning the absence of water intrusion problems since the original construction and remedial work.

Since your staff believes that there is A-E liability, we would like to understand better the basis for these feelings, especially with regard to the current condition of the building. During our recent phone conversation we agreed it would be advisable for us (our insurers and ourselves) to meet with your professionals and the facility's managers at the site to discuss the issues while viewing firsthand the existing conditions. In this manner we may come to better understand the problem and potentially offer reasonable solutions.

Our team will make itself available for such a meeting as soon as it can be arranged. Please let us know at your earliest convenience who to contact to set up such a meeting. On our side, I will be available to coordinate our team and set up the meeting. My direct phone number is 561-515-6633; my e-mail address is dgoddeau@geejenson.com; my fax number is 561-515-6503. If I am

Mr. A.H. Demos
Page 2 of 2 – October 4, 2000

not available, my secretary, Terry Batt can usually either find me in the building or contact me with little delay.

We have enjoyed providing quality A-E services to SOUTHDIV for well over 30 years and are desirous of resolving these problems and continuing to serve SOUTHDIV for many years to come.

Sincerely,

Donald L. Goddeau, PE, NSPE
President

DLG:tvb



One Harvard Circle • West Palm Beach, FL 33409 • Telephone (561) 515-6500 • Fax (561) 515-6502
Engineering # EB 0002934 • Architecture # AA C000656 • Landscape Architecture # LC C000050 • Land Surveying # LB 0002934 • Interior Design # IB 0001030

# Exhibit 32

-----Original Message-----
**From:** Svendsen, Virgil (Efdsouth)
**Sent:** Wednesday, October 25, 2000 9:17 AM
**To:** Don Goddeau (E-mail)
**Cc:** Demos, Andrew (Efdsouth); Brown, Esther (Efdsouth); Goethe, John (Efdsouth); Herrington, James (Efdsouth); Borden, Candice (Efdsouth); Shank, George (Efdsouth); Elmore, James (Efdsouth); Brown, Don (Efdsouth); Kushner, Peter (Efdsouth)
**Subject:** A-E Contract N62467-93-D-0911, N.I.S.E. East Building, Naval Weapons Station, Charleston

Hello Don, This is not an official response to your letter dated October 4, 2000. What I'd like to do is find out from you what days are available on your schedule to meet with us here and to visit the building. I can then find out at this end what days are a match for us. Then in our official response to your letter, we can confirm the date.

In your letter you stated that as in previous correspondence, you do not agree with SOUTHDIV's findings concerning A-E liability. This disagreement, you say, is due primarily to information you received in January of this year concerning the absence of water intrusion problems since the original construction and remedial work, and on your expert's opinion and similar details being used in other facilities.

I don't know exactly how to respond to that, because you saw the forensic report, but let me just say that there is water intrusion. It was observed in 19 separate openings 32" wide by 48" high through the interior gypsum wallboard. The insulation was removed to gain visual access. Our forensic engineer water-tested 17 openings from the outside and observed water running into the wall. In addition, water damage was observed. Ten rolls of film were exposed to document this and all other deficiencies. Observations and photographs were documented by 50 pages of transcribed field notes, 15 sheets of hand written field notes and sketches of field measurements and observations.

Without the sheetrock removed about all one can see is blistering and stained sheetrock, paint peeling and mildew so I can appreciate that some employees that talked to you in your January visit, may not have been fully aware of the extent of the water intrusion problem. Wayne Pannula, the facilities engineer at N.I.S.E. East is keenly aware of the extent of the problem.

Our expert's opinion differs from yours. Additionally, Gee & Jenson used flashing on three other projects for SOUTHDIV around the same time that the N.I.S.E. building was designed.

Let me know as soon as possible what days you can meet in November and then I'll coordinate it here, let you know by phone or email and then follow up with a letter.

Hopefully we can make progress toward resolution of the problems. We look forward to seeing you.

