IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| GEE & JENSON ENGINEERS, ARCHITECTS, AND PLANNERS, | ) | |
| Plaintiff, | ) | |
| v. | ) | No. 05-457C (Judge Bush) |
| THE UNITED STATES, | ) | |
| Defendant. | ) | |

DEFENDANT'S REPLY AND APPENDIX TO PLAINTIFF'S
RESPONSE TO DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT

GREGORY G. KATSAS
Acting Assistant Attorney General

JEANNE E. DAVIDSON
Director

DONALD E. KINNER
Assistant Director

OF COUNSEL:

PAMELA J. NESTELL
Trial Attorney
Department of the Navy
720 Kennon St. SE
Washington Navy Yard, DC 20374

TARA K. HOGAN
Trial Attorney
Commercial Litigation Branch
Civil Division
U.S. Department of Justice
Washington, D.C. 20530
Tele: (202) 616-2228
Fax: (202) 305-7643

May 27, 2008

Attorneys for Defendant

# TABLE OF CONTENTS


TABLE OF CONTENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

DEFENDANT'S REPLY TO PLAINTIFF'S RESPONSE TO DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

SUMMARY OF ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

I. Gee & Jenson's Argument That Flashing Is Not A Contract Requirement Is Unavailing . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

A. Flashing Is Required By The Building Code . . . . . . . . . . . . . . . . . . . . . . . . 2

B. Flashing Is Required By The Guide Specification . . . . . . . . . . . . . . . . . . . 5

II. Gee & Jenson Has Failed To Show That It Met The Requisite Standard of Care . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

III. The Government Incurred Damages As A Result Of Gee & Jenson's Failure To Include Flashing In Its Design . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

# TABLE OF AUTHORITIES

## CASES


Appeal of William Tao & Assocs., Inc.,
89-2 BCA 21588, ASBCA No. 32986 (Jan. 30, 1989) . . . . . . . . . . . . . . . . . . . . . . . . . 13

C.H. Guernsey & Co. v. United States,
65 Fed. Cl. 582 (2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Citizens Federal Bank v. United States,
474 F.3d 1314 (Fed. Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Community Heating & Plumbing Co., Inc. v. Kelso,
987 F.2d 1575 (Fed. Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Hi-Shear Tech. Corp. v. United States,
35 F.3d 1372 (Fed. Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Indiana Michigan Co. v. United States,
422 F.3d 1369 (Fed. Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 12

Krauss v. Greenbarg,
137 F.2d 569 (3d Cir. 1943) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Land v. United States,
29 Fed. Cl. 744 (1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

M.A. Mortensen Co. v. Brownlee,
363 F.3d 1203 (Fed. Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Myerle v. United States,
33 Ct. Cl. 1 (1897) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

NVT Technologies, Inc. v. United States,
370 F.3d 1153 (Fed. Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Rumsfeld v. Applied Cos.,
325 F.3d 1328 (Fed. Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Shyface v. Secretary of Health & Human Servs.,
165 F.3d 1344 (Fed. Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

TechSearch LLC v. Intel Corp.,
286 F.3d 1360 (Fed. Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

WestFed Holdings, Inc. v. United States,
52 Fed. Cl. 135 (2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| GEE & JENSON ENGINEERS, ARCHITECTS, AND PLANNERS, | ) | |
| Plaintiff, | ) | |
| v. | ) | No. 05-457C (Judge Bush) |
| THE UNITED STATES, | ) | |
| Defendant. | ) | |

DEFENDANT'S REPLY TO PLAINTIFF'S RESPONSE
TO DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT

Pursuant to Rule 56 of the Rules of the United States Court of Federal Claims ("RCFC"), the United States respectfully submits this reply to plaintiff's response to defendant's cross-motion for summary judgment. For the reasons set forth below and for the reasons outlined in our cross-motion, this Court should enter summary judgment in favor of the United States.

## SUMMARY OF ARGUMENT

Gee & Jenson, as the architect-engineer ("A/E"), expressly agreed that its designs, drawings and specifications would be of professional quality and technically accurate, and that it would, without additional compensation, correct errors or deficiencies in its designs, drawings and specifications. Defendant's Proposed Findings of Uncontroverted Fact ("DPFUF") ¶ 2. Gee & Jenson accepted liability for its negligent performance of A/E services under the contract. Gee & Jenson breached the contract by failing to ensure that flashing was incorporated in its design and installed during construction. Because Gee & Jenson's design fell below the acceptable standard of care for A/Es, the Navy is entitled to its claimed damages.