Very Respectfully,
Virgil

Virgil G. Svendsen, P.E.
Value Engineer
A/E Liability Specialist
Forensic Engineering Contract, NTR
(843) 820-5688
DSN 583-5688
FAX (843) 820-5752
svendsenvg@efdsouth.navfac.navy.mil

# Exhibit 33

DEPARTMENT OF THE NAVY
SOUTHERN DIVISION
NAVAL FACILITIES ENGINEERING COMMAND
P.O. BOX 190010
2155 EAGLE DRIVE
NORTH CHARLESTON, S.C. 29419-9010

93-C-1096
Code 077VGS
28 NOV 00

CERTIFIED MAIL - RETURN RECEIPT REQUESTED

Pizzagalli Construction Company
50 Joy Drive
So. Burlington, Vermont 05407

Subj: CONSTRUCTION CONTRACT N62467-93-C-1096, N.I.S.E. EAST BUILDING, WEAPONS STATION, CHARLESTON, SC

Gentlemen:

We are in receipt of your reply to our September 7, 2000 letter, and it is substantially the same as your response dated July 11, 2000, to our June 29, 2000, letter where you stated that Pizzagalli has been responsive and cooperative on specific items that you agreed were your responsibility. At this time, we are concentrating on three (3) specific deficiencies that were discussed at the 19 March 1999 meeting at Southern Division; namely, WP-6 Inoperable windows, wall insulation, and firesafing.

WP-6 Inoperable Windows - Pizzagalli indicated that they would get the window manufacturer to respond to the report. Pizzagalli agreed that the situations need to be corrected if the blocking and/or sealant are not installed as specified. Some work was done on this but the situation was not corrected. The deficient operable windows received some attention but they still are not in compliance with Pizzagalli's own shop drawings. The shop drawings show solid wood blocking along with backer rod and joint sealant, but these items are not installed. Pizzagalli also did some work on the non-compliant pre-cast drip on the sills.

LF-1 Firesafing - Pizzagalli maintained that LF-1 Improper Firesafing and LF-2 Improper Insulation were shared responsibility since the company thought the Government had inspected that work. Pizzagalli emphasized that the materials installed had been submitted and approved. The question arose whether the submittal was CQC or Government approval. Pizzagalli said they did not know, but the submittal went through the Government regardless. The group reviewed the submittal and the drawings and Pizzagalli agreed that the Firesafing is shown on the drawings. The issue of responsibility arose again. The Government pointed out that assignment of responsibility is different for CQC versus Government approved submittals. Pizzagalli agreed. (This is in the minutes of the meeting.) Firesafing specifications call for firestopping to meet UL FRD or FM7825. Kraft backed insulation does not meet this specification.

LF-2 Wall Insulation - Pizzagalli maintained that LF-1 Improper Firesafing and LF-2 Improper Insulation were shared responsibility since the company thought the Government had inspected that work. Pizzagalli stated again that the insulation had been inspected and accepted. The Government indicated that RFI's need to be reviewed. Pizzagalli agreed but pointed out that not all information may be on RFI's since many decisions had been made in the field. The Government said that the insulation was in violation of the code and asked if

Subj: CONSTRUCTION CONTRACT N62467-93-C-1096, N.I.S.E. EAST BUILDING, WEAPONS STATION, CHARLESTON, SC

this was not Pizzagalli's problem. Pizzagalli said that they did not design the building and the drawings were hard to understand. The Government pointed out that the insulation used is in violation of the specification requirements, which do not allow the use of Kraft backed insulation and Pizzagalli agreed. However, Kraft backed insulation was installed. Pizzagalli emphasized the main effort should be making the necessary corrections with minimal impact. The Government emphasized that we are open to suggestions for the most efficient and economical solution to the problem, but, as of the date of this letter, there has been no offer of a solution to the problem.

The Government is pursuing correction of the outstanding deficiencies by other means and hereby reserves the right to pursue recovery of such costs against Pizzagalli and Gee & Jenson. However, we are amenable to working with you to mitigate your costs. The Government has made itself clear that it finds Pizzagalli and Gee & Jenson both jointly and severally liable for many of the water intrusion problems as stated in prior correspondence. If necessary, the Government will pursue recovery costs for LF-1, LF-2 and WP-6 from Pizzagalli. Any further correspondence should be addressed to Andrew Demos, 843-820-5902.