The Navy's damages were directly and substantially caused by Gee & Jenson's breach. Because of its defective design, Gee & Jenson is responsible for the lack of flashing in the constructed building. Gee & Jenson cannot escape liability merely because the construction contractor also made mistakes, particularly because it was Gee & Jenson, as the Title II inspector, who was responsible for supervising the construction contractor's work.

## ARGUMENT

### I. Gee & Jenson's Argument That Flashing Is Not A Contract Requirement Is Unavailing

Gee & Jenson argues in its response that neither the building code nor the guide specifications required flashing. Plaintiff's Response to Defendant's Cross-Motion for Summary Judgment ("Pl. Resp.") at 3. That argument is incorrect as a matter of law. Whether the contract required flashing is a matter of contract interpretation, which is a question of law. M.A. Mortensen Co. v. Brownlee, 363 F.3d 1203, 1206 (Fed.Cir. 2004). As we argued in our opening brief, Gee & Jenson was required by the terms of the contract to include flashing in its design. Defendant's Cross Motion for Summary Judgment ("Def. Cross-Mot.") at 8.

#### A. Flashing Is Required By The Building Code

In its response, Gee & Jenson incorrectly overstates that the parties agree the building had to be designed in accordance with the building code. Pl.Resp. at 3. While the Standard Building Code ("SBC") may have been one of the applicable criteria, it certainly was not the only one governing the development of project specifications. DPFUF ¶ 8. The building had to be designed in accordance with criteria identified by NAVFAC Southern Division, including NAVFAC guide specifications, regional guide specifications, technical guidance documents, and other referenced sources for criteria such as military handbooks, design manuals, and NAVFAC

Publications. Defendant's Response to Plaintiff's Proposed Findings of Uncontroverted Fact ("Def. Resp.to PPFUF") ¶ 3. All of these criteria required use of flashing.

Certainly the SBC required the use of flashing in this particular project. The SBC section in question here is § 811.1.4. DA507.[1] Although the code section is only three sentences long, Gee & Jenson's interpretation fails to give effect to all parts of the code section. Gee & Jenson contends that, based upon the first sentence of § 811.1.4, the code provides the architect generic "discretion" in deciding whether or not to use flashing. Pl. Resp. at 4. However, in both its motion for summary judgment and its response to the Government's cross-motion, Gee & Jenson has failed to address the second sentence of that section, which provides: "flashing shall be provided at intersections of veneered walls of different materials unless such materials provide a self flashing joint and at other points subject to the entrance of water." DA507.[2] Because Gee & Jenson designed a building with composite walls (which incorporated brickwork, stucco, precast concrete panels, and precast concrete sills), the second sentence of the SBC specifically applies to the NISE East building. Gee & Jenson persists in refusing to acknowledge the plain language of this sentence.

The third sentence of § 811.1.4 states: "Caulking shall be provided where such flashing <u>is determined by the Building Official</u> to be impractical." DA507 (emphasis added).[3] Gee &

---

[1] "DA__" refers to pages of the appendix filed concurrently with our cross-motion for summary judgment.

[2] The <u>Means Illustrated Construction Dictionary</u>, 3d Edition, Unabridged, defines a composite wall as "a wall composed of multiple vertical layers of masonry, each one unit thick, in which one layer is different from others in type or grade of stone/brick or mortar used."

[3] The Navy appointed an Engineer-in-Charge responsible for responding to technical questions from the architect. DA26; DA56 (appointing James Caulder as EIC); DA81; DA83.

Jenson contends in its response that it complied with the requirement in this sentence of the SBC by the act of submitting its overall design for approval to the Navy. It implies that the Navy, as the building official, determined flashing was impractical, and thus approved the use of sealant in lieu of flashing for the NISE East building by accepting Gee & Jenson's design. In fact, no Navy official ever made a determination that flashing was impractical, DPFUF ¶ 13, and Gee & Jenson's argument that such a determination was made implicitly by virtue of the Navy's acceptance of the entire building design is nothing less than absurd. Indeed, the contract specifically places the responsibility of formulating the design upon Gee & Jenson. DPFUF ¶ 4. It was for this expertise that the Navy contracted. Thus, for Gee & Jenson to shift the design responsibility to the Navy undermines the intent and express obligations of the contract. DPFUF ¶ 2.