Sincerely,

A. H. Demos

A. H. DEMOS
Director, Facilities Acquisition Division
Contracting Officer

Copy to:
NFEC Field Office Charleston

05
09C
02
Code 077VGS A-E Liability File
Construction Contract File N62467-93-C-1096
A/E Contract File N62467-93-C-0911

07 07A 021 0213 07 077 077VGS CIRC

# Exhibit 34

Gee & Jenson

*Celebrating 50 Years of Design Excellence*

March 7, 2001

M.F. Shreve
Head, Contract Department
Contracting Officer
Southern Division
Naval Facilities Engineering Command
P.O. Box 190010
2155 Eagle Drive
N. Charleston, SC 29419-9010

Re: A/E Contract N62467-93-D-0911, NISE East Building, Weapons Station, Charleston SC

Dear Mr. Shreve:

As you are probably aware, we have been attempting to meet with and address the alleged design and construction deficiencies associated with the NISE East facility. Since receiving your letter dated 29 June 2000 in September we again met with representatives of Southern Division on November 22, 2000 and toured the facility.

During that review of the facility it was again very apparent that in the interim since our earlier visit to the building on January 13, 2000 there were still only very minor signs of any leaks or water intrusion even after the removal of ceiling tiles and observations of concealed areas. Subsequent to the most recent visit, in a conversation with Dale Johannesmeyer, it was agreed that he would have the "building envelope specialists" review the situation and provide comments concerning their findings. Upon contacting Dale in January, he informed us that the position of Southern Division had not changed with respect to there being design deficiencies in the building which were the responsibility of Gee & Jenson. Dale suggested we contact Chip Stehmeyer, the Director of Design, with any comments we had.

I spoke with Mr. Stehmeyer approximately two weeks ago, again presenting our position. Mr. Stehmeyer suggested that we officially respond to the 29 June 2000 "demand" letter. The following is our response to that letter.

Based on your letter of 24 November 1999 it is our understanding that the failure to flash under per-cast sill (WP-1.1) and the failure to design proper stucco termination (WP-8) as noted in the Riesberg report dated November 11, 1998 are the alleged design deficiencies which were attributed to Gee & Jenson and for which the demand of $762,611 is made. Our efforts to understand the basis for these allegations have included two meetings with representatives of

\\Termsrvr\Batt\GODDEAU\LETTERS\Shreve ltr 03 07 01.doc

Southern Division and two separate inspections of the facility. The basis of our resistance to respond to the allegations is the fact that there have been virtually no discernable leaks or signs of water intrusion in the building since the original leaks, which occurred primarily during the original construction process. You are asking us to write a check for over $700,000 to correct a problem that has not been demonstrated to exist during a period of over 2 ½ years. It is based on opinions concerning a designer's choice as to where to use flashing, the appropriate use of sealants, and the use of a drip edge which had not been standard practice at that time. As we have stated on a number of pervious occasions, we do not feel that our design in either case was negligent, especially considered in light of SOUTHNAVFACENGCOMINST 4335.2C.

We have enjoyed what we believe is an excellent working relationship with Southern Division on a large number of significant projects, which were highly successful. We'd like to think and believe that, based on assurances we have received, this is an isolated instance which must be addressed, but will not impact our overall relationship with Southern Division with respect to being selected to accomplish future assignments. We come, therefore, to the point where we must decide how to resolve the NISE East facility situation and then proceed on with other more current activities.

We believe that neither of us want to get enmeshed in legal proceedings and all the attendant costs and time consuming activities. So perhaps, short of that, we could enter into a mediation with a trained mediator who could assist both of us to reach a resolution on this issue. Our insurance company has agreed to be a party to such mediation and will make every effort to assist us in resolving this situation. We propose, therefore, that both of our legal advisors meet and jointly select a mediator and set a date for a formal mediation on this issue.

We truly want to resolve this issue and get on with reestablishing our relationship, which we believe has been beneficial to both parties. Please let us know your position concerning the mediation and, if you approve of such a step, who our attorney should get in touch with to make the needed arrangements.

We look forward to hearing from you at your earliest convenience.