Gee & Jenson nominally argues in its response that it was impractical to design flashing for the NISE East building. There are two problems with this argument. First, Gee & Jenson admits in its response that it was *not impractical* to install flashing in the building. Pl. Resp. at 5. But more importantly, the code vests the responsibility for the impracticality determination with the building official, not with the architect. Mr. Hullihan, Gee & Jenson's principal architect on this project, acknowledged this requirement:

> Q. Does this code [SBC] give the architect the option to decide whether or not to use flashing or sealants?
> A. I don't think it gives the architect the option. I think it gives the architect the option to discuss it with the building official and if they agree that it's impractical then you're preceding [sic] under the code.

DA531 (deposition transcript of T. Hullihan, p. 73 lines 13-16).[4]

Clearly, this is not what Gee & Jenson did here. Rather, Gee & Jenson's decision to omit flashing under the pre-cast sills without discussing this decision with the Navy clearly breached the contract requirement to include flashing in the building design, or to obtain prior approval before deviating from the contract requirements in this fashion. DPFUF ¶5 ; DA76.

B. Flashing Is Required By The Guide Specification

The contract explicitly required Gee & Jenson to adhere to NAVFAC guide specifications and applicable codes in preparing the project specifications. DPFUF ¶ 7. The A/E guide provided that "the Guide Specifications listed in the current SOUTHNAVFACENGCOM Index of Criteria SHALL BE UTILIZED." DA 149. The A/E Guide further cautioned that "[i]t is the A/E's responsibility to ensure that he obtains and includes all the Regional requirements." DA149.

NAVFAC guide specification § 04200, Unit Masonry, clearly called for flashing in exterior walls by the following direction: "Require flashing in exterior masonry walls . . . at all obstructions such as bond beams, sills, lintels, and concrete tie beams . . . This is a regional requirement which shall be used, when applicable, for SOUTHNAVFACENGCOM projects." DPFUF ¶ 12. Gee & Jenson accuses the Government of failing to provide a document showing Guide Specification § 04200, Unit Masonry, was listed in the Index of Criteria. In fact, the Government was unsuccessful in obtaining the Index of Criteria by a specific request for

[4] The pages of the appendix attached to this reply brief continue chronologically from the appendix originally filed with our cross-motion.

production of this document directed to Gee & Jenson during discovery.[5] The Index of Criteria was provided by NAVFAC Southern Division as part of the design kit furnished to Gee & Jenson upon contract award. See DA 53. The fact that Gee & Jenson included § 04200, Unit Masonry, in the project specifications is the best evidence that the Guide Specifications were in the Index of Criteria.[6] Gee & Jenson cannot seriously dispute that it obtained, and used, the Guide Specifications as part of its design package.

Gee & Jenson argues that, per the A/E Guide, the architect is required to use the guide specifications where they are applicable, but that the architect is "CAUTIONED TO EDIT AND MODIFY THEM TO SUIT THE PROJECT REQUIREMENTS." Pl. Resp. at 6 (citing DA149)). There is no dispute that the A/E Guide means what it says: that the A/E Guide directed Gee & Jenson to tailor the specificcation for this specific project. However, if Gee & Jenson means to argue that the A/E Guide permitted it to omit mandatory design requirements, it is incorrect.

---

[5] Subsequent to the completion of construction of this project, the Naval Facilities Engineering Command ("NAVFAC") has undergone a complete reorganization of its headquarters and component commands. NAVFAC Southern Division no longer exists. By 30 September 2008, the SOUTHDIV Charleston office will be closed. Consequently, the Government has not been able to locate a copy of the Index of Criteria dated 1993-1994.

[6] The Index of Criteria would change as various industry specifications and other design criteria were updated. See DA150, ¶ 1.2.3. A copy of the Index of Criteria dated 2001 is attached. DA532-45. It is indicative of the criteria listed in the 1993-94 version. A copy of the Index of Guide Specifications for Navy, dated 20 December 1993, is also attached. DA546-61. This index lists the 16-division guide specifications that would have been included in the 1993-1994 Index of Criteria. Based upon the December 1993 Index, it is clear that the guide specifications listed in the SOUTHDIV Index of Criteria applicable to this contract would have included § 04200, Unit Masonry.

Guide specification NFGS-04200 is instructive. DA213. The guide specification provides that " . . . [a]ppropriate paragraphs must be added to this section, or appropriate sections must be added to the project specification when required by the project." The remainder of the guide specification is replete with notes (surrounded with asterisks so they stand out) as well as bracketed sentences or paragraphs. The notes provide important information for the designer to use in preparing the project specifications. For example, the notes list, among other things, what must be shown on the project drawings, which portions of the ASTM publications apply to specific materials, and in some instances which bracketed sentences or paragraphs to use for regional projects.