Sincerely,

Donald L. Goddeau, PE, NSPE
President

DLG:tvb

cc: Diane Schlegel
Kent Stair

\\Termsrvr\Barr\GODDEAU\LETTERS\Shreve ltr 03 07 01.doc

> talked to you in your January [2000] visit, may not have been fully aware of the extent of the water intrusion problem. Wayne Pannula, the facilities engineer at N.I.S.E. East is keenly aware of the extent of the problem. DA 30

41. On 28 November 2000 the Navy notified Pizzagalli Construction that it was concentrating on three specific outstanding construction deficiencies (LF-1, LF-2 and WP-6). The government noted it was pursuing correction of the outstanding deficiencies and reserved the right to pursue recovery of such costs from Pizzagalli. DA 31

42. On 7 March 2001, Donald Goddeau of Gee & Jenson responded to the Navy's 29 June 2000 demand letter. Mr. Goddeau stated that the basis of Gee & Jenson's denial of A-E liability for the water intrusion issues at the NISE East Engineering Center as follows:

> It is based on opinions concerning a designer's choice as to where to use flashing, the appropriate use of sealants, and the use of a drip edge which had not been standard practice at that time. DA 32

43. The Navy and Gee & Jenson agreed to mediation in an attempt to resolve the A/E liability issue. During the mediation, the Navy agreed to accept a repair to correct the effects of the defective design in lieu of pursuing the most conservative repair, which would be to completely dismantle the curtain wall system on the first and second floors. The Government offered Gee & Jenson the opportunity to mitigate its costs by designing a long-term solution to water intrusion problems. When Gee & Jenson failed to provide an acceptable design, the Government asked Mr. Riesberg to design a repair. Wayne Pannullo affidavit

44. On 25 September 2002, the Navy executed modification 000403 to contract N62467-96-D-0819/Delivery Order 0004 for A/E Services to conduct design services at the NISE East Engineering Center to implement the repairs recommended by the Type 1 Forensic Study previously awarded under delivery order 0004. DA 33

# Exhibit 35

# AMENDMENT OF SOLICITATION/MODIFICATION OF CONTRACT

1. CONTRACT ID CODE: J
PAGE OF PAGES: 1 | 5

2. AMENDMENT/MODIFICATION NO.:
3. EFFECTIVE DATE: 25-Sep-2002
4. REQUISITION/PURCHASE REQ. NO.: 0211LF02-98-0004
5. PROJECT NO. (If applicable):

6. ISSUED BY CODE N62467
NAVAL FACILITIES ENGINEERING COMMAND, SO
2155 EAGLE DRIVE,
P.O. BOX 190010
NORTH CHARLESTON SC 29419-9010

7. ADMINISTERED BY (If other than item 6) CODE
See Item 6

8. NAME AND ADDRESS OF CONTRACTOR (No., Street, County, State and Zip Code)
RIESBERG LUNN, LLC
WILLIAM RIESBERG
298 MEETING STREET
CHARLESTON SC 29401

CODE 1QZZ9 FACILITY CODE

9A. AMENDMENT OF SOLICITATION NO.
9B. DATED (SEE ITEM 11)
X 10A. MOD. OF CONTRACT/ORDER NO. N62467-96-D-0819-0004
X 10B. DATED (SEE ITEM 13) 04-May-2000

11. THIS ITEM ONLY APPLIES TO AMENDMENTS OF SOLICITATIONS

☐ The above numbered solicitation is amended as set forth in Item 14. The hour and date specified for receipt of Offer ☐ is extended, ☐ is not extended.

Offer must acknowledge receipt of this amendment prior to the hour and date specified in the solicitation or as amended by one of the following methods: (a) By completing Items 8 and 15, and returning _____ copies of the amendment; (b) By acknowledging receipt of this amendment on each copy of the offer submitted; or (c) By separate letter or telegram which includes a reference to the solicitation and amendment numbers. FAILURE OF YOUR ACKNOWLEDGMENT TO BE RECEIVED AT THE PLACE DESIGNATED FOR THE RECEIPT OF OFFERS PRIOR TO THE HOUR AND DATE SPECIFIED MAY RESULT IN REJECTION OF YOUR OFFER. If by virtue of this amendment you desire to change an offer already submitted, such change may be made by telegram or letter, provided each telegram or letter makes reference to the solicitation and this amendment, and is received prior to the opening hour and date specified.

12. ACCOUNTING AND APPROPRIATION DATA (If required)
See Schedule

13. THIS ITEM APPLIES ONLY TO MODIFICATIONS OF CONTRACTS/ORDERS.
IT MODIFIES THE CONTRACT/ORDER NO. AS DESCRIBED IN ITEM 14.

A. THIS CHANGE ORDER IS ISSUED PURSUANT TO: (Specify authority) THE CHANGES SET FORTH IN ITEM 14 ARE MADE IN THE CONTRACT ORDER NO. IN ITEM 10A.