A comparison of guide specification NFGS-04200 (DA199-223) and the construction specifications produced by Gee & Jenson, § 04200, Unit Masonry (DA236-250), demonstrates that Gee & Jenson used NFGS 4200 to prepare the construction contract. What Gee & Jenson negligently failed to do was include through-wall flashing details on the project drawings. This led to the construction of a building which provided no way for water escape once water penetrated the exterior of the building. This was a failure to follow the contract requirements as well as a failure to meet the professional standard of care.

Notwithstanding this failure, Gee & Jenson also points to a technical publication referenced in Note D of NFGS 4200 (TEK 126) to support its position that the A/E has discretion to design flashing "as necessary." This argument is misleading. TEK 126 addresses flashing in concrete masonry wall units (brick or block). It does not apply to the other parts of the composite wall system designed by Gee & Jenson such as stucco, precast concrete panels, and precast concrete sills.

Finally, Gee & Jenson attempts to argue that the contract language is ambiguous and that the contract should accordingly be interpreted in its favor. Pl. Resp. at 3; 6. Simply because the contract was large and incorporated critical technical requirements by reference does not render the contract ambiguous. Ambiguity results when the contract gives rise to two different and reasonable interpretations that are both consistent with the contract language. Community Heating & Plumbing Co., Inc. v. Kelso, 987 F.2d 1575, 1579 (Fed. Cir. 1993). The contract clearly required Gee & Jenson to use NAVFAC guide specifications, and the language of the particular Guide Specification for flashing in exterior walls was explicit that the inclusion of flashing was "mandatory." Gee & Jenson's interpretation is unreasonable given the clear and unambiguous instructions. See NVT Technologies, Inc. v. United States, 370 F.3d 1153, 1159 (Fed. Cir. 2004) (cautioning that a party's interpretation must lie within a "zone of reasonableness" to demonstrate ambiguity).

II. Gee & Jenson Has Failed To Show That It Met The Requisite Standard of Care

The Government bargained with Gee & Jenson for its skill and care in performing its architectural engineering services and for its technical knowledge. The contracting officer properly determined that the Government did not receive the services and knowledge it bargained for. DPFUF ¶ 51. Gee & Jenson argues that "there is no document that expressly states what the standard of care is for designing sill flashing." Pl. Resp. at 11. That is because the standard of care is generally proven through expert testimony. See Land v. United States, 29 Fed. Cl. 744, 757 (1993) (noting that expert testimony is generally required for issues of standards of care when there are "questions beyond the competency of ordinary persons.")

In this case, the Government provided expert testimony from Mr. William Riesberg that Gee & Jenson failed to meet the standard of care. See Def. Cross-Mot. at 18. Mr. Riesberg opined that Gee & Jenson breached the standard of care. See DA480. Mr. Riesberg explained why it was not impractical to design flashing underneath the precast sills in the NISE East building. See DA481. He identified several examples within Gee & Jenson's own design which show flashing under the same set of circumstances. He identified relevant industry standards which supported his conclusion: the Architectural Sheet Metal Manual, the Brick Institute of America Technical Notes, and the Architectural Graphic Standards. Mr. Riesberg thus concluded: "based on these authorities, my experience, and my review of the contract documents that the architect should have included through-wall flashing in its design." DA484-86. Gee & Jenson's contention that Mr. Riesberg's expert opinion is unsupported and conclusory (Pl. Resp. at 11-12) is untenable.

In fact, it is Gee & Jenson's own proferred expert opinion which lacks substance. Gee & Jenson relies upon an affidavit of its own expert, Kenneth Schneider, to support its position that flashing was not required underneath the sills in the building. Pl. Resp. at 13 (citing PA 49-51). Mr. Schneider concludes that "the building code [SBC]. . . did not require flashing under the precast sill" and that the building code provides the architect with "discretion on when and where flashing is actually required." PA50.[7] Mr. Schneider's ultimate opinion that Gee & Jenson's design was "acceptable" is wholly without support. See PA51. Mr. Schneider has not identified any similar buildings which use the questioned design or anything similar to it, any

[7] Interestingly, Mr. Schneider's expert affidavit does not state that the SBC is the applicable standard of care. See PA50-51.

architectural standards or authorities which support his conclusion, or in any way address why Mr. Riesberg's opinion is incorrect. Given the conclusory nature of Mr. Schneider's affidavit, this Court need not even find there is a disputed issue of fact on the standard of care. TechSearch LLC v. Intel Corp., 286 F.3d 1360, 1372 (Fed. Cir. 2002) (reiterating that unsupported or conclusory affidavits are "insufficient" to avoid summary judgment). However, the real significance of Mr. Schneider's affidavit is its failure to refer to the contract or any relevant industry standards, but rather limits the basis of his opinion to the SBC.