B. THE ABOVE NUMBERED CONTRACT/ORDER IS MODIFIED TO REFLECT THE ADMINISTRATIVE CHANGES (such as changes in paying office, appropriation date, etc.) SET FORTH IN ITEM 14, PURSUANT TO THE AUTHORITY OF FAR 43.103(B).

C. THIS SUPPLEMENTAL AGREEMENT IS ENTERED INTO PURSUANT TO AUTHORITY OF:

X D. OTHER (Specify type of modification and authority)
MUTUAL AGREEMENT OF THE PARTIES

E. IMPORTANT: Contractor ☒ is not, ☐ is required to sign this document and return _____ copies to the issuing office.

14. DESCRIPTION OF AMENDMENT/MODIFICATION (Organized by UCF section headings, including solicitation/contract subject matter where feasible.)

INDEFINITE DELIVERY REQUIREMENTS CONTRACT FOR PROFESSIONAL FORENSIC ARCHITECTURAL AND ENGINEERING SERVICES WITHIN SOUTHERN DIVISION NAVAL FACILITIES ENGINEERING COMMAND AREA OF RESPONSIBILITY.

A/E Services to conduct design services at NISE East Engineering Center, Charleston, SC to implement repairs recommended by the Type 1 Forensic Engineering Study previously awarded under this task order.

See page 2. DSGN

Except as provided herein, all terms and conditions of the document referenced in Item 9A or 10A, as heretofore changed, remains unchanged and in full force and effect.

15A. NAME AND TITLE OF SIGNER (Type or print)

16A. NAME AND TITLE OF CONTRACTING OFFICER (Type or print)
LARRY FISK / CONTRACTING OFFICER

15B. CONTRACTOR/OFFEROR
(Signature of person authorized to sign)

15C. DATE SIGNED

16B. UNITED STATES OF AMERICA
BY
(Signature of Contracting Officer)

16C. DATE SIGNED
25-Sep-2002

EXCEPTION TO SF30
APPROVED BY OIRM 11-84

30-105-04

STANDARD FORM 30 (Rev. 10-83)
Prescribed by GSA
FAR (48 CFR) 53.243

SECTION SF 30 BLOCK 14 CONTINUATION PAGE

SUMMARY OF CHANGES

Changes in Solicitation/Contract/Order Form

Both parties mutually agree to modify task order 0004 to include the Design Services Package for the NISE East Facility, Charleston, SC.

The start date for this work shall be the date of the Modification, Block 16c of the SF30.

INDEFINITE DELIVERY REQUIREMENTS FOR PROFESSIONAL FORENSIC ARCHITECTURAL AND ENGINEERING SERVICES WITHIN SOUTHERN DIVISION FACILITIES ENGINEERING COMMAND AREA OF RESPONSIBILITY

000403 shall award Design Services to implement recommendations of the Type 1 Forensic Engineering Study, NISE East Engineering Center, Charleston, SC.

Services shall be in accordance with Scope of Work and associated Work Plan, Attachment A.

You are not required to sign this document. Your offer dated September 11, 2002 (Rev. 9.16.02) is accepted. This action consummates the contract, which consists of the following documents, Scope of Work and associated Work Plan, your offer, and this contract document. No further documentation is necessary.

Attachment A: Scope of Work and associated Work Plan dated September 19 and 20, 2002, respectively.
Attachment B: Riesberg Lunn, LLC revised offer dated September 11, 2002 (Rev. 9.16.02)

Changes in Section B

CLIN 0002 was added.

| ITEM NO | SUPPLIES/SERVICES | ESIMATED QUANTITY | UNIT | UNIT PRICE | ESTIMATED AMOUNT |
|---|---|---|---|---|---|
| 0002 | | 5,835.00 | | $1.00 | $5,835.00 |
| | Expert Testimony<br>FFP - Add expert testimony concerning the water intrusion problem at NISE East Facility in Charleston, SC. | | | | |

ESTIMATED NET AMT $5,835.00

ACRN AB Funded Amount $5,835.00

CLIN 0003 was added.

| ITEM NO | SUPPLIES/SERVICES | ESIMATED QUANTITY | UNIT | UNIT PRICE | ESTIMATED AMOUNT |
|---|---|---|---|---|---|
| 0003 | | .00 | | $0.00 | $0.00 |

Design Services
FFP - Provide investigation and design to implement repairs recommended by the Forensic Study. [$17,014.00]

ESTIMATED NET AMT $0.00

SUB-CLIN 0003AA was added.

| ITEM NO | SUPPLIES/SERVICES | ESIMATED QUANTITY | UNIT | UNIT PRICE | ESTIMATED AMOUNT |
|---|---|---|---|---|---|
| 0003AA | | 12,697.00 | | $1.00 | $12,697.00 |

Design Services
FFP - Window Repairs to NISE East Facility, Charleston, SC.