Finally, Gee & Jenson's attempt to denigrate Mr. Riesberg's opinion lacks merit. Gee & Jenson's main contention is that Mr. Riesberg's remedial design used a two-stage sealant joint, thus demonstrating the reasonableness of Gee & Jenson's original design using only a single sealant. Pl. Resp. at 12. Mr. Riesberg's remedial design is not the standard against which Gee & Jenson's original design should be judged. See Def. Cross-Mot. at 22-23. As Mr. Riesberg explained, the remedial design was "a reasonable and practical alternative to installing through-wall flashing." DA488. Gee & Jenson has not successfully rebutted the Government's reasonable explanation for approving Mr. Riesberg's two-stage sealant joint as a mitigative measure.

## III. The Government Incurred Damages As A Result Of Gee & Jenson's Failure To Include Flashing In Its Design

As outlined in our opening brief, the United States is entitled to damages for losses actually sustained as a result of Gee & Jenson's breach and negligence. See Hi-Shear Tech. Corp. v. United States, 35 F.3d 1372, 1382 (Fed. Cir. 2004). "When there has been a breach of contract, the non-breaching party is entitled to an award of damages that will place it 'in as good a position as [it] would have been in had the breaching party fully performed its obligation.'"

Rumsfeld v. Applied Cos., 325 F.3d 1328, 1336 (Fed. Cir. 2003) (citation omitted). The United States must show that: (1) the damages are reasonably foreseeable by the breaching party at the time of contracting; (2) the breach is a substantial causal factor in the damages; and (3) the damages are shown with reasonable certainty. Indiana Michigan Co. v. United States, 422 F.3d 1369, 1373 (Fed. Cir. 2005).

In its response, Gee & Jenson does not dispute that the Government's damages were reasonable and foreseeable. Rather, Gee & Jenson contends the Government has relied upon a "substantial factor" test for determining causation for damages. Gee & Jenson argues that the Court should use a "but for" test for causation as established in Myerle v United States, 33 Ct.Cl. 1 (1897). Under either standard, damages should be awarded if they were "primarily the result of the breach," WestFed Holdings, Inc. v. United States, 52 Fed. Cl. 135, 160 (2002), and the breach was the predominating or primary factor that led to the claimed damages. Shyface v. Secretary of Health & Human Servs., 165 F.3d 1344, 1353 (Fed. Cir. 1999); Krauss v. Greenbarg, 137 F.2d 569, 572 (3d Cir. 1943)

Regardless of the test used by the Court, the outcome is the same.[8] Gee & Jenson admitted it failed to provide for flashing in the building design of the precast sills. PPFUF ¶ 6. The pivotal issue is not the cause of the initial water infiltration in 1998. The issue is that without flashing, there was no way for water to escape from the building. Rather, the issue is whether Gee & Jenson's omission of the flashing caused the Government to incur costs for a remedial design. The lack of flashing in the constructed building is directly attributable to one

[8] "The selection of an appropriate causation standard depends upon the facts of the particular case and lies largely within the trial court's discretion." Citizens Federal Bank v. United States, 474 F.3d 1314, 1318 (Fed. Cir. 2007).

party: Gee & Jenson. Without reliable or adequate water intrusion protection in the NISE East building, including a means of egress once the water has entered the building, the Navy faced the possibility of severe damage in the future. DPFUF ¶ 24. Gee & Jenson's contention that it should not be responsible for ensuring the "life and maintainability" of the building throughout the life cycle is a non-sequitur. See Pl. Resp. at 19. Gee & Jenson expressly contracted to provide a building which would last for fifty years. The Navy was entitled, at a minimum, to a building which did not leak within one year of construction.

The Navy is entitled to damages measured by the cost of remedying the defect. Indiana Michigan, 422 F.3d at 1373 ("The remedy for breach of contract is damages sufficient to place the injured party in as a good a position as it would have been had the breaching party fully performed.") Gee & Jenson was offered, but refused, the opportunity to provide a solution to the design defect. DPFUF ¶¶ 49; 54. As a result, the Navy was required to hire an architect to design a solution to the problem caused by Gee & Jenson. DPFUF ¶ 50. The Navy was also required to hire another contractor to install the new two-stage joints. DPFUF ¶ 55. The costs incurred by the Navy for the architect, contractor, and forensic studies were correctly asssessed to Gee & Jenson by the contracting officer.