ESTIMATED NET AMT $12,697.00

ACRN AC Funded Amount $12,697.00

SUB-CLIN 0003AB was added.

| ITEM NO | SUPPLIES/SERVICES | ESIMATED QUANTITY | UNIT | UNIT PRICE | ESTIMATED AMOUNT |
|---|---|---|---|---|---|
| 0003AB | | 4,317.00 | Dollars, U.S. | $1.00 | $4,317.00 |

Design Services
FFP - Window Repairs for NISE East Facility, Charleston, SC

| | |
|---|---|
| ESTIMATED NET AMT | $4,317.00 |

| | |
|---|---|
| ACRN AD Funded Amount | $4,317.00 |

Changes in Section G

Summary for the Payment Office

As a result of this modification, the total funded amount of the contract is increased by $17,014.00 from $47,248.00 to $64,262.00

This modification restructures the previous contract level funding with clin level funding.

(Contract Level Funding)
AA: GENERIC LINE OF ACCOUNTING FOR MIGRATION 000000000000
is decreased by $41,413.00 from $41,413.00 to $0.00

ZZ: AB 17 01011804 KU2N 0252 62467 8 068732 2D 07000Y AB1A43C346PZ 000000000000
is decreased by $5,835.00 from $5,835.00 to $0.00
The funding ACRN AB has been deleted.

(Clin Level Funding)
CLIN :0001
AA: 1797XXXX0510 K500 0252 11506 0 062467 2D N65236 AAFU365574XX
is increased by $41,413.00 from $0.00 to $41,413.00
The funding ACRN AA has been added.

CLIN :0002
AB: 17 01011804 KU2N 0252 62467 8 068732 2D 07000Y AB1A43C346PZ
is increased by $5,835.00 from $0.00 to $5,835.00
The funding ACRN AB has been added.

SUB-CLIN :0003AA
AC: 1797XXXX0510 K800 0252 11806 0 062467 2D N69214 ACFU476748XX
10083/13 8516 N65236001T1 70219 is increased by $12,697.00 from $0.00 to $12,697.00
The funding ACRN AC has been added.

SUB-CLIN :0003AB
AD: 1797XXXX0510 K700 0252 11706 0 062467 2D N69214 ADFU476748XX
10083/13 8516 N65236001T1 54235 is increased by $4,317.00 from $0.00 to $4,317.00
The funding ACRN AD has been added.

# Exhibit 36

**DEPARTMENT OF THE NAVY**
SOUTHERN DIVISION
NAVAL FACILITIES ENGINEERING COMMAND
P.O. BOX 190010
2155 EAGLE DRIVE
NORTH CHARLESTON, SC 29419-9010

IN REPLY REFER TO:
4365
Code ACQ00Bgt
93-C-0911
07 APR 2004

FINAL DECISION 04-S-03

CERTIFIED - RETURN RECEIPT REQUESTED

Gee & Jenson, A Division of CH2M HILL
One Harvard Circle
West Palm Beach, FL 33409

Subj: CONTRACT N62467-93-C-0911, NISE EAST BUILDING, NAVAL WEAPONS STATION, CHARLESTON, SC

Gentlemen:

The Government has investigated financial responsibility associated with the damages to the NISE EAST Building at the Naval Weapons Station, Charleston, South Carolina. Your firm has been found to be financially liable in the amount of $138,083.00. The breakdown is as follows: the recommended fix to the precast sill is $70,000.00 and the Forensic Engineering Consultation Study and Services and associated administrative costs are $68,083.00. You may complete the repair yourself or we will complete the work and charge you the cost to do so. Should you choose to perform the work yourself, it will be performed in accordance with the criteria provided by the Government. However, the government specified criteria is provided solely to mitigate damages, and does not relieve you of the ultimate responsibility for the design defects and/or repair work. Should you choose not to perform the work we will perform the work ourselves and seek recovery of all costs. We will also continue to hold you responsible for the alleged design defects should the repairs fail because, again, the method of repair undertaken seeks to mitigate damages. This matter is considered to be in dispute as defined in the Disputes clause of your contract, and that this Final Decision of the Contracting Officer is necessary for contractual resolution.