Gee & Jenson argues that the Government cannot prevail because "Pizzagalli failed to properly install the sealant and the upstand" in the areas where flashing was installed. Pl. Resp. at 16. Gee & Jenson contends that it should escape the liability imposed by the contracting officer because "the A-E cannot be held liable for defects if the construction contractor did not follow the design." Pl. Resp. at 21 (citing C.H. Guernsey & Co. v. United States, 65 Fed. Cl. 582, 596 (2005)).

This argument lacks merit for three reasons. First, the contractor, Pizzigalli did in fact construct the building without flashing under the precast concrete sills, as Gee & Jenson designed. Thus, "Pizzagalli followed the allegedly negligent design." See Pl. Resp. at 16. The lack of flashing in the constructed building is directly attributable to one party: Gee & Jenson.

Second, the facts of this case differ significantly from the board cases cited in C.H. Guernsey.[9] In the cases cited, the board found that, even though the architect was negligent, no damages could be awarded because the construction contractor failed to follow the negligent instructions. Unlike those cases, here, the Government had contracted with Gee & Jenson to provide Title II inspection services during the construction of the NISE East Building. DPFUF ¶ 16. Thus, Gee & Jenson was responsible for oversight of the contractor's work. Gee & Jenson failed to report this construction defect to the Government at the time the flashing was installed, which precluded the Government and the cosntruction contractor from correcting the defect at the time. Although the Navy did not seek any damages as a result of Gee & Jenson's breach of its Title II contractual duties, the fact that Gee & Jenson, rather than the Government, was responsible for inspection of the construction contractor's work, demonstrates that Gee & Jenson's intevening factor argument is weak.[10] Construction deficiencies provide no defense where the A/E was responsible for construction supervision. See Appeal of William Tao &

---

[9] We note that, in C.H. Guernsey, the court never reached the issue of contractor compliance because it found that the architect met the applicable standard of care. 65 Fed. Cl. at 607.

[10] Gee & Jenson incorrectly states that it was responsible for only one of the 22 defects identified in the forensic report. Pl. Resp. at 18. In fact, the forensic architect identified seven defects attributable to the architect; however, the Navy eventually chose to pursue liability for only two of those defects. This again demonstrates the Navy's reasonableness in the A/E liability claim.

Assocs., Inc., 89-2 BCA ¶ 21588, ASBCA No. 32986 (Jan. 30, 1989).

Third, the construction defect Gee & Jenson refers to, the lack of a constructed upstand, was not the cause of the Government's damages. The Government is seeking only the costs incurred in procuring the design of the remedial fix, the cost of constructing the remedial fix and the cost of the forensic consultation and report necessary to identify Gee & Jensons'architectural deficiencies.[11] For these reasons, the United States is entitled to its damages, as well as interest from the date of the first demand for payment in 1999. See DPFUF ¶ 37.

CONCLUSION

For the foregoing reasons, and for those stated in our cross-motion for summary judgment, the Government respectfully requests that the Court enter summary judgment in favor of the Government.

Respectfully submitted,

GREGORY G. KATSAS
Acting Assistant Attorney General

JEANNE E. DAVIDSON
Director

S/Donald E. Kinner
DONALD E. KINNER
Assistant Director

[11] Gee & Jenson's dispute with the quantum assessed against it for the forensic study and report, Pl. Resp. at 17, does not preclude this Court's grant of summary judgment on the issue of liability.

OF COUNSEL

PAMELA J. NESTELL
Trial Attorney
Department of the Navy
720 Kennon St. SE
Washington Navy Yard, DC 20374

S/Tara K. Hogan
TARA K. HOGAN
Trial Attorney
Commercial Litigation Branch
Civil Division
U.S. Department of Justice
1100 L Street, N.W., room 7034
Washington, D.C. 20530
Tele: (202) 616-2228
Fax: (202) 305-7643

May 27, 2008

Attorneys for Defendant

CERTIFICATE OF ELECTRONIC FILING

I hereby certify that on this 27th day of May, 2008 a copy of the foregoing "DEFENDANT'S REPLY TO PLAINTIFF'S RESPONSE TO DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. The parties may access this filing through the Court's system.

s/Tara K. Hogan