Demand is hereby made upon you to perform the repair work or for payment of $138,083.00. You are reminded that, pursuant to the clause of the contract entitled INTEREST, any payment not received within 30 days shall bear interest from that date. The interest rate per annum shall be the interest rate in effect on the date of this letter, which has been established by the Secretary of the Treasury, pursuant to Public Law 9241.

Subj: CONTRACT N62467-93-C-0911, NISE EAST BUILDING, NAVAL WEAPONS STATION, CHARLESTON, SC

Please advise by April 17, 2004, whether you will remit payment in the amount due. Payment is payable to "United States Treasurer", and annotated with the contract number to the following address: Commander, Southern Division, Naval Facilities Engineering Command, 2155 Eagle Drive, P.O. Box 190010, North Charleston, SC 29419-9010.This is the Final Decision of the Contracting Officer.

This Decision may be appealed to the Armed Services Board of Contract Appeals, which is the authorized representative of the Secretary for hearing and determining contract disputes. If you decide to appeal this decision, written notice thereof must be mailed or otherwise furnished to the Armed Services Board of Contract Appeals, Skyline Six, 5109 Leesburg Pike, 7th Floor, Falls Church, VA 22041, within ninety days from the date you receive this decision. A copy thereof shall also be furnished to the Contracting Officer from whose decision the appeal is taken, at the address set forth at the head of this letter, Attention: Head, Contract Department. The notice should indicate that an appeal is intended, should reference this decision, identify the contract by number, and state the amount in dispute. The rules of procedures of the Armed Services Board of Contract Appeals are in the Department of Defense Federal Acquisition Regulation Supplement (DFARS), Appendix A, Part Two. Optional Accelerated Procedures are available in appeals involving $50,000 or less and Small Claims (expedited) procedures are available in appeals involving $10,000 or less. In lieu of appealing to the Board of Contract Appeals, you may bring action directly in the Court of Federal Claims* within 12 months of the date you receive this decision (*except as provided in Section 4 of the Contract Disputes Act (Maritime Contracts)).

Sincerely,

DAVID F. DEMOSKE
DIRECTOR OF ACQUISITION
CONTRACTING OFFICER

Subj: CONTRACT N62467-9... NS
STATION, CHARLEST...

> 07 APR 2004
ul 4/5/04

U.S. Postal Service™
CERTIFIED MAIL™ RECEIPT
(Domestic Mail Only; No Insurance Coverage Provided)
For delivery information visit our website at www.usps.com®

OFFICIAL USE

| | |
|---|---|
| Postage | $ |
| Certified Fee | |
| Return Reciept Fee (Endorsement Required) | |
| Restricted Delivery Fee (Endorsement Required) | |
| Total Postage & Fees | $ |

Postmark Here

7003 0500 0002 7845 7743

Sent To
Gee & Jenson, A Division of CH2M Hill
One Harvard Circle
West Palm Beach, FL 33409
N62467-93-C-0911 04-S-03

SENDER: COMPLETE THIS SECTION

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Gee & Jenson, A Division of CH2M Hill
One Harvard Circle
West Palm Beach, FL 33409
N62467-93-C-0911 04-S-03

COMPLETE THIS SECTION ON DELIVERY

A. Signature
X Teresa V. Bolt ☐ Agent ☐ Addressee

B. Received by (Printed Name) Teresa V. Bolt C. Date of Delivery 4/12/04

D. Is delivery address different from item 1? ☐ Yes
If YES, enter delivery address below: ☐ No

3. Service Type
☐ Certified Mail ☐ Express Mail
☐ Registered ☐ Return Receipt for Merchandise
☐ Insured Mail ☐ C.O.D.

4. Restricted Delivery? (Extra Fee) ☐ Yes

2. Article Number (Transfer from service label) 7003 0500 0002 7845 7743

PS Form 3811, August 2001 Domestic Return Receipt 102595-02-M-1540